Lara P. Besser (SBN 282289)
Marco A. Garcia (SBN 343720)
JACKSON LEWIS P.C.
225 Broadway, Suite 1800
San Diego, CA  92101
Telephone:  (619) 573-4900
Facsimile:  (619) 573-4901
Lara.Besser@jacksonlewis.com
Marco.Garcia@jacksonlewis.com

Attorneys for Defendant
MONTEREY MECHANICAL CO.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VINCENT CARRILLO, individually, and on behalf of all others similarly situated;<br><br>Plaintiff,<br><br>v.<br><br>MONTEREY MECHANICAL CO., a California corporation; and DOES 1 thorough 10, inclusive,<br><br>Defendants. | Case No. 24-9202<br><br>**DEFENDANT MONTEREY MECHANICAL CO. NOTICE OF REMOVAL TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**<br><br>**[NOTICE OF REMOVAL (28 U.S.C. §§ 1331, 1367, 1441 (a) and (c), 1446 (a) (b) and (c)) ORIGINAL JURISDICTION]**<br><br>State Complaint Filed:  August 8, 2024 |

### TO THE COURT, PLAINTIFF, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendant MONTEREY MECHANICAL CO ("Defendant") hereby removes the above-entitled action to this Court from the Superior Court of the State of California, County of Alameda pursuant to 28 U.S.C. § 1441.  Defendant invokes this Court's original jurisdiction under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1367 (supplemental jurisdiction). Defendant submits this Notice of Removal without waiving any defenses to the claims asserted by Plaintiff VINCENT CARRILLO ("Carrillo") ("Plaintiff") and

1

without conceding that Plaintiff has pled claims upon which relief can be granted.

This removal is based on the following grounds:

## PROCEDURAL BACKGROUND

1.     On September 30, 2024, Plaintiff Carrillo filed a Class Action Complaint ("Complaint") in the Superior Court of the State of California, County of Alameda, entitled *Vincent Carillo v. Monterey Mechanical Co..*, Case No. 24CV093407 ("State Court Action"), asserting the following thirteen Causes of Action:

    1)     Failure to Pay Minimum and Straight Time Wages;

    2)     Failure to Pay Overtime Wages;

    3)     Failure to Provide Meal Periods;

    4)     Failure to Authorize and Permit Rest Periods;

    5)     Failure to Timely Pay Final Wages at Termination;

    6)     Failure to Provide Accurate Itemized Wage Statements;

    7)     Failure to Indemnify Employees for Expenditures;

    8)     Failure to Produce Requested Employment Records; and

    9)     Unfair and Unlawful Business Practices.

2.     Copies of all process, pleadings, and orders served upon Defendant in the State Court Action are attached hereto as **Attachment 1.** Defendant's Notice and Acknowledgement of Receipt of and Answer to Plaintiff's Complaint are attached hereto as **Attachments 2 and 3.** Declaration of Lara P. Besser ("Besser Decl.") ¶¶ 2-4, **Attachment 1 to 3.**

## PLAINTIFF'S ALLEGATIONS

3.     The Complaint alleges that Plaintiff "worked for Defendants in Alameda County, California as an hourly-paid, non-exempt employee from approximately March 2020 to approximately May 2022." (Complaint, ¶ 7). The Complaint further alleges that, "[a]ll persons who worked for any Defendant in California as an hourly-paid or non-exempt employee at any time during the period beginning four years before the filing of the initial complaint in this action and ending when notice to the Class is sent" (Complaint, ¶ 25). Plaintiff further alleges that his claims "are typical of all Class Members' claims as demonstrated herein." (Complaint, ¶ 28(b)).

4.      Plaintiff's Complaint does not identify him as a member of a union or that his employment was covered by a collective bargaining agreement that provided for (1) the wages, hours of work, and working conditions of employees; (2) meal and rest periods; (3) premium wage rates for all overtime hours worked; (4) pay arrangements that differ from the minimum requirements set forth in Labor Code section 204; (5) accrual and final payment of vacation wages; (6)  paid sick days or a paid leave or paid time off policy that permits the use of sick days for those employees; (7) regular hourly rates of pay of not less than 30 percent more than the state minimum wage rate; and (8) a comprehensive grievance procedure that mandates union employees submit any and all wage and hour disputes to final and binding individual arbitration.

## **FACTUAL BACKGROUND SUPPORTING REMOVAL**

5.      During the period covered by Plaintiff's class and representative action claims in the Complaint, Plaintiff was a member of the Northern California District Council of Laborers of the Laborers' International Union of North America, and the terms and conditions of his employment were covered by a collective bargaining agreement, which covered the period of July 1, 2018, through June 30, 2023 (the "Laborers CBA").

6.      The Laborers CBA covering Plaintiff's employment provides for (1) the wages, hours of work, and working conditions of employees; (2) meal and rest periods; (3) premium wage rates for all overtime hours worked; (4) pay arrangements that differ from the minimum requirements set forth in Labor Code section 204; (5) accrual and final payment of vacation wages; (6)  paid sick days or a paid leave or paid time off policy that permits the use of sick days for those employees; (7) regular hourly rates of pay of not less than 30 percent more than the state minimum wage rate; and (8) a comprehensive grievance procedure that mandates union employees submit any and all wage and hour disputes to final and binding individual arbitration.  Other putative class members and allegedly aggrieved employees are also covered by the same or other collective bargaining agreements during the relevant period of time which provide for same or additional conditions.

## **VENUE**

7.      For purposes of removal only, venue properly lies in the United States District

3

Notice of Removal of Action to Federal Court
under 28 U.S.C. §§ 1331, 1441, 1446                    Case No. _____

Court for the Northern District of California pursuant to 28 U.S.C. § 1441(a). Section 1441(a) provides, in relevant part:

> [A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

8.    As indicated above, Plaintiff brought this action in the Superior Court of the State of California, County of Alameda. The United States District Court for the Northern District encompasses this territory. (28 U.S.C. § 84(a).)

## SUBJECT MATTER JURISDICTION

9.    Federal district courts have original jurisdiction over lawsuits involving federal law. 28 U.S.C. §1331 ("The district courts shall have original jurisdiction of all civil actions under the . . . laws . . . of the United States."). When a case filed in state court falls within the original jurisdiction of a federal district court, a defendant may remove the matter to federal court. 28 U.S.C. § 1441(a).

10.    "Plaintiffs cannot avoid removal by 'artfully pleading' only state law claims that are actually preempted by federal statutes such as section 301 of the Labor Management Relations Act." *Milne Employees Ass'n v. Sun Carriers, Inc.*, 960 F.2d 1401, 1406 (9th Cir. 1992) (citation omitted). "Thus, if a state law claim is completely preempted by a federal statute such as section 301, the state law cause of action necessarily becomes a federal one and can be removed." *Id.* Here, the Complaint alleges various violations of the California Labor Code and "applicable Wage Orders," but it neglects to mention that Plaintiff and other putative class members and allegedly aggrieved employees are bound by the Laborers CBA or other CBAs that governs the wages, hours of work, and working conditions of these employees. The Court is required to look beyond the Complaint to the Laborers CBA, which makes clear that the claims of Plaintiff and other putative class members and allegedly aggrieved employees are preempted by Section 301 the Labor Management Relations Act ("LMRA"). *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir. 1987) ("The district court . . . properly looked beyond the face of the complaint to determine whether the contract claim was in fact a section 301 claim for breach of a collective

4

bargaining agreement artfully pleaded to avoid federal jurisdiction.") (internal quotations omitted).

11.    Federal question jurisdiction under LMRA Section 301 arises whenever (1) a plaintiff asserts a claim based upon a right conferred upon employees by a CBA, or (2) the resolution of a plaintiff's state-law claims is substantially dependent on the interpretation of a CBA. *Firestone v. So. Cal. Gas Co.*, 219 F.3d 1063, 1065 (9th Cir. 2000).  Here, both grounds apply.

12.    Throughout the alleged class period, Plaintiff, as well as other hourly, non-exempt employees who worked for Defendant during this period in the same or other classifications, were and are union members whose employment were and are governed by the CBA attached to this Notice as **Attachment 4**.  At all relevant times, the union that collectively bargained the Laborers CBA on behalf of Plaintiff and other putative class members and allegedly aggrieved employees was a labor organization within the meaning of Section 2(5) of the NLRA, 29 U.S.C. § 152(5).

13.    In the First Cause of Action, Plaintiff alleges that Defendants failed to pay Plaintiff and other putative class members and allegedly aggrieved employees timely wages during their employment pursuant to California Labor Code § 204. (Complaint, ¶¶ 40).  Plaintiff and/or others within the putative class were given pay arrangements in their CBA(s) that differ from the minimum requirements set forth in Labor Code section 204.  (*See* Attachment 4, Section 10).

14.    In the Second Cause of Action, Plaintiff alleges that Defendants failed to pay Plaintiff and other putative class members and allegedly aggrieved employees for all overtime pursuant to California Labor Code § 510. (Complaint, ¶¶ 42-50).  Pursuant to California Labor Code § 514, Section 510 "do[es] not apply to an employee covered by a valid collective bargaining agreement if the agreement expressly provides [1] for the wages, hours of work, and working conditions of the employees, and [2] if the agreement provides premium wage rates for all overtime hours worked and [3] a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage."  *See* Cal. Lab. Code § 514.  As set forth above, LMRA Section 301 preemption applies to Plaintiff and/or others within the putative class because their CBA(s) meet these requirements. (*See* Attachment 4, Sections 6, 9, 19-20A and Supplement No. 1 Group 3 Wage Rate.)

15.    In the Third Cause of Action, Plaintiff alleges that Defendant failed to provide Plaintiff and other putative class members and allegedly aggrieved employees with compliant meal periods pursuant to California Labor Code § 512 and applicable Wage Orders. (Complaint, ¶¶ 51-54). Pursuant to California Labor Code § 512(e), Section 512(a) "do[es] not apply to an employee [employed in a construction occupation] if both of the following conditions are satisfied: (1) The employee is covered by a valid collective bargaining agreement. (2) The valid collective bargaining agreement expressly provides for the wages, hours of work, and working conditions of employees, and expressly provides for meal periods for those employees, final and binding arbitration of disputes concerning application of its meal period provisions, premium wage rates for all overtime hours worked, and a regular hourly rate of pay of not less than 30 percent more than the state minimum wage rate." *See* Cal. Lab. Code § 512(e); *see also* IWC Wage Order No. 16-2001 ("Wage Order 16"), Section 10.  As set forth above, LMRA Section 301 preemption applies to Plaintiff and/or others within the putative class because their CBA(s) meets these requirements. (*See* Attachment 4, Sections 6, 9, 19-20A and Supplement No. 1 Group 3 Wage Rate).

16.    In the Fourth Cause of Action, Plaintiff alleges that Defendant failed to provide Plaintiff and other putative class members and allegedly aggrieved employees with compliant rest periods pursuant to California Labor Code § 512 and applicable Wage Orders. (Complaint, ¶¶ 55-58).  Pursuant to Wage Order 16, Section 11, such provisions "shall not apply to any employee covered by a valid collective bargaining agreement if the collective bargaining agreement provides equivalent protection."  As set forth above, LMRA Section 301 preemption applies to Plaintiff and/or others within the putative class because their CBA(s) meet these requirements. (*See* Attachment 4, Section 6).

17.    In the Fifth Cause of Action, Plaintiff alleges that Defendants failed to pay Plaintiff and other putative class members and allegedly aggrieved employees for wages of discharged employees pursuant to California Labor Code §§ 201 - 203. (Complaint, ¶¶ 59-65).  Plaintiff's and/or others within the putative class's right to wages at the time of termination exists solely from, and arises out of, their CBA(s).  (*See* Attachment 4, Section 10).

18.     Similarly, Plaintiff's other causes of action alleged on a class basis and that are derivative of preempted causes of action are themselves also preempted. *See Williams v. Securitas Sec. Servs. U.S.*, 23-cv-01863-LB, at *14 (N.D. Cal. Aug. 16, 2023) ("The derivative claims for failure to provide accurate statements and a violation of the UCL… are preempted because they depend on the preempted claims.").

19.     Lastly, the right to remedies, and final and binding resolution of each of Plaintiff's state-law claims, derives from and is substantially dependent on the interpretation of the Laborers CBA's grievance and mandatory arbitration provisions. (*See* Attachment 4, Section 9). *Renteria-Hinjosa v. Sunsweet Growers, Inc.*, 2:23-cv-01413-DJC-DB, at *9-10  (E.D. Cal. Oct. 3, 2023) ("In order for a grievance procedure to preempt claims under the LMRA, the agreement must 'clearly and unmistakably' waive Plaintiff's rights in order to displace those rights… [W]here the arbitration provision is clear and unmistakable, arbitration becomes the sole method by which a plaintiff may pursue her legal remedies, and the plaintiff's rights to a remedy necessarily arise out of the collective bargaining agreement."); *see also Gay v. Pac. Steel Grp.*, No. 20-cv-08442-HSG, at *1 (N.D. Cal. June 15, 2021)  ("[T]o adjudicate Plaintiffs' argument, the Court will necessarily have to interpret the scope and validity of the CBA's grievance procedure provisions. The necessity of such an analysis satisfies the preemption test's standard of 'an active dispute over "the meaning of contract terms."'").

20.     The Laborers CBA's grievance procedure clearly and unmistakably provides for final and binding individual arbitration of wage and hour claims at issue in this litigation:

> Section 9(20) **Grievance Procedure**:
> In addition to disputes concerning the interpretation or application of this Agreement, all claims and claims for associated penalties arising under the federal Fair Labor Standards Act, the California Labor Code, and Wage Order 16, will be resolved through the procedures set forth in this Section 9; such claims may not be brought in a court of law or before any administrative agency such as the California Labor Commissioner**.**

21.     By operation of the Laborers CBA, Plaintiff's claims arise solely out of, and are limited by, the Laborers CBA, such that resolving the merits of Plaintiff's claims is substantially

dependent upon, and requires analysis, interpretation, and application of the CBA, placing this litigation squarely within the crosshairs of LMRA Section 301 preemption. *See Allis-Chambers Corp., supra*, 471 U.S. at 220 (stating that state law claim that is "substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract" is completely preempted by Section 301 of the LMRA); *Chatman v. Wedriveu, Inc.*, 3:22-cv-04849-WHO, at \*10 (N.D. Cal. Oct. 28, 2022) ("'[A] civil complaint *raising claims preempted by § 301* raises a federal question *that can be removed to a federal court*.'") (citing *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1152 (9th Cir. 2019)).

## SUPPLEMENTAL JURISDICTION

22.    To the extent any of Plaintiff's claims are not directly removable under 28 U.S.C. § 1331 in light of LMRA preemption, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a), because they are part of the same common nucleus of operative facts over which this Court has original jurisdiction.

## TIMELINESS OF REMOVAL

23.    Pursuant to 28 U.S.C. § 1446(b), a defendant has 30 days to file a Notice of Removal, measured from the date the defendant receives or is served with the initial pleading setting forth the claim for relief upon which such action or proceeding is based and which places the defendant on notice of the case's removability or, when the pleading does not place the defendant on notice of the case's removability, 30 days after it discovers, based on its own investigation, that the case is removable. *Kenny v. Wal-Mart Stores, Inc.* (9th Cir. 2018) 881 F.3d 786, 791.

24.    On October 28, 2024, Plaintiff served Defendant, via Notice and Acknowledgement of Receipt, with a copy of the Summons and Complaint, along with a Notice of Case Management Conference, and a Civil Case Cover Sheet. On November 18, 2024, Defendant accepted service of the Complaint and returned Defendant's Notice and Acknowledgment of Receipt on November 18, 2024.  Defendant filed its Answer in the Superior Court of Alameda on December 18, 2024. Declaration of Lara P. Besser ("Besser Decl.") ¶¶ 2-4, **Attachment 1 to 3.**

25.     Pursuant to 28 U.S.C. § 1446(b), this Notice of Removal is being timely filed with this Court within 30 days after service of the Complaint on Defendant. Under California Code of Civil Procedure section 415.30(c), service of a summons and complaint are deemed complete on the date a Notice and Acknowledgment of Receipt (Form POS-015) is executed.  Cal. Civ. Code § 415.30(c). Defendant executed a Notice and Acknowledgment of Receipt on November 18, 2023.  Besser Decl. ¶ 4, **Attachment 2**.  This Notice of Removal is therefore filed within the period provided by 28 U.S.C. § 1446(b).

<u>**NOTICE TO PLAINTIFF AND STATE COURT**</u>

26.     In accordance with 28 U.S.C. § 1446(d), Defendant's counsel certifies that a copy of this Notice of Removal and all supporting papers will be served on Plaintiff's counsel and filed with the Clerk of the Superior Court of the State of California, in and for the County of San Joaquin. As such, all procedural requirements under Section 1446 are or will be satisfied.

<u>**CONCLUSION**</u>

27.     Defendant maintains that this action is properly removed to this Court.

Dated:  December 18, 2024                    JACKSON LEWIS P.C.


                                   By: */s/ Lara P. Besser*
                                        Lara P. Besser
                                        Marco A. Garcia
                                        Attorneys for Defendant
                                        Monterey Mechanical Co.

4930-0357-8631, v. 1

Notice of Removal of Action to Federal Court
under 28 U.S.C. §§ 1331, 1441, 1446                    Case No. _____

1   Lara P. Besser (SBN 282289)
2   JACKSON LEWIS P.C.
3   225 Broadway, Suite 1800
    San Diego, CA  92101
4   Telephone:  (619) 573-4900
    Facsimile:  (619) 573-4901
5   Lara.Besser@jacksonlewis.com

6
    Attorneys for Defendant
7   MONTEREY MECHANICAL CO.

8
                    UNITED STATES DISTRICT COURT
9
                NORTHERN DISTRICT OF CALIFORNIA
10

11  VINCENT CARRILLO, individually, and on        Case No.:
    behalf of all others similarly situated;
12                                                 **ATTACHMENTS 1-4 TO DEFENDANT
13              Plaintiff,                          MONTEREY MECHANICAL CO.'S
                                                   NOTICE OF REMOVAL**
14         v.
                                                   Date of Removal:  December 18, 2024
15  MONTEREY MECHANICAL CO., a California          Date of Trial:      None Set
    corporation; and DOES 1 thorough 10, inclusive,
16
                Defendants.
17

18

19

20

21

22  DATED:  December 18, 2024           JACKSON LEWIS P.C.

23                                      By:_____/s/ Lara P. Besser_____
24                                         Lara P. Besser
                                           Attorneys for Defendant MONTEREY
25                                         MECHANICAL CO.

26

27  4908-3084-4936, v. 1

28

                                    1

Attachment 1

**Garcia, Marco A. (San Diego)**

| | |
|---|---|
| **From:** | Jacquelyn Enciso <jacquelyn.enciso@wilshirelawfirm.com> |
| **Sent:** | Monday, October 28, 2024 11:39 AM |
| **To:** | Garcia, Marco A. (San Diego) |
| **Cc:** | Fawn Bekam's Team; John Yslas, Esq. |
| **Subject:** | Carrillo v. Monterey Mechanical |
| **Attachments:** | Carrillo - MMC - Complaint (Filed) - 09302024.pdf; Carrillo - MMC - Ntc of CMC (Filed) - 09302024.pdf; Carrillo - MMC - Summons (Filed) - 10012024.pdf; Carrillo - MMC - CCCS (Filed) - 09302024.pdf; NAR for Initial Case Docs - 10282024.pdf |



Good morning Counsel,

Attached please find the following documents and Notice and Acknowledgement of Receipt. Please sign and return upon receipt of this email.

1. Civil Case Cover Sheet
2. Notice of Case Management Conference
3. Summons
4. Class Action Complaint


Thank you,

Jacquelyn Enciso
Paralegal

**Wilshire Law Firm, PLC**
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA  90010
Direct Tel: (213) 381-9988 Ext. 416
Fax: (213) 381-9989
Email: jacquelyn.enciso@wilshirelawfirm.com
Web: www.wilshirelawfirm.com

*Not licensed or admitted to practice law*

*"The highest compliment we can receive is the referral of your friends and family."*




WE WALK SIDE-BY-SIDE WITH OUR CLIENTS IN PURSUIT OF JUSTICE









*Logos represent a collection of awards and memberships of one or more Wilshire Law Firm Attorneys

How did we do?



Click to rate your experience with Wilshire Law Firm

**<u>CONFIDENTIAL EMAIL TRANSMISSION & WARNING:</u>**

This message and (any attachments hereto) contains confidential information and is intended only for the individual nan privileged or otherwise protected by work product immunity or other legal rules. If you are not the intended recipient you disseminate, distribute, copy this e-mail, or disclose its contents to anyone. Please notify the sender immediately by e-m received this e-mail by mistake and delete this e-mail from your system. Any review, use, distribution or disclosure by of prohibited. The recipient should check this email and any attachments for the presence of viruses. E-mail transmission c to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or con sender does not accept liability for any errors or omissions in the contents of this message, which arise as a result of e-m nor does the sender accept liability for damage caused by any virus transmitted by this email.

If you are a potential client, the information you disclose to us by email will be kept in strict confidence and will be prot extent of the law.  Please be advised that Wilshire Law Firm, PLC and its lawyers do not represent you until you have si agreement with the firm.  Until that time, you are responsible for any statutes of limitations or other deadlines for your p

John G. Yslas (SBN 187324)
john.yslas@wilshirelawfirm.com
Aram Boyadjian (SBN 334009)
aram.boyadjian@wilshirelawfirm.com
**WILSHIRE LAW FIRM**
3055 Wilshire Blvd., 12th Floor
Los Angeles, California 90010
Telephone: (213) 381-9988
Facsimile: (213) 381-9989

*Attorneys for Plaintiff*

**ELECTRONICALLY FILED**
Superior Court of California,
County of Alameda
09/30/2024 at 12:00:00 AM
By: Milagros Cortez,
Deputy Clerk

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF ALAMEDA**

VINCENT CARRILLO, individually, and on behalf of all others similarly situated,

Plaintiff,

v.

MONTEREY MECHANICAL CO., a California corporation; and DOES 1 through 10, inclusive,

Defendants.

Case No.:  **24CV093407**

**CLASS ACTION COMPLAINT:**

1. Failure to Pay Minimum and Straight Time Wages (Cal. Lab. Code §§ 204, 1194, 1194.2, 1197, and 1197.1);
2. Failure to Pay Overtime Wages (Cal. Lab. Code §§ 1194 and 1198);
3. Failure to Provide Meal Periods (Cal. Lab. Code §§ 226.7, 512);
4. Failure to Authorize and Permit Rest Periods (Cal. Lab. Code §§ 226.7);
5. Failure to Timely Pay Final Wages at Termination (Cal. Lab. Code §§ 201-203);
6. Failure to Provide Accurate Itemized Wage Statements (Cal. Lab. Code § 226);
7. Failure to Indemnify Employees for Expenditures (Cal. Lab. Code § 2802);
8. Failure to Produce Requested Employment Records (Cal. Lab. Code §§ 226 and 1198.5); and
9. Unfair Business Practices (Cal. Bus. & Prof. Code §§ 17200, *et seq.*).

**DEMAND FOR JURY TRIAL**

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

Plaintiff Vincent Carrillo ("Plaintiff"), on information and belief, alleges as follows:

**<u>INTRODUCTION & PRELIMINARY STATEMENT</u>**

1.      Plaintiff brings this action against Defendants Monterey Mechanical Co., and DOES 1 through 10 (hereinafter collectively referred to as "Defendants") for California Labor Code violations and unfair business practices stemming from Defendants' failure to pay for all hours worked (minimum, straight time, and overtime wages), failure to provide meal periods, failure to authorize and permit rest periods, failure to timely pay final wages, failure to furnish accurate wage statements, failure to indemnify employees for expenditures, and failure to produce requested employment records.

2.      Plaintiff brings the First through Ninth Causes of Action individually and as a class action on behalf of Plaintiff and certain current and former employees of Defendants (hereinafter collectively referred to as the "Class" or "Class Members," and defined more fully below). The Class consists of Plaintiff and all other persons who have been employed by any Defendant in California as an hourly-paid or non-exempt employee during the statute of limitations period applicable to the claims pleaded here.

3.      Defendants own/owned and operate/operated an industry, business, and establishment within the State of California, including Alameda County. As such and based upon all the facts and circumstances incident to Defendants' business in California, Defendants are subject to the California Labor Code, Wage Orders issued by the Industrial Welfare Commission ("IWC"), and the California Business & Professions Code.

4.      Despite these requirements, throughout the statutory period, Defendants have, at times:

(a)      Failed to pay some, but not necessarily all employees for all hours worked, including all minimum, straight time, and overtime wages in compliance with the California Labor Code and IWC Wage Orders;

(b)      Failed to provide some, but not necessarily all employees with timely and duty-free meal periods in compliance with the California Labor Code and IWC Wage Orders, failed to maintain accurate records of all meal periods

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

taken or missed, and failed to pay an additional hour's pay for each workday a meal period violation occurred;

(c)    Failed to authorize and permit some, but not necessarily all employees to take timely and duty-free rest periods in compliance with the California Labor Code and IWC Wage Orders, and failed to pay an additional hour's pay for each workday a rest period violation occurred;

(d)    Willfully failed to pay some, but not necessarily all employees all minimum wage, straight time wages, overtime wages, meal period premium wages, and rest period premium wages due within the time period specified by California law when employment terminates;

(e)    Failed to provide some, but not necessarily all employees with accurate, itemized wage statements containing all the information required by the California Labor Code and IWC Wage Orders;

(f)    Failed to indemnify some, but not necessarily all employees for expenditures incurred in direct discharge of duties of employment; and

(g)    Failed to timely produce requested employment records to some, but not necessarily all employees as required by the California Labor Code and IWC Wage Order.

5.    On information and belief, Defendants were on actual and constructive notice of the improprieties alleged herein and intentionally refused to rectify their unlawful conduct. Defendants' violations, as alleged above, during all relevant times herein were willful and deliberate.

6.    At all relevant times, Defendants were and are legally responsible for all of the unlawful conduct, policies, acts and omissions as described in each and all of the foregoing paragraphs as the employers of Plaintiff and the Class. Further, Defendants are responsible for each of the unlawful acts or omissions complained of herein under the doctrine of "respondeat superior."

/ / /

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

**THE PARTIES**

**A.    Plaintiff**

7.      Plaintiff Vincent Carrillo is a resident of Hayward, California who worked for Defendants in Alameda County, California as an hourly-paid, non-exempt employee from approximately March 2020 to approximately May 2022.

8.      Plaintiff reserves the right to seek leave to amend this complaint to add new Plaintiffs, if necessary, in order to establish suitable representative(s) pursuant to *La Sala v. American Savings and Loan Association* (1971) 5 Cal.3d 864, 872, and other applicable law.

**B.    Defendants**

9.      Plaintiff is informed and believes, and based upon that information and belief alleges, that Defendant Monterey Mechanical Co. is, and at all times herein mentioned, was:

(a)    A business entity conducting business in numerous counties throughout the State of California, including Alameda County; and,

(b)    The former employer of Plaintiff, and the current and/or former employer of the putative Class because Defendant Monterey Mechanical Co. suffered and permitted Plaintiff and the Class to work; and/or exercised control over their wages, hours, or working conditions; and/or engaged Plaintiff and the Class, thereby creating a common law employment relationship.

10.     Plaintiff does not know the true names or capacities of the persons or entities sued herein as Does 1-10, inclusive, and therefore sues said Defendants by such fictitious names. Each of the Doe Defendants was in some manner legally responsible for the damages suffered by Plaintiff and the Class as alleged herein. Plaintiff will amend this complaint to set forth the true names and capacities of these Defendants when they have been ascertained, together with appropriate charging allegations, as may be necessary.

11.     At all times mentioned herein, the Defendants named as Does 1-10, inclusive, and each of them, were residents of, doing business in, availed themselves of the jurisdiction of, and/or injured Plaintiff and a significant number of the Class in the State of California.

/ / /

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

12.    Plaintiff is informed and believes and thereon alleges that at all relevant times each Defendant, directly or indirectly, or through agents or other persons, employed Plaintiff and the other employees described in the class definitions below, and exercised control over their wages, hours, and working conditions. Plaintiff is informed and believes and thereon alleges that, at all relevant times, each Defendant was the principal, agent, partner, joint venturer, joint employer, officer, director, controlling shareholder, subsidiary, affiliate, parent corporation, successor in interest and/or predecessor in interest of some or all of the other Defendants, and was engaged with some or all of the other Defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other Defendants so as to be liable for their conduct with respect to the matters alleged below. Plaintiff is informed and believes and thereon alleges that each Defendant acted pursuant to and within the scope of the relationships alleged above, that each Defendant knew or should have known about, and authorized, ratified, adopted, approved, controlled, aided, and abetted the conduct of all other Defendants.

## **ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

13.    Plaintiff Vincent Carrillo worked for Defendants in Alameda County, California as an hourly-paid, non-exempt employee from approximately March 2020 to approximately May 2022. During Plaintiff's employment for Defendants, Defendants paid Plaintiff an hourly wage and classified Plaintiff as non-exempt from overtime. Defendants repeatedly and frequently scheduled Plaintiff to work at least five days in a workweek and at least eight hours per day, but Plaintiff also worked more than eight hours in a workday and more than forty (40) hours in a workweek.

14.    Throughout Plaintiff's employment, Defendants, at times, failed to pay Plaintiff for all hours worked (including minimum, straight time, and overtime wages), failed to provide Plaintiff with legally compliant meal periods, failed to authorize and permit Plaintiff to take rest periods, failed to timely pay all final wages to Plaintiff when Defendants terminated Plaintiff's employment, failed to furnish accurate wage statements to Plaintiff, failed to indemnify Plaintiff for expenditures, and failed to produce requested employment records.

/ / /

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

15.    Throughout the statutory period, Defendants, at times, failed to pay Plaintiff and some of, but not necessarily all of, the Class for all hours worked, including minimum, straight time, and overtime wages. Defendants would, at times, manufacture time keeping records to falsely show that Plaintiff and some of, but not necessarily all of, the Class took meal periods when in fact they worked "off-the-clock," uncompensated. The effect is that Plaintiff and some of, but not necessarily all of, the Class worked through meal periods "off-the-clock," and continued to work after they had clocked out for the workday. Defendants paid Plaintiff and some of, but not necessarily all of, the Class less than all their work time. Some of this unpaid work should have been paid at the overtime rate. In failing to pay for all hours worked, Defendants also failed to maintain accurate records of the hours Plaintiff and some of, but not necessarily all of, the Class worked.

16.    Throughout the statutory period, Defendants wrongfully failed to provide Plaintiff and some of, but not necessarily all of, the Class with legally compliant meal periods. Defendants required Plaintiff and some of, but not necessarily all of, the Class to work in excess of five consecutive hours a day without providing a 30-minute, uninterrupted, and duty-free meal period for every five hours of work, or without compensating Plaintiff and some of, but not necessarily all of, the Class for all missed meal periods that were not provided by the end of the fifth hour of work or tenth hour of work. Instead, Defendants continued to assert control over Plaintiff and some of, but not necessarily all of, the Class by requiring, pressuring, or encouraging them to perform work tasks which could not be completed without working in lieu of taking mandatory meal periods, or by denying Plaintiff and some of, but not necessarily all of, the Class permission to take a meal period. Defendants also failed, at times, to permit Plaintiff and some of, but not necessarily all of, the Class to take a second meal period when they worked at least ten hours of work in a workday. As described above, Defendants would manufacture time keeping records to falsely show that Plaintiff and some of, but not necessarily all of, the Class took meal periods by the fifth hour of work or took meal periods when in fact they worked "off-the-clock", uncompensated. Accordingly, Defendants failed to provide meal periods to Plaintiff and some of, but not necessarily all of, the Class in compliance with California law.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

17.     Throughout the statutory period, Defendants have, at times, wrongfully failed to authorize and permit Plaintiff and some of, but not necessarily all of, the Class to take legally compliant rest periods. Defendants required Plaintiff and some of, but not necessarily all of, the Class to work in excess of four consecutive hours a day without Defendants authorizing and permitting them to take a 10-minute, uninterrupted, duty-free rest period for every four hours of work (or major fraction of four hours), or without compensating Plaintiff and some of, but not necessarily all of, the Class for rest periods that were not authorized or permitted. Instead, Defendants continued to assert control over Plaintiff and some of, but not necessarily all of, the Class by requiring, pressuring, or encouraging them to perform work tasks which could not be completed without working in lieu of taking mandatory rest periods, or by denying Plaintiff and some of, but not necessarily all of, the Class permission to take a rest period. Accordingly, Defendants failed to authorize and permit Plaintiff and some of, but not necessarily all of, the Class to take rest periods in compliance with California law.

18.     Throughout the statutory period, Defendants, at times, willfully failed and refused to timely pay Plaintiff and some of, but not necessarily all of, the Class all final wages due at their termination of employment. In addition, Plaintiff's final paycheck did not include payment for all expenditures, minimum wage, straight time wages, overtime wages, meal period premium wages, and rest period premium wages owed to Plaintiff by Defendants at the conclusion of Plaintiff's employment. On information and belief, Defendants' failure to timely pay Plaintiff's final wages when Plaintiff's employment terminated was not a single, isolated incident, but was instead consistent with Defendants' practices that applied, at times, to Plaintiff and some of, but not necessarily all of, the Class.

19.     Throughout the statutory period, Defendants failed, at times, to furnish Plaintiff and some of, but not necessarily all of, the Class with accurate, itemized wage statements showing all applicable hourly rates, and all gross and net wages earned (including correct hours worked, correct wages for meal periods that were not provided in accordance with California law, and correct wages for rest periods that were not authorized and permitted to take in accordance with California

law). As a result of these violations of California Labor Code § 226(a), the Plaintiff and some of, but not necessarily all of, the Class suffered injury because, among other things:

(a) the violations led them to believe that they were not entitled to be paid minimum wage, straight time wages, overtime wages, meal period premium wages, and rest period premium wages, even though some, but not necessarily all, of them were entitled;

(b) the violations led them to believe that they had been paid the minimum wage, straight time wages, overtime wages, meal period premium wages, and rest period premium wages, even though some, but not necessarily all of them had not been;

(c) the violations led them to believe they were not entitled to be paid minimum wage, straight time wages, overtime wages, meal period premium wages, and rest period premium wages at the correct California rate even though some, but not necessarily all of them were entitled;

(d) the violations led them to believe they had been paid minimum wage, straight time wages, overtime wages, meal period premium wages, and rest period premium wages at the correct California rate even though some, but not necessarily all of them had not been;

(e) the violations hindered them from determining the amounts of minimum wage, straight time wages, overtime wages, meal period premium wages, and rest period premium wages owed to some, but not necessarily all of them;

(f) in connection with their employment before and during this action, and in connection with prosecuting this action, the violations caused them to have to perform mathematical computations to determine the amounts of wages owed to some, but not necessarily all of them, computations they would not have to make if the wage statements contained the required accurate information;

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

CLASS ACTION COMPLAINT

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

(g)     by understating the wages truly due to some, but not necessarily all of them, the violations caused some, but not necessarily all of them to lose entitlement and/or accrual of the full amount of Social Security, disability, unemployment, and other governmental benefits;

(h)     the wage statements inaccurately understated the wages, hours, and wage rates to which Plaintiff and some, but not necessarily all of the Class were entitled, and Plaintiff and some, but not necessarily all of the Class were paid less than the wages and wage rates to which some, but not necessarily all of them were entitled.

Thus, Plaintiff and some, but not necessarily all of the Class are owed the amounts provided for in California Labor Code § 226(e).

20.     Throughout the statutory period, Defendants have wrongfully required Plaintiff and some, but not necessarily all of the Class to pay expenses that they incurred in direct discharge of their duties for Defendants. Plaintiff and some, but not necessarily all, of the Class paid out-of-pocket for necessary employment-related expenses.

21.     Plaintiff and some of the Class incurred substantial expenses as a direct result of performing their job duties for Defendants, but Defendants failed to indemnify Plaintiff and some of the Class for these employment-related expenses.

22.     Plaintiff sent written requests through Plaintiff's counsel to Defendants for Plaintiff's personnel file, pay records, wage statements, timekeeping records, and other employment-related documents pursuant to Labor Code section 226 and 1198.5. However, Defendants failed to timely produce the requested employment records, in violation of Labor Code sections 226 and 1198.5.

**CLASS ACTION ALLEGATIONS**

23.     Plaintiff brings certain claims individually, as well as on behalf of each and all other persons similarly situated, and thus, seek class certification under California Code of Civil Procedure § 382.

/ / /

24.    All claims alleged herein arise under California law for which Plaintiff seeks relief authorized by California law.

25.    The proposed Class consists of and is defined as:

All persons who worked for any Defendant in California as an hourly-paid or non-exempt employee at any time during the period beginning four years before the filing of the initial complaint in this action and ending when notice to the Class is sent.

26.    At all material times, Plaintiff was a member of the Class.

27.    Plaintiff undertakes this concerted activity to improve the wages and working conditions of all Class Members.

28.    There is a well-defined community of interest in the litigation and the Class is readily ascertainable:

(a)    Numerosity: The members of the Class (and each subclass, if any) are so numerous that joinder of all members would be unfeasible and impractical. The membership of the entire Class is unknown to Plaintiff at this time; however, the Class is estimated to be greater than forty (40) individuals and the identity of such membership is readily ascertainable by inspection of Defendants' records.

(b)    Typicality: Plaintiff is qualified to, and will, fairly and adequately protect the interests of each Class Member with whom there is a shared, well-defined community of interest, and Plaintiff's claims (or defenses, if any) are typical of all Class Members' claims as demonstrated herein.

(c)    Adequacy: Plaintiff is qualified to, and will, fairly and adequately protect the interests of each Class Member with whom there is a shared, well-defined community of interest and typicality of claims, as demonstrated herein. Plaintiff has no conflicts with or interests antagonistic to any Class Member. Plaintiff's attorneys, the proposed class counsel, are versed in the rules governing class action discovery, certification, and settlement. Plaintiff has incurred, and throughout the duration of this action, will continue to

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

9

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

incur costs and attorneys' fees that have been, are, and will be necessarily expended for the prosecution of this action for the substantial benefit of each class member.

(d)     Superiority: A Class Action is superior to other available methods for the fair and efficient adjudication of the controversy, including consideration of:

1)      The interests of the members of the Class in individually controlling the prosecution or defense of separate actions;

2)      The extent and nature of any litigation concerning the controversy already commenced by or against members of the Class;

3)      The desirability or undesirability of concentrating the litigation of the claims in the particular forum; and,

4)      The difficulties likely to be encountered in the management of a class action.

(e)     Public Policy Considerations: The public policy of the State of California is to resolve the California Labor Code claims of many employees through a class action. Indeed, current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are also fearful of bringing actions because they believe their former employers might damage their future endeavors through negative references and/or other means. Class actions provide the class members who are not named in the complaint with a type of anonymity that allows for the vindication of their rights at the same time as their privacy is protected.

29.     There are common questions of law and fact as to the Class (and each subclass, if any) that predominate over questions affecting only individual members, including without limitation, whether, as alleged herein, Defendants have:

(a)     Failed to pay Class Members for all hours worked, including minimum, straight time, and overtime wages;

/ / /

(b)    Failed to provide meal periods and pay meal period premium wages to Class Members;

(c)    Failed to authorize and permit rest periods and pay rest period premium wages to Class Members;

(d)    Failed to provide Class Members with timely final wages;

(e)    Failed to provide Class Members with accurate wage statements;

(f)    Failed to indemnify Class Members for expenditures;

(g)    Failed to produce requested employment records; and

(h)    Violated California Business & Professions Code §§ 17200 *et. seq.* as a result of their illegal conduct as described above.

30.    This Court should permit this action to be maintained as a class action pursuant to California Code of Civil Procedure § 382 because:

(a)    The questions of law and fact common to the Class predominate over any question affecting only individual Class Members;

(b)    A class action is superior to any other available method for the fair and efficient adjudication of the claims of the Class Members;

(c)    The members of the Class are so numerous that it is impractical to bring all members of the class before the Court;

(d)    Plaintiff, and the other members of the Class, will not be able to obtain effective and economic legal redress unless the action is maintained as a class action;

(e)    There is a community of interest in obtaining appropriate legal and equitable relief for the statutory violations, and in obtaining adequate compensation for the damages and injuries for which Defendants are responsible in an amount sufficient to adequately compensate the members of the Class for the injuries sustained;

(f)    Without class certification, the prosecution of separate actions by individual members of the Class would create a risk of:

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12ᵗʰ Floor
Los Angeles, CA 90010-1137

1           1)    Inconsistent or varying adjudications with respect to individual

2               members of the Class which would establish incompatible standards

3               of conduct for Defendants; and/or,

4           2)    Adjudications with respect to the individual members which would,

5               as a practical matter, be dispositive of the interests of other members

6               not parties to the adjudications, or would substantially impair or

7               impede their ability to protect their interests, including but not

8               limited to the potential for exhausting the funds available from those

9               parties who are, or may be, responsible Defendants; and,

10       (g)    Defendants have acted or refused to act on grounds generally applicable to

11              the Class, thereby making final injunctive relief appropriate with respect to

12              the class as a whole.

13       31.    Plaintiff contemplates the eventual issuance of notice to the proposed members of the Class that would set forth the subject and nature of the instant action. The Defendants' own business records may be utilized for assistance in the preparation and issuance of the contemplated notices. To the extent that any further notices may be required, Plaintiff contemplates the use of additional techniques and forms commonly used in class actions, such as published notice, e-mail notice, website notice, first-class mail, or combinations thereof, or by other methods suitable to the Class and deemed necessary and/or appropriate by the Court.

**FIRST CAUSE OF ACTION**

**(Against All Defendants for Failure to Pay Minimum and Straight Time Wages for All Hours Worked)**

32.    Plaintiff incorporates by reference and re-alleges as if fully stated herein paragraphs 1 through 31 in this Complaint.

33.    "Hours worked" is the time during which an employee is subject to the control of an employer and includes all the time the employee is suffered or permitted to work, whether or not required to do so.

/ / /

34.    At all relevant times herein mentioned, Defendants, at times, knowingly failed to pay to Plaintiff and some of, but not necessarily all of, the Class compensation for all hours they worked. By their failure to pay compensation for each hour worked as alleged above, Defendants willfully violated the provisions of California Labor Code § 1194, and any additional applicable Wage Orders, which require such compensation to non-exempt employees.

35.    Accordingly, Plaintiff and some of, but not necessarily all of, the Class are entitled to recover minimum and straight time wages for all non-overtime hours worked for Defendants.

36.    By and through the conduct described above, Plaintiff and some of, but not necessarily all of, the Class have been deprived of their rights to be paid wages earned by virtue of their employment with Defendants.

37.    By virtue of the Defendants' unlawful failure to pay additional compensation to Plaintiff and some of, but not necessarily all of, the Class for their non-overtime hours worked without pay, Plaintiff and some of, but not necessarily all of, the Class suffered, and will continue to suffer, damages in amounts which are presently unknown to Plaintiff and the Class, and which will be ascertained according to proof at trial.

38.    By failing to keep adequate time records required by California Labor Code § 1174(d), Defendants have made it difficult to calculate the full extent of minimum wage compensation due Plaintiff and some of, but not necessarily all of, the Class.

39.    Pursuant to California Labor Code § 1194.2, Plaintiff and some of, but not necessarily all of, the Class are entitled to recover liquidated damages (double damages) for Defendants' failure to pay minimum wages.

40.    California Labor Code § 204 requires employers to provide employees with all wages due and payable twice a month. Throughout the statute of limitations period applicable to this cause of action, Plaintiff and the Class were entitled to be paid twice a month at rates required by law, including minimum and straight time wages. However, Defendants failed and refused to pay Plaintiff and some of, but not necessarily all of, the Class all such wages due and failed to pay those wages twice a month.

/ / /

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

41.     Plaintiff and the Class are also entitled to seek recovery of all unpaid minimum and straight time wages, interest, and reasonable attorneys' fees and costs pursuant to California Labor Code §§ 218.5, 218.6, and 1194(a).

## SECOND CAUSE OF ACTION

### (Against All Defendants for Failure to Pay Overtime Wages)

42.     Plaintiff incorporates by reference and re-alleges as if fully stated herein paragraphs 1 through 31 in this Complaint.

43.     California Labor Code § 510 provides that employees in California shall not be employed more than eight hours in any workday or forty (40) hours in a workweek unless they receive additional compensation beyond their regular wages in amounts specified by law.

44.     California Labor Code §§ 1194 and 1198 provide that employees in California shall not be employed more than eight hours in any workday unless they receive additional compensation beyond their regular wages in amounts specified by law. Additionally, California Labor Code § 1198 states that the employment of an employee for longer hours than those fixed by the IWC is unlawful.

45.     At all times relevant hereto, Plaintiff and some of, but not necessarily all of, the Class have, at times, worked more than eight hours in a workday and/or more than forty (40) hours in a workweek, as employees of Defendants.

46.     At all times relevant hereto, Defendants failed to pay Plaintiff and some of, but not necessarily all of, the Class overtime compensation for the hours they have worked in excess of the maximum hours permissible by law as required by California Labor Code §§ 510 and 1198.

47.     By virtue of Defendants' unlawful failure to pay additional premium rate compensation to the Plaintiff and some of, but necessarily all of, the Class for their overtime hours worked, Plaintiff and some of, but not necessarily all of, the Class have suffered, and will continue to suffer, damages in amounts which are presently unknown to them, but which exceed the jurisdictional minimum of this Court and which will be ascertained according to proof at trial.

/ / /

/ / /

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

48.    By failing to keep adequate time records required by Labor Code § 1174(d), Defendants have made it difficult to calculate the full extent of overtime compensation due to Plaintiff and some of, but not necessarily all of, the Class.

49.    Plaintiff and the Class also request recovery of overtime compensation according to proof, interest, attorneys' fees and costs pursuant to California Labor Code § 1194(a), as well as the assessment of any statutory penalties against Defendants, in a sum as provided by the California Labor Code and/or other statutes.

50.    California Labor Code § 204 requires employers to provide employees with all wages due and payable twice a month. The Wage Orders also provide that every employer shall pay to each employee, on the established payday for the period involved, overtime wages for all overtime hours worked in the payroll period. Defendants failed to provide Plaintiff and some of, but not necessarily all of, the Class with all compensation due, in violation of California Labor Code § 204.

## THIRD CAUSE OF ACTION

### (Against All Defendants for Failure to Provide Meal Periods)

51.    Plaintiff incorporates by reference and re-alleges as if fully stated herein paragraphs 1 through 31 in this Complaint.

52.    Under California law, Defendants have an affirmative obligation to relieve the Plaintiff and the Class of all duty in order to take their first daily meal periods no later than at the end of Plaintiff and the Class' fifth hour of work in a workday, and to take their second meal periods no later than at the end of the tenth hour of work in the workday. California Labor Code § 512, and Section 11 of the applicable Wage Orders require that an employer provide unpaid meal periods of at least thirty (30) minutes for each five-hour period worked. It is a violation of California Labor Code § 226.7 for an employer to require any employee to work during any meal period mandated under any Wage Order.

53.    Despite these legal requirements, Defendants, at times, failed to provide Plaintiff and some, but not necessarily all of the Class with both meal periods as required by California law. By their failure to permit and authorize Plaintiff and some, but not necessarily all of the Class to

take all meal periods as alleged above (or due to the fact that Defendants, at times, made it impossible or impracticable to take these uninterrupted meal periods), Defendants willfully violated the provisions of California Labor Code § 226.7 and the applicable Wage Orders.

54.     Under California law, Plaintiff and some of, but not necessarily all of, the Class are entitled to be paid one hour of additional wages for each workday they were not provided with all required meal period(s), plus interest thereon.

## FOURTH CAUSE OF ACTION

### (Against All Defendants for Failure to Authorize and Permit Rest Periods)

55.     Plaintiff incorporates by reference and re-alleges as if fully stated herein paragraphs 1 through 31 in this Complaint.

56.     Defendants are required by California law to authorize and permit breaks of ten uninterrupted minutes for each four hours of work or major fraction of four hours (i.e. more than two hours). California Labor Code § 512, the applicable Wage Orders require that the employer permit and authorize all employees to take paid rest periods of ten minutes each for each 4-hour period worked. Thus, for example, if an employee's work time is six hours and ten minutes, the employee is entitled to two rest breaks. Each failure to authorize rest breaks as so required is itself a violation of California's rest break laws. It is a violation of California Labor Code § 226.7 for an employer to require any employee to work during any rest period mandated under any Wage Order.

57.     Despite these legal requirements, Defendants at times failed to authorize Plaintiff and some of, but not necessarily all of, the Class to take rest breaks, regardless of whether employees worked more than four hours in a workday. By their failure to permit and authorize Plaintiff and some of, but not necessarily all of the Class to take rest periods as alleged above (or due to the fact that Defendants, at times, made it impossible or impracticable to take these uninterrupted rest periods), Defendants willfully violated the provisions of California Labor Code § 226.7 and the applicable Wage Orders.

58.     Under California law, Plaintiff and some of, but not necessarily all of, the Class are entitled to be paid one hour of premium wages rate for each workday they were not provided with all required rest break(s), plus interest thereon.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

1

## FIFTH CAUSE OF ACTION

2

**(Against All Defendants for Failure to Pay Wages of Discharged Employees – Waiting Time**

3

**Penalties)**

4        59.    Plaintiff incorporates by reference and re-alleges as if fully stated herein paragraphs

5    1 through 31 in this Complaint.

6        60.    At all times herein set forth, California Labor Code §§ 201 and 202 provide that if

7    an employer discharges an employee, the wages earned and unpaid at the time of discharge are due

8    and payable immediately, and that if an employee voluntarily leaves his or her employment, his or

9    her wages shall become due and payable not later than seventy-two (72) hours thereafter, unless

10    the employee has given seventy-two (72) hours previous notice of his or her intention to quit, in

11    which case the employee is entitled to his or her wages at the time of quitting.

12        61.    Within the applicable statute of limitations, the employment of many other members

13    of the Class ended, i.e., was terminated by quitting or discharge, and the employment of others will

14    be. However, during the relevant time period, Defendants, at times, failed, and continue to fail, to

15    pay some of, but not necessarily all of, the terminated Class Members, without abatement, all

16    wages required to be paid by California Labor Code §§ 201 and 202 either at the time of discharge,

17    or within seventy-two (72) hours of their leaving Defendants' employ. Plaintiff does not allege that

18    all of the Class Members were so harmed.

19        62.    Defendants' failure to pay some of, but not necessarily all of, the Class members

20    who are no longer employed by Defendants their wages earned and unpaid at the time of discharge,

21    or within seventy-two (72) hours of their leaving Defendants' employ, is in violation of California

22    Labor Code §§ 201 and 202.

23        63.    California Labor Code § 203 provides that if an employer willfully fails to pay

24    wages owed, in accordance with §§ 201 and 202, then the wages of the employee shall continue as

25    a penalty wage from the due date, and at the same rate until paid or until an action is commenced;

26    but the wages shall not continue for more than thirty (30) days.

27    / / /

28    / / /

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

64.    Pursuant to California Labor Code § 203, some of the Class is entitled to recover from Defendants their additionally accruing wages for each day they were not paid, at their regular hourly rate of pay, up to thirty (30) days maximum.

65.    Pursuant to California Labor Code §§ 218.5, 218.6 and 1194, the Class is also entitled to an award of reasonable attorneys' fees, interest, expenses, and costs incurred in this action.

## SIXTH CAUSE OF ACTION

### (Against All Defendants for Failure to Provide and Maintain Accurate and Compliant Wage Records)

66.    Plaintiff incorporates by reference and re-alleges as if fully stated herein paragraphs 1 through 31 in this Complaint.

67.    At all material times set forth herein, California Labor Code § 226(a) provides that every employer shall furnish each of his or her employees an accurate itemized wage statement in writing showing nine pieces of information, including: (1) gross wages earned, (2) total hours worked by the employee, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

68.    Defendants have, at times, intentionally and willfully failed to provide employees with complete and accurate wage statements. The deficiencies include, among other things, the failure to correctly identify the gross wages earned by Plaintiff and some of the Class, the failure to list the true "total hours worked by the employee," and the failure to list the true net wages earned. Plaintiff does not allege that all of the Class Members were so harmed.

/ / /

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

69.    As a result of Defendants' violation of California Labor Code § 226(a), Plaintiff and some of, but not necessarily all of, the Class have suffered injury and damage to their statutorily protected rights.

70.    Specifically, Plaintiff and some of, but not necessarily all of, the Class have been injured by Defendants' intentional violation of California Labor Code § 226(a) because Plaintiff and some of, but not necessarily all of, the Class were denied both their legal right to receive, and their protected interest in receiving, accurate, itemized wage statements under California Labor Code § 226(a).

71.    Calculation of the true wage entitlement for Plaintiff and some of, but not necessarily all of, the Class is difficult and time consuming. As a result of this unlawful burden, Plaintiff and some of, but not necessarily all of, the Class were also injured as a result of having to bring this action to attempt to obtain correct wage information following Defendants' refusal to comply with many of the mandates of California's Labor Code and related laws and regulations.

72.    Plaintiff and some of, but not necessarily all of, the Class are entitled to recover from Defendants the greater of their actual damages caused by Defendants' failure to comply with California Labor Code § 226(a), or an aggregate penalty not exceeding four thousand dollars ($4,000) per employee.

73.    Plaintiff and the Class are also entitled to injunctive relief, as well as an award of attorney's fees and costs to ensure compliance with this section, pursuant to California Labor Code § 226(h).

## SEVENTH CAUSE OF ACTION

### (Against All Defendants for Failure to Indemnify Employees for Expenditures)

74.    Plaintiff incorporates by reference and re-alleges as if fully stated herein paragraphs 1 through 31 in this Complaint.

75.    As set forth above, Plaintiff and some of, but not necessarily all of, the Class were required to incur substantial necessary expenditures and losses in direct consequence of the discharge of their duties or of their obedience to directions of Defendants.

/ / /

76.    Defendants violated California Labor Code § 2802, by failing to pay and indemnify Plaintiff and some of, but not necessarily all of, the Class for necessary expenditures and losses incurred in direct consequence of the discharge of their duties or of their obedience to directions of Defendants.

77.    As a result, Plaintiff and some of, but not necessarily all of, the Class were damaged at least in the amounts of the expenses they paid, or which were deducted by Defendants from their wages.

78.    Plaintiff and the Class are entitled to reasonable attorney's fees, expenses, and costs of suit pursuant to California Labor Code § 2802(c) and interest pursuant to California Labor Code § 2802(b).

## EIGHTH CAUSE OF ACTION

### (Against All Defendants for Failure to Produce Requested Employment Records)

79.    Plaintiff incorporates by reference and re-alleges as if fully stated herein paragraphs 1 through 31 in this Complaint.

80.    Pursuant to California Labor Code § 226, current and former employees have the right to inspect or receive a copy of their records pertaining to their employment, upon reasonable request to their employer. Under this statute, an employer that receives a request to inspect or receive a copy of records pertaining to a current or former employee must comply with the request as soon as practicable, but no later than twenty-one (21) calendar days from the date of the request.

81.    Pursuant to California Labor Code § 1198.5(a), every current and former employee, or his or her representative, has the right to inspect and receive a copy of the personnel records that the employer maintains relating to the employee's performance or to any grievance concerning the employee. Under this statute, upon written request from a current or former employee or his or her representative, an employer must make the contents of those personnel records available for inspection or provide a copy of the personnel records to the current or former employee, or his or her representative, not later than thirty (30) calendar days from the date the employer receives the written request, subject to some limited exceptions. Failure to comply with these requests allows

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

for a civil penalty seven hundred fifty dollars ($750), pursuant to Labor Code §§ 1198.5(k) and 226(f).

82.    As set forth above, Plaintiff and the Class are current and former employees of Defendants.

83.    Plaintiff sent a written request through Plaintiff's counsel to Defendants for Plaintiff's personnel file, pay records, wage statements, timekeeping records, and other employment-related documents pursuant to Labor Code §§ 226 and 1198.5. However, Defendants failed to timely produce the requested employment records.

84.    Defendants violated California Labor Code §§ 226, and 1198.5 by failing to timely produce the required records requested by Plaintiff.

85.    On information and belief, Defendants' failure to provide Plaintiff with Plaintiff's requested employment records is not an isolated incident but was instead consistent with Defendants' practice that applied to Plaintiff and some of, but not necessarily all of, the Class.

86.    Pursuant to California Labor Code § 1198.5, Plaintiff and some of, but not necessarily all of, the Class are entitled to a penalty of seven hundred fifty dollars ($750) from Defendants, injunctive relief in the form of compliance with section 1198.5, and attorneys' fees and costs.

87.    Pursuant to California Labor Code § 226, Plaintiff and some of, but not necessarily all of, the Class are entitled to a penalty of seven hundred fifty dollars ($750) from Defendants, injunctive relief in the form of compliance with section 226, and attorneys' fees and costs.

## NINTH CAUSE OF ACTION

### (Against All Defendants for Violation of California Business & Professions Code §§ 17200, et seq.)

88.    Plaintiff incorporates by reference and re-alleges as if fully stated herein paragraphs 1 through 31 in this Complaint.

89.    Defendants, and each of them, are "persons" as defined under California Business & Professions Code § 17201.

/ / /

90.      Defendants' conduct, as alleged herein, has been, and continues to be, unfair, unlawful, and harmful to Plaintiff, other Class members, and to the general public. Plaintiff seeks to enforce important rights affecting the public interest within the meaning of Code of Civil Procedure § 1021.5.

91.      Defendants' activities, as alleged herein, are violations of California law, and constitute unlawful business acts and practices in violation of California Business & Professions Code §§ 17200, *et seq*.

92.      A violation of California Business & Professions Code §§ 17200, *et seq*. may be predicated on the violation of any state or federal law. All of the acts described herein as violations of, among other things, the California Labor Code, are unlawful and in violation of public policy; and in addition are immoral, unethical, oppressive, fraudulent and unscrupulous, and thereby constitute unfair, unlawful and/or fraudulent business practices in violation of California Business & Professions Code §§ 17200, *et seq*.

### Failure to Pay Minimum and Straight Time Wages

93.      Defendants' failure to pay minimum and straight time wages, and other benefits in violation of the California Labor Code constitutes unlawful and/or unfair activity prohibited by California Business & Professions Code §§ 17200, *et seq*.

### Failure to Pay Overtime Wages

94.      Defendants' failure to pay overtime compensation and other benefits in violation of California Labor Code §§ 510, 1194, and 1198 constitutes unlawful and/or unfair activity prohibited by California Business & Professions Code §§ 17200, *et seq*.

### Failure to Provide Meal Periods

95.      Defendants' failure to provide meal periods in accordance with California Labor Code §§ 226.7 and 512, and the IWC Wage Orders, as alleged above, constitutes unlawful and/or unfair activity prohibited by California Business & Professions Code §§ 17200, *et seq*.

/ / /

/ / /

/ / /

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

**Failure to Authorize and Permit Rest Periods**

96.     Defendants' failure to authorize and permit rest periods in accordance with California Labor Code § 226.7 and the IWC Wage Orders, as alleged above, constitutes unlawful and/or unfair activity prohibited by Business and Professions Code §§ 17200, *et seq*.

**Failure to Indemnify Business Expenses**

97.     Defendants' failure to reimburse expenses incurred in accordance with California Labor Code § 2802, as alleged above, constitutes unlawful and/or unfair activity prohibited by California Business & Professions Code §§ 17200, *et seq*.

98.     By and through their unfair, unlawful and/or fraudulent business practices described herein, Defendants, have obtained valuable property, money and services from Plaintiff, and all persons similarly situated, and have deprived Plaintiff, and all persons similarly situated, of valuable rights and benefits guaranteed by law, all to their detriment.

99.     Plaintiff and the Class Members suffered monetary injury as a direct result of Defendants' wrongful conduct.

100.    Plaintiff, individually, and on behalf of members of the putative Class, is entitled to, and does, seek such relief as may be necessary to disgorge money and/or property which the Defendants have wrongfully acquired, or of which Plaintiff and the Class have been deprived, by means of the above-described unfair, unlawful and/or fraudulent business practices. Plaintiff and the Class are not obligated to establish individual knowledge of the wrongful practices of Defendants in order to recover restitution.

101.    Plaintiff, individually, and on behalf of members of the putative class, is further entitled to, and does, seek a declaration that the above-described business practices are unfair, unlawful and/or fraudulent, and injunctive relief restraining the Defendants, and each of them, from engaging in any of the above-described unfair, unlawful and/or fraudulent business practices in the future.

102.    Plaintiff, individually, and on behalf of members of the putative class, has no plain, speedy, and/or adequate remedy at law to redress the injuries which the Class Members suffered as a consequence of the Defendants' unfair, unlawful and/or fraudulent business practices. As a

1    result of the unfair, unlawful and/or fraudulent business practices described above, Plaintiff,

2    individually, and on behalf of members of the putative Class, has suffered and will continue to

3    suffer irreparable harm unless the Defendants are restrained from continuing to engage in said

4    unfair, unlawful and/or fraudulent business practices.

5        103.    Plaintiff also alleges that if Defendants are not enjoined from the conduct set forth

6    herein above, they will continue to avoid paying the appropriate taxes, insurance and other

7    withholdings.

8        104.    Pursuant to California Business & Professions Code §§ 17200, *et seq*., Plaintiff and

9    putative Class Members are entitled to restitution of the wages withheld and retained by

10   Defendants during a period that commences four years prior to the filing of this complaint; a

11   permanent injunction requiring Defendants to pay all outstanding wages due to Plaintiff and Class

12   Members; an award of attorneys' fees pursuant to California Code of Civil Procedure § 1021.5 and

13   other applicable laws; and an award of costs.

## PRAYER FOR RELIEF

15   Plaintiff, individually, and on behalf of all others similarly situated only with respect to the

16   class claims, prays for relief and judgment against Defendants, jointly and severally, as follows:

17                          Class Certification

18       1.    That this action be certified as a class action with respect to the First, Second, Third,

19   Fourth, Fifth, Sixth, Seventh, Eighth, and Ninth Causes of Action;

20       2.    That Plaintiff be appointed as the representative of the Class; and,

21       3.    That counsel for Plaintiff be appointed as Class Counsel.

22                       As to the First Cause of Action

23       4.    That the Court declare, adjudge, and decree that Defendants violated California

24   Labor Code §§ 204 and 1194 and applicable IWC Wage Orders by willfully failing to pay all

25   minimum and straight time wages due;

26       5.    For unpaid wages as may be appropriate;

27       6.    For pre-judgment interest on any unpaid compensation commencing from the date

28   such amounts were due;

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

7.    For penalties, restitution, and liquidated damages pursuant to California Labor Code § 1197.1;

8.    For liquidated damages;

9.    For reasonable attorneys' fees and for costs of suit incurred herein pursuant to California Labor Code § 1194(a); and,

10.    For such other and further relief as the Court may deem equitable and appropriate.

<u>As to the Second Cause of Action</u>

11.    That the Court declare, adjudge, and decree that Defendants violated California Labor Code §§ 510 and 1198 and applicable IWC Wage Orders by willfully failing to pay all overtime wages due;

12.    For unpaid wages at overtime wage rates as may be appropriate;

13.    For pre-judgment interest on any unpaid overtime compensation commencing from the date such amounts were due;

14.    For reasonable attorneys' fees and for costs of suit incurred herein pursuant to California Labor Code § 1194(a); and,

15.    For such other and further relief as the Court may deem equitable and appropriate.

<u>As to the Third Cause of Action</u>

16.    That the Court declare, adjudge, and decree that Defendants violated California Labor Code §§ 226.7 and 512, and the IWC Wage Orders;

17.    For unpaid meal period premium wages as may be appropriate;

18.    For pre-judgment interest on any unpaid compensation commencing from the date such amounts were due;

19.    For reasonable attorneys' fees under California Code of Civil Procedure § 1021.5, and for costs of suit incurred herein; and,

20.    For such other and further relief as the Court may deem equitable and appropriate.

<u>As to the Fourth Cause of Action</u>

21.    That the Court declare, adjudge, and decree that Defendants violated California Labor Code §§ 226.7 and 512, and the IWC Wage Orders;

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

22.    For unpaid rest period premium wages as may be appropriate;

23.    For pre-judgment interest on any unpaid compensation commencing from the date such amounts were due;

24.    For reasonable attorneys' fees under California Code of Civil Procedure § 1021.5, and for costs of suit incurred herein; and,

25.    For such other and further relief as the Court may deem equitable and appropriate.

<u>As to the Fifth Cause of Action</u>

26.    That the Court declare, adjudge and decree that Defendants violated California Labor Code §§ 201, 202, and 203 by willfully failing to pay all compensation owed at the time of termination of the employment;

27.    For statutory wage penalties pursuant to California Labor Code § 203 for former employees who have left Defendants' employ;

28.    For pre-judgment interest on any unpaid wages from the date such amounts were due;

29.    For reasonable attorneys' fees and for costs of suit incurred herein; and,

30.    For such other and further relief as the Court may deem equitable and appropriate.

<u>As to the Sixth Cause of Action</u>

31.    That the Court declare, adjudge, and decree that Defendants violated the record keeping provisions of California Labor Code § 226(a) and applicable IWC Wage Orders, and willfully failed to provide accurate itemized wage statements thereto;

32.    For all actual damages, according to proof;

33.    For statutory penalties pursuant to California Labor Code § 226(e);

34.    For injunctive relief to ensure compliance with this section, pursuant to California Labor Code § 226(h);

35.    For reasonable attorneys' fees and for costs of suit incurred herein; and,

36.    For such other and further relief as the Court may deem equitable and appropriate.

/ / /

/ / /

CLASS ACTION COMPLAINT

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

As to the Seventh Cause of Action

37.    That the Court declare, adjudge, and decree that Defendants violated California Labor Code § 2802 by willfully failing to indemnify employees for expenditures;

38.    For unpaid wages or unreimbursed business expenses as may be appropriate;

39.    For pre-judgment interest on any unpaid compensation commencing from the date such amounts were due;

40.    For reasonable attorneys' fees and for costs of suit incurred herein; and,

41.    For such other and further relief as the Court may deem equitable and appropriate.

As to the Eighth Cause of Action

42.    That the Court declare, adjudge, and decree that Defendants violated California Labor Code § 226 and 1198.5 by willfully failing to produce employment records;

43.    For statutory penalties pursuant to California Labor Code §§ 226(f) and 1198.5(k);

44.    For injunctive relief to ensure compliance with this section, pursuant to California Labor Code § 226(h) and 1198.5(l);

45.    For reasonable attorneys' fees and for costs of suit incurred herein; and,

46.    For such other and further relief as the Court may deem equitable and appropriate.

As to the Ninth Cause of Action

47.    That the Court declare, adjudge, and decree that Defendants violated California Business & Professions Code §§ 17200, *et seq.* by failing to pay for all hours worked (minimum, straight time, and overtime wages), failing to provide meal periods, and failing to authorize and permit rest periods;

48.    For restitution of unpaid wages to Plaintiff and all Class Members and prejudgment interest from the day such amounts were due and payable;

49.    For the appointment of a receiver to receive, manage and distribute any and all funds disgorged from Defendants and determined to have been wrongfully acquired by Defendants as a result of violations of California Business & Professions Code §§ 17200 *et seq.*;

50.    For reasonable attorneys' fees and costs of suit incurred herein pursuant to California Code of Civil Procedure § 1021.5;

51. For injunctive relief to ensure compliance with this section, pursuant to California Business & Professions Code §§ 17200, *et seq*.; and,

52. For such other and further relief as the Court may deem equitable and appropriate.

<u>As to all Causes of Action</u>

53. For any additional relief that the Court deems just and proper.

Respectfully submitted,

Dated: September 28, 2024

**WILSHIRE LAW FIRM**

By: _____
John G. Yslas
Aram Boyadjian

Attorneys for Plaintiff

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury as to all causes of action triable by jury.

Dated: September 28, 2024

**WILSHIRE LAW FIRM**

By: _____
John G. Yslas
Aram Boyadjian

Attorneys for Plaintiff

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF ALAMEDA

Reserved for Clerk's File Stamp

**FILED**
Superior Court of California
County of Alameda

09/30/2024

Chad Finke, Executive Officer/Clerk of the Court

By: _[signature]_ Deputy

M. Cortez

COURTHOUSE ADDRESS:
Rene C. Davidson Courthouse
Administration Building, 1221 Oak Street, Oakland, CA 94612

PLAINTIFF:
Vincent Carrillo

DEFENDANT:
Monterey Mechanical Co., a California corporation

## NOTICE OF CASE MANAGEMENT CONFERENCE

CASE NUMBER:
24CV093407

TO THE PLAINTIFF(S)/ATTORNY(S) FOR PLAINTIFF(S) OF RECORD:

You are ordered to serve all named defendants and file proofs of service on those defendants with the court within 60 days of the filing of the complaint (Cal. Rules of Court, 3.110(b)).

Give notice of this conference to all other parties and file proof of service.

Your Case Management Conference has been scheduled on:

> Date: 01/28/2025    Time: 8:30 AM    Dept.: 21
>
> Location: Rene C. Davidson Courthouse
> Administration Building, 1221 Oak Street, Oakland, CA 94612

TO DEFENDANT(S)/ATTORNEY(S) FOR DEFENDANT(S) OF RECORD:

The setting of the Case Management Conference does not exempt the defendant from filing a responsive pleading as required by law, you must respond as stated on the summons.

TO ALL PARTIES who have appeared before the date of the conference must:

Pursuant to California Rules of Court, 3.725, a completed Case Management Statement (Judicial Council form CM-110) must be filed and served at least 15 calendar days before the Case Management Conference. The Case Management Statement may be filed jointly by all parties/attorneys of record or individually by each party/attorney of record.

**Meet and confer**, in person or by telephone as required by Cal. Rules of Court, rule 3.724.

**Post jury fees** as required by Code of Civil Procedure section 631.

If you do not follow the orders above, the court may issue an order to show cause why you should not be sanctioned under Cal. Rules of Court, rule 2.30. Sanctions may include monetary sanctions, striking pleadings or dismissal of the action.

The judge may place a Tentative Case Management Order in your case's on-line register of actions before the conference. This order may establish a discovery schedule, set a trial date or refer the case to Alternate Dispute Resolution, such as mediation or arbitration. Check the court's eCourt Public Portal for each assigned department's procedures regarding tentative case management orders at https://eportal.alameda.courts.ca.gov.

# NOTICE OF
# CASE MANAGEMENT CONFERENCE

| **SUPERIOR COURT OF CALIFORNIA**<br>**COUNTY OF ALAMEDA** | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Rene C. Davidson Courthouse<br>1225 Fallon Street, Oakland, CA 94612 | **FILED**<br>Superior Court of California<br>County of Alameda<br>09/30/2024<br>Chad Finke, Executive Officer / Clerk of the Court<br>By: _[signature]_ Deputy<br>M. Cortez |
| PLAINTIFF/PETITIONER:<br>Vincent Carrillo | |
| DEFENDANT/RESPONDENT:<br>Monterey Mechanical Co., a California corporation | |
| **CERTIFICATE OF MAILING** | CASE NUMBER:<br>24CV093407 |

**I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the attached document upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Oakland, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.**

John Yslas
Wilshire Law Firm
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010

Chad Finke, Executive Officer / Clerk of the Court

Dated: 10/01/2024                    By: _[signature]_

M. Cortez, Deputy Clerk

**CERTIFICATE OF MAILING**

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**ELECTRONICALLY FILED**
Superior Court of California
County of Alameda
**10/01/2024**
Chad Finke, Executive Officer / Clerk of the Court
By: _____ D. Franklin _____ Deputy

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
MONTEREY MECHANICAL CO., a California corporation; and DOES 1 through 10, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
VINCENT CARRILLO, individually, and on behalf of all others similarly situated,

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

   You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

   There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO!* Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

   Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

   Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

The name and address of the court is:
*(El nombre y dirección de la corte es):* Alameda County Superior Court

Hayward Hall of Justice, 24405 Amador St., Hayward, California 94544

| CASE NUMBER: *(Número del Caso):* |
|---|
| 24CV093407 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
John G. Yslas, Wilshire Law Firm, 3055 Wilshire Blvd., 12th Floor, Los Angeles, CA 90010; (213) 381-9988

DATE:
*(Fecha)* 10/01/2024    Chad Finke, Executive Officer / Clerk of the Court    Clerk, by _____ D. Franklin _____ , Deputy
*(Secretario)*    *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

    under: ☐ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)
    ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
    ☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)
    ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

**Page 1 of 1**

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| John G. Yslas (SBN 187324), Aram Boyadjian (SBN 334009)<br>Wilshire Law Firm, 3055 Wilshire Blvd., 12th Floor, Los Angeles, California 90010<br><br>TELEPHONE NO.: (213) 381-9988  FAX NO.: (213) 381-9989<br>EMAIL ADDRESS: john.yslas@wilshirelawfirm.com; aram.boyadjian@wilshirelawfirm.com<br>ATTORNEY FOR *(Name)*: Vincent Carrillo | **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of Alameda<br>09/30/2024 at 12:00:00 AM<br>By: Milagros Cortez,<br>Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  ALAMEDA
STREET ADDRESS: 24405 AMADOR ST
MAILING ADDRESS: 24405 AMADOR ST
CITY AND ZIP CODE: HAYWARD, 94544
BRANCH NAME: HAYWARD HALL OF JUSTICE

CASE NAME:
Carrillo v. Monterey Mechanical Co.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: 24CV093407 |
|---|---|---|
| [x] Unlimited (Amount demanded exceeds $35,000) [ ] Limited (Amount demanded is $35,000 or less) | [ ] Counter  [ ] Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[x] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [x] is  [ ] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [x] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [x] Substantial amount of documentary evidence
   d. [x] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. [x] monetary  b. [x] nonmonetary; declaratory or injunctive relief  c. [ ] punitive
4. Number of causes of action *(specify)*: Nine (9)
5. This case [x] is  [ ] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: September 28, 2024
Aram Boyadjian
_____
(TYPE OR PRINT NAME)      ▶      (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. January 1, 2024]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
*www.courts.ca.gov*

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**                        CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice– Physicians & Surgeons
    Other Professional Health Care Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip and fall)
    Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
    Intentional Infliction of Emotional Distress
    Negligent Infliction of Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
    Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/ Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court Case Matter
    Writ–Other Limited Court Case Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of County)
    Confession of Judgment *(non-domestic relations)*
    Sister State Judgment
    Administrative Agency Award *(not unpaid taxes)*
    Petition/Certification of Entry of Judgment on Unpaid Taxes
    Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-harassment)*
    Mechanics Lien
    Other Commercial Complaint Case *(non-tort/non-complex)*
    Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late Claim
    Other Civil Petition

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NO: | FOR COURT USE ONLY |
|---|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY:        STATE BAR NO:

NAME: John G. Yslas (SBN 187324); Fawn F. Bekam (SBN 307312)
FIRM NAME: WILSHIRE LAW FIRM
STREET ADDRESS: 3055 Wilshire Blvd., 12th Floor
CITY: Los Angeles                 STATE: CA    ZIP CODE: 90010
TELEPHONE NO.: (213) 381-9988     FAX NO.: (213) 381-9989
E-MAIL ADDRESS: fawn.bekam@wilshirelawfirm.com; john.yslas@wilshirelawfirm.com
ATTORNEY FOR (Name): Vincent Carrillo

**FOR COURT USE ONLY**

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** ALAMEDA
STREET ADDRESS: 24405 Amador St.
MAILING ADDRESS: 24405 Amador St.
CITY AND ZIP CODE: Hayward, 94544
BRANCH NAME: Hayward Hall of Justice

Plaintiff/Petitioner: Vincent Carrillo
Defendant/Respondent: Monterey Mechanical Co.

| **NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL** | CASE NUMBER: 24CV093407 |
|---|---|

TO *(insert name of party being served):* Monterey Mechanical Co.

---

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

---

Date of mailing: October 28, 2024

Fawn F. Bekam
(TYPE OR PRINT NAME)                    ▶    (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of *(to be completed by sender before mailing):*

1.  [x]  A copy of the summons and of the complaint.
2.  [x]  Other *(specify):*

Civil Case Cover Sheet, Notice of Case Management Conference

*(To be completed by recipient):*

Date this form is signed: _____

_____        ▶    _____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,          (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ON WHOSE BEHALF THIS FORM IS SIGNED)                  ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL**

Attachment 2

**Garcia, Marco A. (San Diego)**

| | |
|---|---|
| **From:** | Ramirez, Stefano (San Diego) |
| **Sent:** | Monday, November 18, 2024 10:24 AM |
| **To:** | John Yslas, Esq.; Aram.boyadjian@wilshirelawfirm.com |
| **Cc:** | Besser, Lara P. (San Diego); Garcia, Marco A. (San Diego) |
| **Subject:** | NAR // CARRILLO vs MONTEREY MECHANICAL CO., A CALIFORNIA // 24CV093407 |
| **Attachments:** | CARRILLO 2024 11 18 (Class) NAR - Signed.pdf; CARRILLO 2024 11 18 (Class) NAR - Signed - POS.pdf |

Hello,

Please find attached our office's:

      **-Notice of Acknowledgement of Receipt – Civil [Signed]**
      **-Proof of Service.**

==**Moving forward, would your office be amiable to an e-service agreement on communications and serving of documents? If you are, please forward us your complete service list. For us it would be:**==

==Besser, Lara P.  - Lara.Besser@jacksonlewis.com==
==Garcia, Marco A. - Marco.Garcia@jacksonlewis.com==
==Stefano R. Encarnacion – Stefano.Ramirez@jacksonlewis.com==

Thank you.



**Stefano Ramirez**
Legal Secretary

**Jackson Lewis P.C.**
225 Broadway
Suite 1800
San Diego, CA 92101
Direct: (619) 881-4479 | Main: (619) 573-4900
Stefano.Ramirez@jacksonlewis.com | www.jacksonlewis.com

**POS-015**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY:      STATE BAR NO:<br>NAME: John G. Yslas (SBN 187324); Fawn F. Bekam (SBN 307312)<br>FIRM NAME: WILSHIRE LAW FIRM<br>STREET ADDRESS: 3055 Wilshire Blvd., 12th Floor<br>CITY: Los Angeles      STATE: CA    ZIP CODE: 90010<br>TELEPHONE NO.: (213) 381-9988    FAX NO.: (213) 381-9989<br>E-MAIL ADDRESS: fawn.bekam@wilshirelawfirm.com; john.yslas@wilshirelawfirm.com<br>ATTORNEY FOR (Name): Vincent Carrillo | *FOR COURT USE ONLY* |

| |
|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF** ALAMEDA<br>STREET ADDRESS: 24405 Amador St.<br>MAILING ADDRESS: 24405 Amador St.<br>CITY AND ZIP CODE:    Hayward, 94544<br>BRANCH NAME: Hayward Hall of Justice |
| Plaintiff/Petitioner: Vincent Carrillo<br>Defendant/Respondent: Monterey Mechanical Co. |

| | |
|---|---|
| **NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL** | CASE NUMBER:<br>24CV093407 |

TO (insert name of party being served): Monterey Mechanical Co.

---

### NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

---

Date of mailing: October 28, 2024

Fawn F. Bekam

(TYPE OR PRINT NAME)                  ▶         (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

### ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of **(to be completed by sender before mailing)**:

1. [ x ] A copy of the summons and of the complaint.
2. [ x ] Other (specify):

       Civil Case Cover Sheet, Notice of Case Management Conference

**(To be completed by recipient):**

Date this form is signed:     November 18, 2024

Marco A. Garcia, Esq. on behalf of Monterey Mechanical Co.

(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,        ▶      (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ON WHOSE BEHALF THIS FORM IS SIGNED)                      ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

**Page 1 of 1**

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-015 [Rev. January 1, 2005] | **NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL** | Code of Civil Procedure,<br>§§ 415.30, 417.10<br>www.courtinfo.ca.gov |

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF ALAMEDA | COURT USE ONLY |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and Address):    Telephone No.<br>Lara P. Besser (SBN 282289)       Tel:  619.573.4900<br>Marco A. Garcia (SBN 343720)     Fax:  619.573.4901<br>JACKSON LEWIS P.C.<br>225 Broadway, Suite 1800<br>San Diego, California 92101<br>Lara.Besser@jacksonlewis.com; Marco.Garcia@jacksonlewis.com | |
| SHORT CASE TITLE<br>*CARRILLO vs MONTEREY MECHANICAL CO., A CALIFORNIA CORPORATION* | JUDGE:   Noël Wise<br>DEPT.:   21 |
| ATTORNEYS FOR DEFENDANT<br>MONTEREY MECHANICAL CO. | Case No.:<br>24CV093407 |

# PROOF OF SERVICE

I, the undersigned, am over 18 years of age, employed in the County of San Diego, California, in which the within-mentioned service occurred; and that I am not a party to the subject cause of action. My business address is 225 Broadway, Suite 1800, San Diego, California 92101. On November 18, 2024, I served the following documents:

## NOTICE OF ACKNOWLEDGMENT OF RECEIPT - CIVIL

***Counsel for Plaintiff***
John G. Yslas
Aram Boyadjian
WILSHIRE LAW FIRM
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010
Tel:    (213) 381-9988
Fax:   (213) 381-9989
Email: John.yslas@wilshirelawfirm.com
       Aram.boyadjian@wilshirelawfirm.com

☒  **BY ELECTRONIC SERVICE.** I served the document(s) listed above via electronic mail (e-mail) to the electronic notification address(es) set forth above on this date. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☒  **BY U.S. MAIL.** I placed or caused to be placed, the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in United States mail in the State of California at San Diego, addressed as set forth above.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on November 18, 2024              _____

                                       Stefano R. Encarnacion
                                       Stefano.RAmirez@jacksonlewis.com

Attachment 3

Lara P. Besser (SBN 282289)
Marco A. Garcia (SBN 343720)
JACKSON LEWIS P.C.
225 Broadway, Suite 1800
San Diego, CA 92101
Telephone: (619) 573-4900
Facsimile: (619) 573-4901
Lara.Besser@jacksonlewis.com
Marco.Garcia@jacksonlewis.com

Attorneys for Defendant
MONTEREY MECHANICAL CO.

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF ALAMEDA

| | |
|---|---|
| VINCENT CARRILLO, individually, and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>MONTEREY MECHANICAL CO., a California corporation; and DOES 1 thorough 10, inclusive,<br><br>    Defendant | Case No.: 24CV093407<br><br>[Assigned for all purposes to Hon. Judge Noël Wise Dept. 21]<br><br>**CLASS ACTION**<br><br>**DEFENDANT MONTEREY MECHANICAL CO.'S ANSWER TO PLAINTIFF'S COMPLAINT**<br><br>Complaint filed: September 30, 2024<br>Trial Date: Not Assigned |

Defendant MONTEREY MECHANICAL CO. ("Defendant") on behalf of itself and for no other entity, hereby responds to the Class Action Complaint ("Complaint") filed by Plaintiff VINCENT CARRILLO ("Plaintiff") as follows:

<u>**GENERAL DENIAL**</u>

Pursuant to California Code of Civil Procedure section 431.30(d), Defendant generally denies each and every allegation of the Complaint. Defendant further specifically denies that it is in any way liable to Plaintiff or any of the alleged putative class members he purports to represent, that this case can be brought as a class or representative action, and that Plaintiff and/or any putative class members are entitled to any damages, penalties, or any other relief.

///

DEFENDANT MONTEREY MECHANICAL CO.'S ANSWER TO PLAINTIFF'S COMPLAINT

## SEPARATE AFFIRMATIVE DEFENSES

Defendant hereby states the following defenses to the Complaint but does not assume the burden of proof on any such defense except as required by applicable law. Defendant reserves the right to assert additional defenses or otherwise supplement these defenses upon discovery of facts or evidence rendering such action appropriate.

## FIRST AFFIRMATIVE DEFENSE

### (No Irreparable Harm)

1.      Plaintiff's claims for declaratory or other equitable relief, are barred in the light of the fact that neither Plaintiff nor the putative class members he purports to represent have not suffered and will not suffer irreparable harm due to any alleged conduct by Defendant.

## SECOND AFFIRMATIVE DEFENSE

### (Payment of Wages)

2.      Plaintiff and the putative class members he purports to represent received proper payment for all hours worked in timely fashion in accordance with the Labor Code.

## THIRD AFFIRMATIVE DEFENSE

### (Not Suffered or Permitted to Work)

3.      The Complaint as a whole, and every cause of action alleged therein, fails because Plaintiff and the putative class members were not suffered or permitted to work during any time for which they allegedly were not paid the appropriate wage rate, including the proper minimum, straight, or overtime rates.

## FOURTH AFFIRMATIVE DEFENSE

### (No Cognizable Injury or Damages)

4.      The Sixth Cause of Action is barred in whole or in part because, even assuming *arguendo* Plaintiff or the putative class members he purports to represent were not provided with a proper itemized statement of wages and deductions, they are not entitled to recover damages because they suffered no injury based on Defendant' alleged failure to provide itemized wage statements.

///

///

1

**FIFTH AFFIRMATIVE DEFENSE**

2

**(No Knowing and Intentional Failure)**

3    5.    The Sixth Cause of Action is barred in whole or in part because, even assuming *arguendo*

4    Plaintiff or the putative class members he purports to represent were not provided with a proper itemized

5    statement of wages and deductions, a recovery of damages or penalties is not permitted because

6    Defendant's alleged failure to comply with California Labor Code Section 226(a) was not a "knowing and

7    intentional failure" under California Labor Code Section 226(e).

8

**SIXTH AFFIRMATIVE DEFENSE**

9

**(Statute of Limitations)**

10    6.    The Complaint, and each and every cause of action alleged therein is barred in whole or in

11    part by the applicable statutes of limitations, including but not limited to Cal. Civ. Proc. Code §§ 338,

12    340(a), Cal. Lab. Code §§ 203(b), 210, and Cal. Bus. & Prof. Code § 17208.

13

**SEVENTH AFFIRMATIVE DEFENSE**

14

**(No Willful Violation / Good Faith Dispute)**

15    7.    To the extent Plaintiff seek penalties for any alleged willful failure to comply with the

16    requirements of the California Labor Code, including Labor Code section 203, such penalties are barred

17    because Defendant did not willfully violate any provision of the California Labor Code, and good faith

18    disputes exist concerning any alleged violations.

19

**EIGHTH AFFIRMATIVE DEFENSE**

20

**(Accord, Satisfaction and Payment)**

21    8.    Some or all of Plaintiff's claims and the claims of the putative class members he purports

22    to represent are barred, in whole or in part, by the principles of accord and satisfaction, and payment.

23

**NINTH AFFIRMATIVE DEFENSE**

24

**(Waiver and Release)**

25    9.    Some or all of Plaintiff's claims and the claims of the putative class members he purports

26    to represent are barred, in whole or in part, to the extent such claims have been waived, discharged, and/or

27    abandoned.

28    ///

DEFENDANT MONTEREY MECHANICAL CO.'S ANSWER TO PLAINTIFF'S COMPLAINT

1

## TENTH AFFIRMATIVE DEFENSE

2

### (Setoff and Recoupment)

3    10.    Defendant denies that it acted unlawfully or improperly toward Plaintiff and the putative

4  class members he purports to represent.  However, with regard to any potential award of damages to

5  Plaintiff and any putative class members, Defendant is entitled under the equitable doctrine of setoff and

6  recoupment to offset all overpayments to and obligations of Plaintiff and/or any putative class members

7  owed to Defendant against any judgment that may be entered against Defendant.

8

## ELEVENTH AFFIRMATIVE DEFENSE

9

### (Comparative Fault and/or Negligence)

10    11.    Without admitting that Plaintiff is entitled to any recovery, Defendant alleges that any

11  recovery to which Plaintiff and the putative class members he purports to represent might be entitled must

12  be reduced by reason of Plaintiff's and/or putative class members' own fault and/or negligence.

13

## TWELFTH AFFIRMATIVE DEFENSE

14

### (Voluntary Waiver of Meal and Rest Periods)

15    12.    Plaintiff's Third and Fourth Causes of Action for failure to provide meal and rest periods

16  are barred in whole or in part to the extent Defendant provided meal and rest periods in compliance with

17  California law, and Plaintiff and the putative class members he purports to represent voluntarily waived

18  meal and rest breaks as allowed by the relevant provisions of the IWC Wage Orders.

19

## THIRTEENTH AFFIRMATIVE DEFENSE

20

### (No Jury Trial for Unfair Competition Claim)

21    13.    Defendant asserts that to the extent Plaintiff seeks equitable relief under the Ninth Cause

22  of Action under California Business and Professions Code section 17200, *et seq.*, they are not entitled to

23  a jury trial, and instead must adjudicate their claims by way of a bench trial.  *See Hodge v. Sup. Ct.* (2006)

24  145 Cal. App. 4th 278.

25  ///

26  ///

27  ///

28  ///

DEFENDANT MONTEREY MECHANICAL CO.'S ANSWER TO PLAINTIFF'S COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### FOURTEENTH AFFIRMATIVE DEFENSE

**(Adequate Remedy at Law)**

14.    Plaintiff and the putative class members he purports to represent are not entitled to a recovery of equitable relief, including any relief requested pursuant to California Business & Professions Code section 17200 *et seq.* because of the existence of an adequate remedy at law.

### FIFTEENTH AFFIRMATIVE DEFENSE

**(Excessive Fines)**

15.    To the extent Plaintiff seeks to recover liquidated damages or any penalties that are disproportionate to the actual harm suffered, if any, such an award under the circumstances of this case would constitute and excessive fine and would otherwise be in violation of Defendant' due process and other rights under the United States Constitution.

### SIXTEENTH AFFIRMATIVE DEFENSE

**(No Unreimbursed Business Expenses)**

16.    Plaintiff's Seventh Cause of Action is barred because Defendant complied with California law as it relates to business expenses under Cal. Lab. Code §§ 2800, 2802 and reimbursed Plaintiff and any alleged putative class member for all business expenses for which they requested reimbursement.

### SEVENTEENTH AFFIRMATIVE DEFENSE

**(Estoppel)**

17.    Plaintiff's claims, and the claims of the purported class, under California Business & Professions Code sections 17200 *et seq.* are barred, in whole or in part, by the doctrine of estoppel.

### EIGHTEENTH AFFIRMATIVE DEFENSE

**(Laches and Unclean Hands)**

18.    Plaintiff' Ninth Cause of Action under California Business & Professions Code sections 17200 *et seq.* is barred, in whole or in part, by the doctrines of laches and unclean hands because Plaintiff and the purported class did not act to remedy issues, including, but not limited to, alleged missed meal or rest periods and inaccurate wage statements, as they were empowered to do by raising the issues in a timely manner or otherwise placing Defendant on notice such that Defendant could address them.

///

DEFENDANT MONTEREY MECHANICAL CO.'S ANSWER TO PLAINTIFF'S COMPLAINT

### NINETEENTH AFFIRMATIVE DEFENSE

**(Arbitration)**

19.     To the extent an applicable collective bargaining agreement or any other agreement between Defendant, on the one hand, and Plaintiff or any alleged putative class member, on the other hand, include an arbitration provision covering the claims at issue in this action, such claims are subject to mandatory, binding arbitration and Defendant reserves the right to compel arbitration of all claims in this action.

### TWENTIETH AFFIRMATIVE DEFENSE

**(Res Judicata and Collateral Estoppel)**

20.     Defendant alleges that some or all of Plaintiff and the alleged putative class members' claims are barred on grounds of res judicata and collateral estoppel, or that those claims will be barred upon resolution of other preexisting lawsuits filed by other plaintiffs with overlapping claims.

### TWENTY-FIRST AFFIRMATIVE DEFENSE

**(Failure to State Claim)**

21.     Plaintiff's Complaint, and each purported cause of action alleged therein, is barred, in whole or in part, as it fails to state facts sufficient to constitute a cause of action against Defendant upon which relief may be granted.

### TWENTY-SECOND AFFIRMATIVE DEFENSE

**(Plaintiff is Subject to Collective Bargaining Agreement)**

22.     The Complaint, and each purported cause of action alleged therein, is barred and/or preempted to the extent Plaintiff and/or alleged putative class members are members of a labor organization that is a signatory to a collective bargaining agreement and, as such, the claims alleged in the Complaint are preempted by the Labor Management Relations Act, 29 U.S.C. sections 141, *et seq.,* and/or the National Labor Relations Act, 29 U.S.C. sections 151, *et seq.*

///

///

///

///

DEFENDANT MONTEREY MECHANICAL CO.'S ANSWER TO PLAINTIFF'S COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TWENTY-THIRD AFFIRMATIVE DEFENSE**

**(Failure to abide Grievance and Arbitration Procedure)**

23.    The Complaint and each purported cause of action alleged therein, is barred because Plaintiff and/or the alleged putative class members failed to timely pursue the grievance and arbitration procedures under an applicable collective bargaining agreement.

**RESERVATION OF RIGHTS**

Defendant has not completed its investigation of the facts of this case, has not completed discovery in this matter, and has not completed its preparation for trial.  The defenses asserted herein are based on Defendant's knowledge, information, and belief at this time, and Defendant specifically reserves the right to modify, amend, or supplement any defense contained herein at any time.

**DEFENDANT'S REQUEST FOR RELIEF**

Wherefore, Defendant prays for judgment:

1.    That Plaintiff take nothing by way of the Complaint;

2.    That the Complaint be dismissed with prejudice and judgment entered in favor of Defendant and against Plaintiff on all claims;

3.    That Defendant be awarded their costs of suit incurred herein;

4.    That Defendant be awarded attorney's fees pursuant to statute and/or contract; and

5.    That the Court award Defendant such other and further relief as it deems just and proper.

DATED:  December 18, 2024                      JACKSON LEWIS P.C.

By: _____
Lara P. Besser
Marco A. Garcia
Attorneys for Defendant
MONTEREY MECHANICAL CO.

4871-4906-7768, v. 1

Attachment 4

# 2018-2023

# MASTER AGREEMENT

# for

# NORTHERN CALIFORNIA

# between

# UNITED CONTRACTORS

# and

# LABORERS



**2018-2023**
**LABORERS**
**MASTER AGREEMENT**

# TABLE OF CONTENTS

| Section | Title | Page |
|---|---|---|
| SECTION 1 | GENERAL PROVISIONS | 1 |
| SECTION 2 | BARGAINING REPRESENTATIVES | 4 |
| SECTION 3 | EMPLOYMENT AND DISCHARGE | 5 |
| SECTION 4 | SHOWUP TIME | 11 |
| SECTION 5 | HIGHER WAGES | 12 |
| SECTION 6 | MEAL PERIODS, REST PERIODS, AND HEAT ILLNESS PREVENTATIVE RECOVERY PERIODS | 12 |
| SECTION 7 | RECORDS | 13 |
| SECTION 8 | NO CESSATION OF WORK | 13 |
| SECTION 9 | GRIEVANCE PROCEDURE | 14 |
| SECTION 9A | CONTRACT ADMINISTRATION | 16 |
| SECTION 9B | INDUSTRY STABILIZATION FUND | 16 |
| SECTION 10 | PAYMENT OF WAGES | 17 |
| SECTION 11 | SUBCONTRACTORS | 17 |
| SECTION 12 | CONFLICTING CONTRACTS | 18 |
| SECTION 13A | ELIMINATION OF RESTRICTIONS ON PRODUCTION | 18 |
| SECTION 13B | PROTECTIVE CLOTHING | 19 |
| SECTION 13C | SAFETY | 19 |
| SECTION 14A | ADDITIONAL WORK OR CLASSIFICATIONS | 20 |
| SECTION 14B | JURISDICTIONAL DISPUTES | 21 |
| SECTION 15 | PREJOB CONFERENCE | 21 |
| SECTION 16A | EMPLOYER'S MEMBERSHIP | 21 |
| SECTION 16B | AGREEMENT BINDING UPON PARTIES | 21 |
| SECTION 17 | CONTRACTINGPIECE WORK | 21 |
| SECTION 18 | WAGES | 21 |
| SECTION 19 | WAGES APPLICABLE TO CLASSIFICATIONS | 22 |
| SECTION 20A | OVERTIME RATES, HOURS AND WORKING CONDITIONS | 22 |
| SECTION 20B | PARKING | 25 |
| SECTION 21 | STATUS OF FOREMEN | 25 |
| SECTION 22 | STEWARD | 25 |
| SECTION 23 | RECOGNIZED HOLIDAYS | 26 |
| SECTION 24 | GUNITE, SHOT CRETE, PANEL CRETE AND SIMILAR TYPE WORK INCLUDING ALL PLACING, FINISHING AND PATCHING OF SHOT CRETE OR GUNITE | 26 |
| SECTION 25 | WRECKING WORK; GARDENING, HORTICULTURAL AND LANDSCAPING WORK | 26 |
| SECTION 26 | LIABILITY OF THE PARTIES | 26 |
| SECTION 27 | EMPLOYEES NOT TO BE DISCHARGED FOR RECOGNIZING AUTHORIZED PICKET LINES | 27 |
| SECTION 28A | HEALTH AND WELFARE PLAN, PENSION/ANNUITY PLAN, VACATIONHOLIDAYDUES SUPPLEMENT PLAN, TRAINING-RETRAINING/APPRENTICESHIP PLAN | 27 |
| SECTION 28B | DELINQUENCY WITHDRAWALS | 29 |
| SECTION 28C | SECURITY FOR INDIVIDUAL EMPLOYER PAYMENTS INTO TRUST FUNDS | 29 |
| SECTION 28D | SUPPLEMENTAL DUES | 29 |
| SECTION 28E | WAGE AND FRINGE BENEFIT INCREASE | 30 |
| SECTION 28F | LABORERS' APPRENTICESHIP PROGRAM | 31 |
| SECTION 29 | GENERAL SAVING CLAUSE | 32 |
| SECTION 30 | CHANGE OF NAME OR STYLE | 33 |
| SECTION 31 | WARRANTY | 33 |
| SECTION 32 | EFFECTIVE AND TERMINATION DATE | 33 |
| ATTACHMENT A | NOTIFICATION OF TERMINATION FORM | 35 |



SUPPLEMENT NO. 1    LABORERS WAGE RATES .................................................................36
SUPPLEMENT NO. 2    GUNITE, SHOTCRETE, PANELCRETE AND SIMILAR TYPE WORK INCLUDING ALL
PLACING, FINISHING AND PATCHING OF SHOTCRETE OR GUNITE ......................................44
SUPPLEMENT NO. 3    WRECKING WORK ...........................................................................48
SUPPLEMENT NO. 4    GARDENERS, HORTICULTURAL & LANDSCAPE WORKERS.......................49
SUPPLEMENT NO. 5    REFINERY WORK ............................................................................51
SUPPLEMENT NO. 6    ZONE PAY .....................................................................................52
SUPPLEMENT NO. 7    SUPPLEMENT TO THE MASTER AGREEMENT REGARDING LABORERS WORK FOR
THE CONCRETE SAWING, DRILLING, CORING AND BREAKING INDUSTRY ......................56
SCHEDULE "A"    DISTRICT COUNCIL OF LABORERS HIRING HALL LOCATIONS ...................59
2018-2023 SIDE LETTERS ............................................................................................60

**2018-2023**
**MASTER AGREEMENT**
**for**
**NORTHERN CALIFORNIA**
**between**
**UNITED**
**CONTRACTORS**
**and**
**LABORERS**

THIS AGREEMENT, made and entered into this 21st day of December 2017 and effective the 1st day of July, 2018 through June 30, 2023, by and between UNITED CONTRACTORS, herein after referred to as COLLECTIVE BARGAINING REPRESENTATIVE OF EMPLOYER, and the NORTHERN CALIFORNIA DISTRICT COUNCIL OF LABORERS OF THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, hereinafter referred to as UNION, modifying, amending and changing the Agreement made and entered into the 17th day of May, 1951, as modified by the Agreements dated June 4, 1952; July 14, 1953; April 13, 1954; April 12, 1955; April 30, 1956; April 19, 1957; June 30, 1959; July 28, 1961; June 27, 1962; July 1, 1965; June 16, 1968; June 16, 1971; July 2, 1974; May 10, 1977; April 30, 1980; January 18, 1983; March 20, 1986; July 1, 1989; July 15, 1992; June 14, 1996, June 28, 1999, June 30, 2002, April 7, 2006, July 6, 2010, July 1, 2012, and May 1, 2014 by and between UNITED CONTRACTORS and the NORTHERN CALIFORNIA DISTRICT COUNCIL OF LABORERS of the LABORERS' INTERNATIONAL UNION OF NORTH AMERICA.

WITNESSETH:

## Section 1        General Provisions

A.    Definitions

(1)  (a)  The term "Employer" shall refer to United Contractors.

(b)  The term "Individual Employer" shall mean (1) an employer who has authorized the Association (Employer) to represent said Individual Employer with respect to collective bargaining with the Union; or (2) is bound to the terms and conditions of this Agreement under the subcontracting requirements of this Agreement; (3) directly signs this Agreement with the Union as an Independent or Non-Association Member. The Employer agrees to provide the Union with a current list of Individual Employers for whom it has authority to represent.

(2)  The term "Union" shall refer to the Northern California District Council of Laborers.

(3)  This Agreement shall apply to any employee who performs work falling within the presently recognized jurisdiction of those Local Unions of the Laborers' International Union of North America affiliated with the Northern California District Council of Laborers; except that this Agreement shall not apply to superintendents, assistant superintendents, civil engineers and their helpers, timekeepers, messenger persons, confidential employees and office help.

(4)  This Agreement shall apply to Northern California, which term means that portion of the State of California above the Northerly boundary of Kern County, the Northerly boundary of San Luis

Obispo County, and the Westerly boundaries of Inyo and Mono Counties, which includes the following counties; Alameda, Alpine, Amador, Butte,  Calaveras, Colusa, Contra Costa, Del Norte, El Dorado, Fresno, Glenn, Humboldt, Kings, Lake, Lassen, Madera, Marin, Mariposa, Mendocino, Merced, Modoc, Monterey, Napa, Nevada, Placer, Plumas, Sacramento, San Benito, San Francisco, San Joaquin, San Mateo, Santa Clara, Santa Cruz, Shasta, Sierra, Siskiyou, Solano, Sonoma, Stanislaus, Sutter, Tehama, Trinity, Tulare, Tuolumne, Yolo and Yuba.

(5)     The "method of delivery of notices", required by this Agreement shall be satisfied by one of the following means of delivery; email, fax, certified mail or regular mail.

B.     Coverage and Description of Laborers' Work Covered by this Agreement.

(1)     This Agreement shall cover all work coming within the recognized jurisdiction of the Laborers' International Union of North America.

(2)     Subject to the preceding paragraph and subject also to the provisions of Section 14 of this Agreement, it is agreed that Laborers' work shall include but not be limited to:  All Laborers' work necessary to tend the carpenters and other building trades craftsmen, stripping of concrete forms, handling and raising of slip forms, sewer cleaners, gardening, horticulture, landscaping, trackmen (construction, maintenance, repair), installation of all track, including the third rail, all cleanup of debris, grounds and buildings, graffiti abatement, steam cleaning and all General Laborers' work. In accordance with Green Book Decision dated August 2, 1920  December 11, 1924, the loading and unloading, carrying and handling of all rods and materials for use in reinforcing concrete construction shall be done by Laborers under the supervision of such person as the Employer may designate. The hoisting of rods shall be done by Laborers, except when a derrick or outrigger operated by other than hand power is used.

All Laborers' work in connection with excavation for building and all other construction, including digging of trenches, piers, foundations and holes; digging, lagging, sheeting, cribbing and bracing of foundations, holes, caissons and cofferdams, manning, setting and moving all manually movable pumps. (This does not restrict the Laborers from performing other work.)

All Laborers' work in connection with concrete work, including rough striking, chipping and grinding, sandblasting, mixing, handling, shoveling, conveying, pouring, concrete pumps and similar type machines, grout pumps, nozzlemen (including gunmen and potmen), vibrating, guniting and otherwise applying concrete, whether done by hand or any other process, and wrecking, stripping, dismantling and handling concrete forms and false work, including tending of plasterers and brick and block layers.

All Laborers' work in the excavation, grading, preparation concreting, asphalt and mastic paving, paving, ramming, curbing, flagging and laying of other stone materials, installation and/or removal of pavers, and surfacing of streets, ways, courts, underpasses, overpasses and bridges; utilization of all equipment for the coring, cutting, scoring of concrete, asphalt or any other surface, including, but not limited to horizontal and/or vertical concrete cutting, all work utilizing diamond blades, and all raising of manholes and water valves in connection with paving.

All Laborers' work in connection with the operation of spreader boxes, such as TrueLay, Rola Pavers and Laytons or similar type models, including but not limited to all shoveling and shifting material and cleaning of boxes, shall be the work of the Laborers. All Laborers' work in connection with the cutting of streets and ways for all purposes, including aligning by any method, digging of trenches, manholes, etc., handling and conveying of all materials for same; concreting of same; and the backfilling, grading and resurfacing of same. All Laborers' work in connection with the construction of caissons, cofferdams, subways (except as covered by Master Tunnel Agreement), aqueducts, water lines, culverts, flood controls, airports, drains and sewers, and any type of

conduit, including electrical, no-joint pipe, including the cribbing, lagging, bracing, sheeting, checking grade for pipelaying, including laser work for pipelaying, manholes, drain inlets, trench jacking and handling of lagging hammers on all open trenches and ditches. All Laborers' work in connection with shoring, underpinning including cutting, fitting, placing and raising of all structures.

All track work, including rail ties, welding of rail; and including third rail work, except for electrification and electrical tie-ins.

All mechanical pipe work, including the laying of pipe above and below ground, bolt up, and unistrut installation.

All Laborers' work in refineries (see Supplement No. 5).

All Laborers' work in connection with drilling, utilization of the rock slicer and/or rock splitter, utilization of all air track drills, hydraulic drills of all types and sizes; drilling, including directional drilling, geothermal drilling and the locator for directional drilling, all work of loading, placing and blasting of all powder and explosives of whatever type regardless of the method used for such loading and placing.

All signaling and rigging in connection with Laborers' work.

All Laborers' work in connection with the wrecking of buildings, both structural and non-structural.

All Laborers' work in connection with demolition, both structural and non-structural.

All Laborers' work in connection with the slinging, handling and placing of all riprap, rock and stone on highways, jetties, retaining walls or wherever used, and all mechanically stabilized earthen (MSE) wall construction and installation, including rigging and signaling in connection with Laborers' work.

All wrecking work on construction and/or razing sites: all Laborers' work on precasting or prefabrication at the construction project site or at a precast or prefabrication yard specifically established and operated for that one particular construction job.

All Laborers' work in connection with the operation of such equipment that is necessary and incidental to carry out the work of the Laborer.

All Laborers' work in connection with Trenchless Technology, including pipe installation, bursting, relining or similar trenchless laborer work.

All Laborers' work in connection with Dry Utilities, including electrical and telecommunication conduit layer, joint utility trench laborer including gas.

All Laborers' work in connection with Remediation/Land Restoration, including wetlands restoration, mitigation, or re-vegetation of lands (ornamental landscape is not included in this classification).

All Laborers' work in connection with Erosion and Sediment Control, including soil stabilization and soil, vegetation, and watershed pollution control.

All Laborers' work in connection with installing the systems designed to support solar modules/ panels including anchoring support systems (deck mounting); Foundation post hole digging (ground mounted support systems); pouring of concrete for support system posts; Moving, loading,

and unloading of material used in solar photovoltaic installations to the point of installation roof or other locations as required, installation of Photovoltaic Modules in support systems, attaching Modules to Rails (support systems), trenching on ground level systems, conduit placement, Final Cleaning on Panel Surfaces, general cleanup of surplus packaging/installation materials, coring or sawing of concrete in conjunction with solar systems, welding of Solar Array structures, traffic control and flagman involved with delivery and unloading operations, and living roof installation.

When an Individual Employer, at his/her discretion, wishes to utilize their Employees covered by this Agreement to perform the following: laying and/or applying of fabrics connected to asphalt, portland cement concrete (pcc), and aggregate paving work; slurry seal; chip seal, such Employee shall be employed in accordance with the applicable classification set forth in Supplement No. 1, Group 3, General Laborer (except for chip seal which will be paid at Group 1 rate). This work shall not be subject to Section 11 (Subcontracting). Upon request from the Union, the Individual Employer shall assist the Union in verifying that the work performed by a non-signatory contractor on a public works project is being paid in accordance with the Laborers Master Agreement Group 3 or Group 1 wage and benefit amounts identified here. Obligation for Non-Signatory to pay at rates above any currently posted Prevailing Wage Rate will not be required until ALL Contracts obtain inclusion of this Section 1 B(2) as written.

(3)     All classifications listed in Supplement No. 1 of this Agreement which are not listed under this Section shall be included in the coverage and description of Laborers' work just as though incorporated in full in this Section.

(4)     Should an Individual Employer signatory to this Agreement subcontract the masonry or plastering portion of a project, said contract shall specify that the work to be performed shall be done under the terms and conditions of the current Masonry and/or Plaster Tender Agreement that has been negotiated by the Northern California District Council of Laborers or its affiliates, which is in effect in the territory in which the work is performed. However, Masonry work which is incidental to the work of the Individual Employer may be performed under the terms and conditions of this Agreement.

(5)     Any Employer not signatory to both the Tunnel and Laborers' Master Agreement shall agree that whenever work is performed which is covered by the terms of the Laborers' Master Tunnel Agreement for the forty-six (46) Northern California Counties, the provisions of that Agreement shall be fully applicable to and binding upon the Individual Employer.

(6)     Should an Individual Employer signatory to this Agreement subcontract the traffic control or highway improvement portion of the project, such work shall be done under the terms and conditions of the current UCON/Laborers' Master Traffic Control/Highway Improvement Agreement that has been negotiated by United Contractors, which is in effect in the territory in which the work is performed.

(7)     Should an Individual Employer signatory to this Agreement subcontract landscaping work, such work shall be performed under the terms and conditions of the current Laborers' Landscaping Agreement that has been negotiated by the Northern California District Council of Laborers which is in effect in the County in which the work is performed.

## Section 2        Bargaining Representatives

A.     Union's Recognition of Collective Bargaining Representative of Employer.

The Union hereby recognizes and acknowledges that the Collective Bargaining Representative of Employer

includes in its membership a majority of the Individual Employers in the highway, general building and heavy construction industry, and said Individual Employers are performing the greater percentage of work therein. By reason of such facts the Union hereby recognizes that the Collective Bargaining Representative of the Employer, as herein-above referred to, is the collective bargaining representative for all Individual Employers who authorize the Employer to represent them with respect to Collective Bargaining with the Northern California District Council of Laborers. A list of said Individual Employers shall be furnished to the Union at the commencement of negotiations and the Employer shall furnish the Union with a complete monthly report of any additions and deletions to the list of Individual Employers represented by the Employer.

In the event the Union (District Council) enters into any other agreement with other employers or employer associations concerning the type of work covered hereby in the area which shall have terms more favorable to such employers or employer associations and the members thereof than this Agreement, then such more favorable provisions shall become a part of and apply to this Agreement only in the geographical area where such other agreement is in effect.

The Union has requested recognition as the Section 9(a) representative of the employees performing Laborers' work covered by this Agreement and has demonstrated or offered to demonstrate through authorization cards that it has the support of the majority of these employees. The Employer and each Individual Employer expressly acknowledge that they and each of them have satisfied themselves that the Union and/or each of its local affiliates represents a majority of the employees employed to perform Laborers' work and agrees that the Union and/or each of its constituent Locals is the collective bargaining representative of such employees. The Employer on behalf of itself and each of its members and each Individual Employer specifically agrees that it and they are establishing or have established a collective bargaining relationship by this agreement within the meaning of Section 9(a) of the National Labor Relations Act of 1947, as amended.  The Union is recognized as the sole and exclusive bargaining agent for itself, the Northern California District Council of Laborers and all of its affiliated Local Unions.

Any dispute concerning this section shall be resolved by a mutually agreed upon neutral Arbitrator, either during the term of this Agreement or anytime thereafter, whenever the issue is raised by either party. The Employer, on behalf of itself and each of its members and each Individual Employer, specifically agrees that the neutral Arbitrator may order (as the Arbitrator deems appropriate) the parties to bargain in good faith for any period following a written notice of termination of the Agreement unless and until a lawful impasse occurs or until a successor Agreement is negotiated.

B.      Employers' Recognition of Union as Collective Bargaining Representative of Employees.

The Employer and the Individual Employers covered hereby recognize and acknowledge the Northern California District Council of Laborers of the Laborers' International Union of North America as the collective bargaining representative for the employees in the area aforementioned covering the jurisdiction of the Union.

C.      Access to Project.

A Union Representative shall have access to the project during working hours for the purpose of checking the manner of compliance with which the terms of this Agreement are being complied.

## Section 3        Employment and Discharge

A.      Union Security

        (1)      Every person performing work covered by this Agreement who is a member of the Union and in

the employment of an Individual Employer on work covered by this Agreement on the effective date of this subsection 3A shall, as a condition of employment or continued employment, remain a member in good standing of the Union in the appropriate Local Union of the Union. Every person covered by this Agreement and employed to perform work covered by this Agreement shall be required, as a condition of employment, to apply for and become a member of and to maintain membership in good standing in the Union in the appropriate Local Union of the Union which has territorial jurisdiction of the area in which such person is performing work on or after the expiration of eight (8) days of employment on such work following the beginning of such employment or the effective date of this revised subsection 3A, whichever is later. Membership in any such Local Union shall be available to any such person on the same terms and conditions generally applicable to other members.

If Federal law is hereafter amended to permit a lesser requirement for Union membership or Union membership as a condition of employment than provided in this subsection, the Collective Bargaining Representative of the Employer and the Union will promptly enter into negotiations with regard to such subject.

(2)     The Individual Employer shall be required to discharge any employee pursuant to this subsection 3A only when a written notice from the Union or Local Union, with an immediate copy of such notice to the Union, of such employee's noncompliance with this subsection, stating all pertinent facts showing such noncompliance, shall have been served upon such Individual Employer and a reasonable time (not to exceed 48 hours) has been allowed for compliance therewith.

B.     Employment

(1)     The Union or Local Union shall maintain open and nondiscriminatory hiring halls for the use of workmen desiring employment on work covered by this Agreement and such workmen shall be entitled to use such hiring halls. It is mutually agreed by the Employer and the Union to fully comply with all of the provisions of Title 7 of the Civil Rights Act of 1964, Presidential Executive Order #11246, the Americans with Disabilities Act of 1990, and the California Fair Employment Practices Section, to the end that no person shall, on the grounds of sex, race, color, disability, or national origin, be excluded from participation in, be denied the benefits of, or be otherwise subjected to discrimination by not having full access to the contents of Section 3 of this Agreement. (A list of Local Unions, their telephone numbers and daily dispatching hours is attached hereto as "Schedule A" for convenience only.)

The Union shall retain full power to change the location of any hiring hall listed herein, to change the daily dispatching hours listed herein or to cause the merger, amalgamation or consolidation of any two or more hiring halls listed herein. The Union shall give notice in writing to the Employer whenever any such change, merger, amalgamation or consolidation becomes effective. If the Employer desires a location of a hiring hall or daily dispatching hours other than as specified herein, notice of such desire shall be given to the Union in writing and the Collective Bargaining Representative shall promptly enter into negotiations with regard to such subject.

(2)     Each person desiring employment shall register through such hiring hall by appearing personally and by indicating his/her name, address, telephone number, Social Security Account Number, qualifications and employment desired, or by telephone in those Local Unions permitting telephone registration. Each such person shall be listed numerically in the order in which he/she registers.

(3)     No person shall be entitled to have his/her name placed on any employment list which is applicable to a particular type or classification of work unless he/she has been employed in such type or classification of work for six months consecutively or accumulatively within a period of three (3) years immediately preceding the date of his/her registration.

(4)     The Individual Employer shall contact the appropriate hiring hall of the local Union having work and area jurisdiction for all Laborers as he/she or it may from time to time need, and the Local Union shall furnish to the Individual Employer the required number of qualified and competent Laborers of the classifications needed by the Individual Employer in accordance with the provisions of this subsection 3B, if such Laborers are available.

(5)     When requesting Laborers, the Individual Employer shall submit job orders indicating the number of persons desired, qualifications of each person desired, the location of the job, the reporting date and time and the representative of the Individual Employer to be contacted on the job site.

(6)     The appropriate hiring hall of the Local Union of the Union having work and area jurisdiction will furnish in accordance with the request of the Individual Employer such qualified and competent Laborers of the classifications needed from among those entered on said lists to the Individual Employer by use of a written referral in the following order of preference:

Persons shall be referred in the order in which they are registered if their registration indicates that they are qualified for and desirous of taking such referral, unless they are not available for referral, subject to the following conditions: First,

(a)     Notwithstanding any other provision of this Agreement, the Individual Employer may request a person by name, out of order, and such person must be dispatched if such person is registered on the outofwork list and if such person was employed previously by such Individual Employer or member of a joint venture within three years prior to such request within the territorial jurisdiction of the appropriate Local Union of the Union.

(b)     In addition to requests permitted by the provision of subsection 6(a), the Individual Employer may request any person registered on the out-of-work list out of order for any reasons; provided, however, that at no time shall any job contain more than 50% of persons requested under subsection 6(b). It will not be a violation of this Agreement for an owner (1 person) to perform Laborers' work when needed, provided that said owner is performing work with at least one (1) additional Laborer on the job site.

(c)     Any Local Union, may at its option, permit a percentage of individual requests greater than 50% on any job. Such permission shall not be deemed a violation of this Agreement.

(d)     Notwithstanding the above, the mobility of all employees who have been employees of the Individual Employer for a period of three hundred sixty (360) hours out of the immediate preceding six (6) months, shall not be restricted for any reason subject to Section 3A, Union Security. In order for the Individual Employer to exercise the mobility provisions set forth in this paragraph, the Individual Employer shall:

(1)     Provide the appropriate Local Union with a current list of names and Social Security Numbers of those employees who are eligible for mobility, prior to any employee being moved; and

(2)     The Individual Employer shall notify the appropriate Local Union of a job or project of more than five (5) day's duration.

(3)     In cases where an Individual Employer is found to have dispatched certain employees not eligible for mobility to a job site as defined herein, then the Local Union having jurisdiction in the project area shall notify the employer of such violation or error. The Individual Employer, upon notification by the Union, shall within one (1) working day, correct said violation or error to the satisfaction of the Union. Additional laborers shall be obtained in accordance with the hiring hall

procedures from the Local Union in the area where work is performed. All laborers shall have in their possession proof of proper dispatch and Union status which shall be produced upon request of Local Union representative in the area where the job is located. Any violation not resolved to the mutual satisfaction of the parties shall be subject to Section 9 of this Agreement.

    (4)    No Employee of the Individual Employer shall suffer loss of mobility for a break in service of two (2) months or less with the employer if the break in service is due to illness, extended vacation or winter shutdown.

(e)    No person shall be dispatched pursuant to the provisions of subsection 6(a), 6(b) or 6(c) of this Section unless the Individual Employer's request is in writing, dated, is signed by an appropriate management representative, specifies whether the person is a rehire and names the job for which rehire is requested.

Second, persons who, within five (5) years immediately preceding the job order, performed work covered under this Agreement in the geographical area covered by this Agreement in the order in which they registered.

Third, persons who are registered in the order in which they registered by qualification.

(7)    Available for employment shall mean:  All persons eligible for referral shall be present at the hiring hall or present at their residence or mobile phone (during dispatching hours, unless excused for the following reasons) in those Local Unions permitting telephone dispatch:

(a)    When a death or imminent death occurs in the immediate family, or other close family member, from the date of death and not exceeding one week after the date of burial, however, they shall produce bona fide proof of such death or imminent death from hospital or family doctor.

(b)    Persons on jury duty, providing they produce bona fide proof that they are serving on a jury.

(c)    Persons temporarily serving in the U.S. Military Reserve, providing they show bona fide proof of such service.

(d)    Attendance at Workers' Compensation Hearing or any administrative or court appearance, upon a showing of bona fide proof of a required appearance.

(e)    Hospitalization or medical treatment of the member or an immediate family member, requiring the attendance or involving the family responsibilities of the member, (for up to one [1] week) upon appropriate proof.

(f)    Confinement of a spouse because of pregnancy and the anticipated imminent delivery of a child, (for up to one week) upon appropriate proof.

(g)    Training sponsored by the District Council, upon appropriate proof.

(8)    When ordering workers, the Individual Employer will give notice to the appropriate hiring hall of the Local Union, if possible, not later than 2:30 p.m. of the day prior (Monday  through Friday) or, in any event, not less than seventeen and one-half (17-1/2) hours, if possible, before the required reporting time. In the event that forty-eight (48) consecutive hours after such notice (Saturday, Sundays and recognized holidays excluded), the Local Union shall not furnish such workers, the Individual Employer may procure workers from any other source or sources. If workers are so

employed, the Individual Employer shall promptly report to the appropriate hiring hall of the Local Union, in writing or by phone with written confirmation within forty-eight (48) hours, the name, address and Social Security Account Number of the employee procured from such other source or sources and the date of employment and the location of the job on which he/she is employed. Workers who report on the first day are to be paid from the time they report to the Individual Employer's designated location.

(9)     Dispatching hours shall be as specified in subsection (1) of this subsection 3B or as specified in the notice or notices submitted pursuant to subsection (1) of this subsection 3B.  In emergency cases, individuals may be dispatched other than at such dispatching hours.

(10)    Each person, upon being referred, shall receive a written referral to be transmitted to the Individual Employer representative at the job site indicating the name, address, Social Security Account Number, type of job, date of proposed employment and date of referral.

(11)    To insure the maintenance of a current registration list, all persons who do not reregister or answer roll call, as the case may be, on each regularly scheduled roll call day (which shall not be more often than once a week), shall be removed from the registration list unless excused in accordance with subsection 3B(7). Any person may re-register by phone and must be personally present at the phone during dispatch hours. If a referral is made by phone, a written dispatch slip must be sent to the Individual Employer and worker. Any person who is permitted to register by telephone under this subsection 3B must appear personally at the appropriate hiring hall on roll call day. If such persons re-register or answer roll call pursuant to the provisions of this Section, they shall maintain their previous position on such list, subject to the provisions of subsection (12) of subsection 3B following, such person shall not be entitled to the position he/she held prior to his/her elimination in the event he/she re-registers or answers roll call, as the case may be. Persons will be excused from answering roll call only for the reason enumerated in subsection 3B(7).

(12)    Persons shall be eliminated from the registration list for the following reasons:

(a)     Dispatched to a job- except that any person who is rejected by the Individual Employer or who fails to complete four (4) full days (thirty-two [32] hours accumulated from Individual Employers) of work and/or pay shall retain his/her position on said list; provided, no person who is rejected by the Individual Employer shall be re-referred to such Individual Employer with respect to the same request pursuant to which he/she was initially referred.

(b)     Failing to accept suitable employment one time during the current week at the time of dispatch.  Employment which cannot be reached by an individual because of lack of transportation shall not be deemed suitable as to him/her.

(c)     Unavailable for employment.

(d)     Any person dispatched to a job who fails to report for work.

(13)    Notwithstanding the provisions of this Section 3B, upon the same notice as required in Section 3B(6)(e) being given to the appropriate Local Union of the Union, an Individual Employer shall have complete freedom to employ the first key Laborer.

(14)    Subject to the provisions of this Agreement, the Individual Employer shall have complete freedom of selectivity in hiring and the Individual Employer retains the right to reject any job applicant referred by the Union for just cause including but not limited to persons unable to produce legal residence documentation as required under the Immigration Reform and Control Act of 1986. In the event an Individual Employer receives two (2) referrals from the Local Union not meeting the skill requirements of the hiring request, the Individual Employer shall be free to secure such skilled

person from any available source subject to Section 3A of this Agreement.

(15)    The Local Unions and the Union shall post in places where notices to applicants for employment with the Individual Employers are customarily posted, all provisions relating to the functioning of the hiring arrangements, including the provisions set forth in this Section, and each Individual Employer shall similarly post in places where notices to employees and applicants for employment are customarily posted, a notice of the hiring arrangements set forth in this Section.

(16)    Selection of applicants for referral to jobs pursuant to this Agreement shall be on a nondiscriminatory basis and shall not be based on, or in any way affected by, Union membership, bylaws, rules, regulations, constitutional provisions, or any other aspect or obligation of Union membership, policies or requirements, provided that the provisions hereof shall not modify or qualify the requirements of Subsection A of this Section 3.

(17)    Any person aggrieved by the operation of the hiring hall shall submit his/her grievance to the permanent hiring hall neutral arbitrator provided that such submission is made in writing stating the reasons for the grievance within ten (10) working days after the occurrence of the grievance.

The Arbitrator shall have full power to adjust the grievance, and his decision thereon shall be final and binding upon the person submitting the grievance and all parties hereto. Forms for the submission of any such grievance shall be available at all times in the office of the Union and each Local Union.

The permanent hiring hall neutral arbitrator shall be Robert M. Hirsch and notices required by this Section shall be mailed or delivered to P.O. Box 170428, San Francisco, CA 94117. The date of this postmark and/or date of delivery of the grievance, whichever is later, shall toll the running of the ten (10) day period. The costs of arbitration shall be borne equally by the Employer and the Local Union regardless of who the Local Union or Individual Employer is.

(18)    The Union recognizes the need of the Individual Employer to have access to Union dispatched Laborers on an expedited basis and the Individual Employer recognizes the Union's obligation to operate a fair and efficient hiring hall. Notwithstanding the other provisions of this article, if the Individual Employer contacts the Local Union after posted dispatch hours and requests workers to be dispatched to a job site within twenty-four (24) hours of the Individual Employer's call to the Local Union (and the Individual Employer does not request the Laborer by name pursuant to subsection 6(a) or subsection 6(b) above), then the Local Union shall dispatch the person nearest the top of the out-of-work list who is present at the Local Union hiring hall, and if no Laborer is present, the person nearest to the top of the out-of-work list who can be contacted by telephone.  If the Local Union is unable to contact a registrant by telephone after one (1) telephone call, the Local Union shall call the next qualified person on the list. A person who is not present at the Local Union hiring hall or reachable by telephone for an expedited dispatch under this section shall not be eliminated from the out-of-work list.

(19)    Any hiring hall registrant who misuses the hiring hall and the relationship with signatory Individual Employers by failing to appear for work for which he/she has been dispatched; or failing to appear at the jobsite ready and prepared to work; or accepting employment for which the laborer is not qualified may, at the Local Union's discretion, be suspended from utilizing the hiring hall out-of-work list for subsequent offenses; and may be denied referrals for which the applicant is not qualified until he/she demonstrates that he/she possesses the qualifications to the Laborers' Training Center.

Any appeal of these penalties must be submitted to the Hiring Hall Arbitrator under Section 3B(17), whose decision shall be final and binding.

C.      Discharge

No employee shall be discharged or discriminated against for activity in or representation of the Union or any Local Union. The Local Union shall be the sole judge of the qualifications of its members.

The Individual Employer shall be the sole judge of the qualifications of all of their employees, and may on such grounds, discharge any of them. After forty (40) hours of employment, no employee shall be discharged without just cause. In the event of discharge without just cause, the employee shall, if he/she so desires, be reinstated with payment for time lost. In the event of a dispute, the existence of "just cause" shall be determined under the grievance procedure provided for in Section 9 hereof. In the event of reinstatement, the amount of back pay awarded under Section 9 hereof may not exceed 90 days unless the grievant was employed by the Individual Employer who discharged him/her for more than 1500 hours in the two (2) years preceding the date of discharge

During the first forty (40) hours, the Individual Employer may reject or discharge any employee for any reason.

D.      The Individual Employer may notify the Local Union hiring hall of all employees who have quit, or been terminated or recalled during the week. Such notification may be on a written form which will include the following information:

    NAME OF EMPLOYER COMPANY
    NAME OF EMPLOYEE
    DATE OF TERMINATION
    DATE OF RECALL
    REASON FOR TERMINATION

To implement the LIUNA Code of Performance adopted by LIUNA, the Employer may agree to designate discharges "for cause," when appropriate, as described in the Notification of Termination clause ("Attachment A" at the end of this agreement) and to substantiate such cause if necessary in proceedings under the Code of Performance.

This clause is intended only to assist the Union in implementing its Code of Performance, and a worker's only rights thereunder are in connection with future referrals under the Union's hiring hall procedures. This clause does not create any new or additional rights whatsoever for workers under this agreement, including not creating any new or additional right to reinstatement with or back pay from the Employer.

E.      No employee may be transferred from an Individual Employer's payroll to another Individual Employer's payroll except in accordance with subsection 3B, except any transfer to and/or from a joint venture of which the Individual Employer is a partner.

## Section 4      ShowUp Time

A.      The Individual Employer is not obligated to pay show-up time to any applicant/employee who fails to comply with the company code of safe practices.

B.      When any employee reports for work and there is no work provided by the Individual Employer, he/she shall be paid two (2) hours showup time at the applicable rate plus zone pay where applicable, provided, however, no showup time will be payable to any person who reports for work without the necessary and legally required documentation to establish work right status under applicable Immigration and Naturalization Laws. If work is suspended on account of weather conditions, the employee shall be entitled to show-up time only if he/she remains on the job site for two (2) hours pending abatement of such weather

unless sent home earlier by the Individual Employer. If work is to be suspended for any reason, the employee shall be notified at least two (2) hours before being required to report for work. The employee shall keep the Individual Employer informed at all times of his/ her correct address, and if he/she has a telephone, his/her telephone number. If an employee does not keep the Individual Employer so informed, the Individual Employer shall be relieved of the duty of giving such notice and further he/she shall not have to pay such employee showup time. Radio and/or TV notice is acceptable on remote projects as means of notification providing the Union is notified in writing at the commencement of the job.

## Section 5        Higher Wages

No employee receiving a higher rate of pay shall suffer a reduction of pay by reason of the execution of this Agreement.

## Section 6        Meal Periods, Rest Periods, and Heat Illness Preventative Recovery Periods

A.      There shall be a regularly established meal period. The meal period shall be one-half (1/2) hour and shall be scheduled to begin not more than one-half (1/2) hours before and completed not later that one (1) hour after the midpoint of the regularly scheduled hours of work for each Employee's shift.

If the Individual Employer requires the Employee to perform any work through his/her scheduled meal period, the Employee shall be paid at the applicable overtime rate for such meal period and shall be afforded an opportunity to eat on the Individual Employer's time.

Any employee required to work more than two (2) hours overtime at the end of a shift shall be permitted a onehalf (½) hour meal period for which he/she shall receive regular overtime pay. No work shall be performed by him/her during such meal period. (Meal periods may be staggered from the 10th to the 11th hour.) However, if an Employee works over ten (10) hours, the Individual Employer and Employee may mutually agree to waive the Employee's entitled second (2nd) meal period so long as the first meal period was taken and the Employee works not more than a total of twelve (12) hours.

All disputes concerning meals and /or rest periods are subject to the grievance procedure and must be brought to the attention of the Employer in writing by the Union or employee within thirty (30) calendar days of the alleged violation.

B.      Employees shall be authorized and shall be permitted to take a total of ten (10) minutes during each four (4) hour segment of their assigned work shift for a rest period.

There shall be no formal organized rest periods during working hours and as far as practicable the break will be taken as near to the middle of each four (4) hour work segment as possible. Rest periods shall be scheduled in a manner so as not to interfere with workflow or continuous operations and Individual Employers shall be able to coordinate the timing of each ten (10) minute rest break with their Employees to assure the continuity of work. Employees shall be required to remain in their respective work area, or to take their rest period in a specific area designated by the Individual Employer. The second rest period may be added to the end of the meal period or workday when working conditions so dictate as determined by the Individual Employer. Employees who work more than ten (10) hours shall be authorized and permitted three ten (10) minute rest periods.

It is understood that the Employee will take his/her appropriate rest period unless the Individual Employer specifically directs the Employee not to take this rest break due to operational requirements. Employees are required to notify their supervisor whenever they are unable to take their rest periods.

If an Individual Employer fails to authorize and permit an Employee with a rest period as provided herein, the Employee shall be paid a penalty payment equal to one (1) hour at his/her applicable straight-time hourly wage rate excluding fringe benefits – one penalty payment covers any/all missed rest periods that day.

The rest period provisions of this Agreement will be interpreted consistently with the rest period requirements of IWC Order 16.

C.    As mandated by Cal/OSHA regulations, a heat illness preventative recovery period of no less than five (5) minutes shall be made available in order to prevent heat illness. A recovery period may be integrated with an employee's rest break. Heat illness recovery measures and protocols shall all be in accordance with current Cal/OSHA regulations.

If an Individual Employer fails to provide an Employee a preventative recovery period in accordance with Cal/OSHA Regulations, the Individual Employer shall pay the Employee, as a penalty, one additional hour of straight-time pay at the Employee's regular rate of compensation, excluding fringe benefits, for each work day that a requested preventative recovery period is not provided. No employee shall be discriminated against for exercising his/her rights pursuant to this Section.

D.    All disputes concerning meals, rest periods and/or heat illness preventative recovery periods are solely and exclusively subject to the Grievance Procedures in Section 9 of the Agreement and must be brought to the attention of the Employer, in writing, by the Union or Employee within thirty (30) calendar days of the alleged violation. Decisions resolving disputes arising out of the Grievance Procedures shall be final and binding upon both parties.

## Section 7    Records

A.    Each Individual Employer shall provide a proper means for registering the reporting, quitting time, and as supplied by the employee, the address and telephone number of all employees covered by this Agreement. In the event of a dispute, such records shall be accessible to the business representative of the Union or Local Union during working hours.

B.    Each Individual Employer, upon request of any Trust Fund specified in this Agreement, shall permit a Trust Fund Auditor to review any and all records relevant to the enforcement of the provisions of this Agreement pertaining to the Trust Funds. Such review shall be permitted not less than ten (10) working days after demand.

## Section 8    No Cessation of Work

It is mutually agreed and understood that during the period when this Agreement is in force and effect, the Union or any Local Union will not authorize any strike, slowdown, or stoppage of work in any dispute, complaint, or grievance arising under the terms and conditions of this Agreement, except such disputes, complaints, or grievances as arise out of the failure or refusal of any Individual Employer to comply with the provisions of the hiring clause, Section 3A or 3B hereof, or as permitted under Section 28B and C hereof or whenever an Individual Employer pays Laborers improperly with checks which do not clear for collection. As to any Individual Employer who shall fail or refuse to comply with the provisions of the sections specified herein, so long as such failure or refusal continues it shall not be a violation of this Agreement if the Union or any Local Union withdraws its members who are subject hereto from the performance of any work for such Individual Employer, and such withdrawal for such period shall not be a strike or work stoppage within the terms of this Agreement. In the event that any employees of any Individual Employer should be withdrawn by reason of any dispute, complaint, or grievance arising out of the violation of any similar hiring clause in any agreement between Employer and any other Union, then the Union or

any Local Union may respect such withdrawal and for the period thereof may refuse to perform any work for such Individual Employer, and such refusal for such period shall not be a violation of this Agreement.

Any employees so withdrawn or refusing to perform any work as herein provided shall not lose their status as employees, but no such employee shall be entitled to claim or receive any wages or other compensation for any period during which he/she has been so withdrawn or refused to perform any work.

### Section 9     Grievance Procedure

Any dispute concerning the interpretation or application of this Agreement, other than a jurisdictional dispute or a dispute arising out of Section 3A or 3B, or a dispute covered by subsection 13C(4), or a dispute of Section 28 (Health & Welfare Plan, Pension/Annuity Plan, Vacation-Holiday-Dues Supplement Plan, Training- Retraining/ Apprenticeship Plan) which said Sections and the Subsections thereof are specifically exempted by the provisions of this Section, the following procedure will apply:

1.   In the event that a dispute arises on a job, it shall be first reported to the Individual Employer and/or the Business Agent of the appropriate Local Union who shall then attempt to adjust said grievance or dispute at the job site level.

2.   The grieving parties shall specify the date(s) of the alleged violations(s) and the provision(s) of the Agreement applicable to the dispute.

3.   If said grievance or dispute is not satisfactorily adjusted by the appropriate Local Union or otherwise authorized Union Representative and the Individual Employer or his/her representative within three (3) days after submission to the Individual Employer, the matter may be submitted by either party to a permanent Board of Adjustment created for the settlement of such disputes.

4.   The Board of Adjustment shall be composed of two (2) members named by the Union, two (2) members named by the Association and an Impartial Arbitrator. At any point in the proceedings, should the panel be unable to reach a majority vote, the Arbitrator shall participate and his decision shall be final and binding.

5.   In addition to any rules or procedures which the panel may adopt, the Board of Adjustment shall be governed by the following provisions:

   (a)   No attorney shall be utilized unless either party notifies the other of its intent to do so with a minimum of fourteen (14) calendar days in advance of the hearing.

   (b)   No briefs shall be submitted nor a transcript made of the hearing except by mutual agreement of the parties or by direction of the Arbitrator.

   (c)   In the case of a deadlock, the Arbitrator shall render his decision upon the conclusion of the case at the Board of Adjustment hearing unless the time is extended by mutual agreement of the parties or at the request of the Arbitrator, in which case the Arbitrator shall render a decision not later than thirty (30) days after submission. The Arbitrator shall not render an expanded opinion in any case unless requested by the parties.

   (d)   The parties shall select and utilize one (1) permanent impartial arbitrator who is willing to abide by the procedures set forth herein. The impartial arbitrator may be changed or replaced at the request of either party.

6.   The Board of Adjustment shall meet not less than once each calendar month with the exception of

the discharge cases which must be heard at the earliest possible date not to exceed fifteen (15) working days. Failure of either party to meet or participate in the procedure shall relieve the charging party of further compliance with the grievance procedure.

7.      Decisions of the Board of Adjustment or an Impartial Arbitrator shall be within the scope and terms of this Agreement, and shall be final and binding upon all parties hereto.

8.      In the event an Individual Employer fails to comply with any such decisions, the Union may withdraw employees or strike the Individual Employer and such action shall not be a violation of this Agreement so long as such noncompliance continues

9.      The expenses of the Joint Adjustment Board and the Impartial Arbitrator, including the cost of a court reporter, shall be borne by the Employer

10.     No proceedings hereunder based on any dispute, complaint or grievance herein provided for, shall be recognized unless the grievance procedure steps outlined above have been followed.  The Board of Adjustment may, by majority vote, for good cause, accept a late submission.

11.     The Board of Adjustment shall establish regular meeting dates and administer grievances filed in conjunction with this Section as set forth in the rules and procedures which may be amended from time to time by the parties.

12.     A decision of the Board of Adjustment by majority vote, or the decision of a permanent arbitrator shall be enforceable by a petition to confirm an arbitration award filed in the Superior Court of the City and County of San Francisco, State of California.

13.     All hearings of the Board of Adjustment shall be in the County of Contra Costa and/or County of Alameda, unless mutually agreed to move to another location.

14.     No proceedings hereunder based on any dispute, complaint, or grievance herein provided for shall be recognized unless adequate notice was given to the Employer and/or Union or Local Union within ten (10) days after the alleged violation was committed.

15.     In the case of discharge, the Board shall meet within fifteen (15) working days. The Board of Adjustment or Arbitrator shall be free to sustain the discharge or to find discipline other than discharge to be appropriate and may order reinstatement with full or partial back pay as he or it deems appropriate provided there shall be no discrimination on the part of the Individual Employer against any employee for activities in behalf of, or representation of the Union not interfering with the proper performance of his/her duties.

16.     If failure of a Board of Adjustment to meet on a discharge case within fifteen (15) working days is due to the unavailability of the Union, the wage payment and Trust Fund contribution liability shall be limited to the above fifteen (15) working days   If the Employer or Individual Employer is unavailable to meet, the wage payment and Trust Fund contributions shall be continuing.

17.     The Board of Adjustment shall settle any dispute or grievance involving a subcontractor as defined in Section 11 who has agreed under contract with the Employer, or any Individual Employer, or a subcontractor of the Employer, or any Individual Employer to perform on the job site any part or portion of the construction work covered by the prime contract, including the operation of equipment, performance of labor and installation of materials.

        When liabilities are assessed against a subcontractor for hiring violations as a result of a Board of Adjustment held under the provisions of Paragraph 17 and said subcontractor fails to satisfy said obligations, the Union shall promptly give written notice to the Individual Employer and

subcontractor and the Individual Employer shall pay such obligations from the retention of such subcontractor.

18.    The procedures specified herein shall be applicable to any Individual Employer whether or not he or she is a member of Employer or any other associations.

19.    In those instances where the Individual Employer is not a member of the Employer, the Joint Adjustment Board shall establish procedures whereby the Employer members of the Joint Adjustment Board may consist of one Individual Employer who is not a member of the Employer.

20.    In addition to disputes concerning the interpretation or application of this Agreement, all claims and claims for associated penalties arising under the federal Fair Labor Standards Act, the California Labor Code, and Wage Order 16, will be resolved through the procedures set forth in this Section 9; such claims may not be brought in a court of law or before any administrative agency such as the California Labor Commissioner.

## Section 9A    Contract Administration

Effective July 1, 2012, every Independent signatory Employer shall contribute the sum of ten cents ($0.10) per hour worked or paid to the Laborers Employers Contract Administration Fund, which is established for the purpose of administering the collective bargaining agreement through the grievance procedure or otherwise on behalf of all Employers signatory to this Agreement.

The Individual Employers hereby adopt and agree to be bound by the terms of the certain Trust Agreement creating the Laborers Employers Contract Administration Trust Fund, as such might be amended from time to time pursuant to the terms thereof, and further agree to observe and be bound by the actions and determinations of the Trustees of said Trust.

Effective July 1, 2012, each employer who is a member of United Contractors ("the Association") and is bound to this Agreement shall contribute the sum of $.10 (ten cents) per hour worked or paid for to the United Contractors Employers for Contract Administration fees for the purposes of negotiating and administering the collective bargaining agreement, including Section 9 (Grievance Procedure) of the Agreement. Said payments are to be remitted by the employer directly to the Association on a monthly basis.

The Contract Administration Fund shall be administered solely by the Association. All payments required pursuant to this section shall not be deemed wages due to the employees with respect to whose work such contributions and payments are made.

Upon request, the Union shall have the right to audit this fund on an annual basis.

## Section 9B    Industry Stabilization Fund

The Individual Employer shall contribute, effective July 1, 2013, fourteen cents ($.14) per hour for each hour paid for or worked by workers in work covered by this Agreement to the Industry Stabilization Fund. Of the $.14 per hour, seven cents ($.07) per hour is earmarked for California Alliance for Jobs, two cents ($.02) per hour is earmarked for the Construction Industry Force Account Council (CIFAC), and five cents ($.05) per hour is earmarked for the Foundation for Fair Contracting.

The purpose of such funds shall be to enhance the monitoring of public works projects relative to Employer compliance with State, Federal or other public agency public works wage and hour laws. Such contributions shall continue until written notice by the parties signatory hereto. Such trust fund shall be administered jointly by the

signatory parties.

## Section 10    Payment of Wages

A.    Each employee shall be paid wages in full each week before or at quitting time on the Individual Employer's regular pay day unless specific arrangements to the contrary are made in writing between the Individual Employer and appropriate Local Union of the Union. Employees who quit or are laid off or discharged shall be paid in accordance with the laws of the State of California.

B.    Each employee shall be given a statement with the Individual Employer's name and address, itemizing the employee's gross amount earned, total hours worked, Social Security tax, withholding tax and all other deductions, net wages earned, the inclusive dates of the period for which the employee is paid, name of employee and only the last four digits of his or her social security number or an employee identification number other than a social security number, all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate, also a statement of hours applicable to Health and Welfare, Pension/Annuity, Vacation-Holiday-Dues Supplement and Training-Retraining/ Apprenticeship Plans.

C.    Individual Employers may pay employees utilizing the electronic direct deposit of wages or a debit pay card as provided under California law. Payment by direct deposit or a debit pay card shall be at the employee's option and not as a condition of employment. Final compensation shall be paid by check.

## Section 11    Subcontractors

The terms and conditions of this Agreement insofar as it affects Employer and the Individual Employer shall apply equally to any subcontractor of any tier under the control of, or working under oral or written contract with such Individual Employer on any work covered by this Agreement to be performed at the job site or job yard, and said subcontractor with respect to such work shall be considered the same as an Individual Employer covered hereby. Subject to the provisions of this Section and any other Section of this Agreement applicable to subcontractors, if an Individual Employer shall subcontract work herein defined, such subcontract shall state that such subcontractor agrees to be bound by and comply with the terms and provisions of this Agreement. A subcontractor is defined as any person, firm or corporation who agrees under contract with the Employer, or any Individual Employer, or a subcontractor of the Employer, or any Individual Employer to perform on the job site any part or portion of the construction work covered by the prime contract, including the operation of equipment, performance of labor and installation of materials. The Individual Employer has the primary obligation for performance of all conditions of this Agreement. This obligation cannot be relieved, evaded or diminished by subcontracting. Should the Individual Employer elect to subcontract, the Individual Employer shall continue to have such primary obligation. Said primary obligation shall be deemed conclusive evidence of the Union's majority status for the purpose of establishing the obligation of the Individual Employer to bargain collectively pursuant to Section 8(a)(5) of the National Labor Relations Act as amended with the Union upon expiration of this Agreement, but for no other purpose, statute or law.

An Individual Employer who provides in the subcontract that the subcontractor will pay the wages and benefits and will observe the hours and all other terms and conditions of this Agreement shall not be liable for any delinquency by such subcontractor in the payment of any wages or fringe benefits provided herein, including payments required by Section 28 (Health and Welfare, Pension/Annuity, VacationHolidayDues Supplement and Training-Retraining/ Apprenticeship Funds), except as follows:

The Individual Employer will give written notice to the Union of any subcontract involving the performance of work covered by this Agreement within five (5) days of entering such subcontract, and shall specify the name and address of the subcontractor. Written notice at a prejob conference shall be deemed written notice under this

provision for those subcontractors listed at the prejob only. Notification to the Union of any subcontractor not listed in writing at the prejob must still be given in accordance with this paragraph.

If thereafter such subcontractor shall become delinquent in the payment of any wages or benefits as above specified, the Union shall promptly give written notice thereof to the Individual Employer and to the subcontractor specifying the nature and amount of such delinquency.

If such notice is given, the Individual Employer shall pay and satisfy only the amount of any such delinquency by such subcontractor occurring within seventy-five (75) days prior to the receipt of said notice from the Union, and said Individual Employer may withhold the amount claimed to be delinquent out of the sums due and owing by the Individual Employer to such contractor.

In the event the Individual Employer fails to give written notice of a subcontract as required herein such Individual Employer shall be liable for all delinquencies of the subcontractor on that job or project without limitation.

The Individual Employer shall not be liable for any such delinquency if the Local Union where the delinquency occurs refers any employee to such subcontractor after giving such notice and during the continuance of such delinquency. The provisions of this Section 11 shall be applied only to the extent permitted by law and, notwithstanding any other provision of this Agreement, no aspect of the subcontractors' clause, including its enforcement, may be enforced by or subject to strike action.

## Section 12    Conflicting Contracts

Any oral or written agreement between Employer or any Individual Employer and an individual employee, which conflicts or is inconsistent with this Agreement, or any supplemental agreements hereto, disestablishes or tends to disestablish relationship of Employer and employee, or establishes a relationship other than that of Employer and employee, shall forthwith terminate. No oral or written agreement which conflicts or is inconsistent with this Agreement, or any supplemental agreements thereto, shall hereafter be entered into by and between Employer, or an Individual Employer, and any individual employee performing work covered by this Agreement. Any practice of the Employer or Individual Employer contrary to this Agreement shall forthwith terminate. Any such future practice shall not be binding on the Union or effect the interpretation of this Agreement unless specifically authorized by the Union in writing.

## Section 13A    Elimination of Restrictions on Production

No rules, customs or practices shall be permitted that limit production or increase the time required to do any work. There shall be no limitation or restriction of the use of machinery tools or other labor-saving devices.

The Union and Employer recognize that drug and alcohol abuse by employees shall not be tolerated for safety reasons.

The Union agrees to cooperate with the Employer and the Individual Employer in establishing drug and alcohol abuse policies to the extent legally possible.

**Management Rights Regarding Substance Abuse:**  Notwithstanding any other provisions of this agreement, the Employer expressly reserves the right, in its discretion, to undertake the following measures:

    (1)      In the sole discretion of the Employer and the Individual Employer, requiring covered employees to submit to physical examination by competent medical personnel to determine whether there is a probability that the employee is suffering from any physical impairment which might cause the employee to be a safety hazard to him/herself or others, or which might cause the employee to be

unable to perform assigned tasks within the coverage of this agreement in a prompt and competent manner. Such tests may include, in the discretion of the Employer and the Individual Employer, such tests of the employee's bodily fluids as the Employer and the Individual Employer may reasonably believe will elicit evidence of the employee's use of substances which are reasonably likely to alter or impair the employee's ability to perform his/her duties in a prompt, competent and safe manner.

(2)     Implementation of rules regarding the discipline and/or discharge of any employees that the Employer and the Individual Employer determines, as a result of the tests described in subparagraph (1), are reasonably likely to become voluntarily impaired or disabled from the safe performance of their work tasks as a result of the ingestion of alcohol or performance-impairing drugs.

(3)     An Individual Employer may initiate unannounced random testing, a selection process where affected Employees are selected for testing and each employee has an equal chance of being selected for testing. If an Individual Employer initiates such testing, all employees shall be subjected to such testing. The Individual Employer may establish two random testing pools, one for DOT regulated employees and one for all others. An Individual Employer who initiates random testing shall specifically state in its notice to the Union and its notice to employees that employees will be subject to random testing. The Individual Employer shall give thirty (30) days notice to the Union and employees prior to implementing a random drug testing program.

(4)     Implementation of a voluntary employee assistance program, to provide counseling, therapy and monitoring of those employees who request employer assistance in controlling and overcoming problems related to the use of drugs and alcohol.

(5)     A member who refuses to submit to a drug/alcohol test when dispatched or a member who has a positive/failed "pre-employment" test shall not be paid show-up time, provided that the member does not perform any work for the Individual Employer.

Disputes arising from the implementation of the provisions of this paragraph shall be subject to the grievance procedures set forth in Section 9 of this Agreement.

## Section 13B    Protective Clothing

The Individual Employer shall furnish the necessary goggles, hard hats or other protective clothing. Laborers working in rain, snow or sleet shall be furnished with waterproof clothing. Laborers working in gunite or handling concrete and/or cement shall be furnished rubber boots and gloves. Laborers working in mud or water shall be furnished boots. Such equipment shall be furnished by the Individual Employer free of charge and returned by the employee in the same condition as received subject to reasonable wear and tear. Such equipment shall be sanitized before reissue.

## Section 13C    Safety

(1)     The Union shall cooperate with the Individual Employer and with each employee in carrying out all pertinent rules and regulations dealing with health, safety and welfare of employees promulgated by the Department of Industrial Relations of the State of California. All employees shall perform their duties in each operation in such manner as to promote safe and efficient operations of each particular duty and of any job as a whole.

(2)     All State and/or Federal and/or Local Safety Laws, Standards, Rules and Regulations shall be

applicable to all work covered by this Agreement. The Individual Employer is solely responsible for implementing and maintaining such Laws, Standards, Rules and Regulations. Neither the Union nor any Local Union is responsible for implementing or maintaining such Laws, Standards, Rules or Regulations.

(3)     Adequate firstaid equipment shall be maintained and provisions shall be made for the safety of employees covered by this Agreement on each job by each Individual Employer. Each Individual Employer shall arrange for adequate and prompt transportation to a hospital or doctor for any employee who is injured on the job and may require doctor's care or hospitalization or both. Each Individual Employer must post the name and address of its doctor and of the Worker's Compensation Insurance carrier on the job site.

(4)     No employee shall be discharged for refusing to work under conditions injurious to his health or safety as determined under any rule or regulation of the United States or State of California or any political subdivision. Such determination shall be made by a responsible agent of the State of California or OSHA or any of its political subdivisions, or by a safety inspector from the applicable insurance carrier.

(5)     When drilling holes in rock or other dust producing material with air or power controlled drilling equipment (excluding jack hammer), dust shall be controlled by water, chemical or other suitable means within the maximum acceptable concentration as set forth in the California or OSHA Construction Safety Orders.

(6)     Should the Individual Employer desire a change in variance in the California or OSHA Construction or any applicable Safety Orders, they will notify the Union in writing not less than thirty (30) days prior to making a request for such change.

(7)     Manhaul trucks regularly used for personnel transport but not designed for this purpose shall be provided with safe seating and side and end protection to prevent falls. Some convenient means of mounting and dismounting the truck shall be provided. Adequate protection shall be provided during inclement weather. A bell or other means of communication with the driver shall be installed.

(8)     Employees who as a direct result of an on-the-job industrial injury are unable to complete a full day of work shall nevertheless be paid for the full day on which such injury occurred; provided, however, that said injury requires the attention of a licensed physician.

(9)     The Local Union with area jurisdiction shall be notified within twenty-four (24) hours of any industrial injury which results in death or requires hospitalization.

## Section 14A    Additional Work or Classifications

This Agreement shall not prevent the Employer from negotiating or making agreements with the Union for any work or classification not covered by this Agreement.

Whenever any work covered by this Agreement is to be eliminated or modified by the introduction of any new machine, mechanized process, new or different material, or new or different method or technology with respect to the performance of such work, persons employed under this Agreement and subject thereto, will be given preference for employment and will be assigned such work where it is not in conflict with International jurisdictional agreements with respect to such new machine, mechanized process, new or different material, or new or different method or technology and the use of any such new machine, mechanized process, new or different material, or new or different method or technology shall be subject to and covered by this Agreement regardless of

the nature, size or characteristics of such new machine, mechanized process, new or different material or new or different method or technology.

It is not the intent of the parties to provide work where no job exists.

## Section 14B    Jurisdictional Disputes

There shall be no cessation or interference in any way with any work of the Employer or any Individual Employer by reason of jurisdictional disputes between the Union and any other Union with respect to jurisdiction over any of the work covered by this Agreement. Such disputes will be settled by the Unions, themselves, or submitted to the International Presidents of the Union involved in the dispute for determination. Until such determination is made and confirmed by the disputing Unions, the work shall proceed as originally assigned by the Individual Employer. Craft jurisdiction is neither determined nor awarded by classifications or coverage descriptions appearing in this Agreement.

## Section 15    PreJob Conference

There shall be a pre-job conference prior to the start of a job or project, at the option of either party, where the agreed or estimated price to be paid the Individual Employer and any of his or its subcontractors is one million dollars ($1,000,000) or more where construction conditions or remoteness of the project warrant it. The Individual Employer shall notify, in writing, the appropriate Local Union of the Union of an award of work within ten (10) days thereof so that a prejob conference can be arranged.

## Section 16A    Employer's Membership

This Agreement is made for, and on behalf of, and shall be binding upon all persons, firms or corporations that at the time of the execution of this Agreement have given or subsequently give bargaining authorization to the Employer as defined in Section 2A.

Once an Individual Employer is bound by the Agreement, they shall remain bound by the Agreement for the term thereof and shall remain bound by any modifications, extensions or renewals thereto unless that Individual Employer gives appropriate written notice to the Northern California District Council of Laborers prior to the termination of the Agreement.

## Section 16B    Agreement Binding Upon Parties

This Agreement shall be binding upon the heirs, executors, administrators, successors, purchasers and assigns of the parties hereto.

## Section 17    ContractingPiece Work

No work shall be let or paid for by piece work, contract or lump sum direct with laborers for labor services.

## Section 18    Wages

Wages for General Laborers and for special classifications are set forth in the Supplements attached hereto and

made a part hereof as if set forth in full herein and shall be effective on June 25, 2018, and on succeeding anniversary dates as herein provided on all work, both old and new.

A.   Zone pay for employees performing work under the terms of this Agreement is set forth in Supplement No. 6 attached hereto and made a part hereof as if set forth in full herein.

B.   On a job where a Craft with whom the Individual Employer has negotiated a short work week terminates early on Friday, the Individual Employer will keep the laborer employed the balance of the work day when the Individual Employer determines that work is available.

C.   On public work projects where wage determinations exist, such pre-determined wage and fringe rates referenced in the bid specifications shall remain in effect for the duration of said project, provided, however, that each segment let by the Owner shall be deemed the project; provided, further that this provision shall not apply to projects where the formal advertised sealed bid procedure is not used. Whenever non-signatory and/or non-union contractors appear on a public works plan holders list and where the prevailing wage determination is less than that which is provided for in the current Master Labor Agreement, the employer signatory to the 2018-2023 Laborers' Master Agreement may bid the project pursuant to the prevailing wage determination attached to and part of the bid specifications for that project. Payments to the Health and Welfare Trust Fund shall be maintained at the Laborers' Master Agreement rates. In no event shall wages be frozen for more than thirty-six (36) months on any one project. Employers should notify the appropriate local Union whenever utilizing this provision.

## Section 19     Wages Applicable to Classifications

Wage rates shall be recognized as applying to classifications rather than to persons and any worker performing work shall be paid at the rate which the classification of their work calls for, except when it is necessary to temporarily transfer workers from one classification to another, in which event such workers shall be paid on the basis of the highest rate and the duration of payment at the highest rate shall be reckoned by the day and the half day.

When workers are requested for one classification and this work is no longer available at the rate and type of work they were requested for, then the workers have the right to accept or reject the employment offered. If the worker so desires, worker shall be given a written notice of reduction in force, stating that the classification that the worker was originally hired for is no longer available; or the worker may have the choice of a lesser rate of pay.

## Section 20A   Overtime Rates, Hours and Working Conditions

1.   Work Day

Eight (8) consecutive hours (exclusive of meal period), shall constitute a day's work for straight time rates unless the job or project is on a fourten (4 x 10) hour day work week in which case the workday shall be ten (10) consecutive hours (exclusive of meal period) at straight time rates. (If all basic Crafts employed by the Individual Employer on the job site and/or contract, are employed on the basis of a four-ten (4 x 10) hour day work week, the Laborers' shall work on the same basis.)

2.   Work Week

On single shift work and on the first shift of a multiple shift operation, five (5) consecutive days of eight (8) consecutive hours (exclusive of meal period), Monday through Friday, shall constitute a week's work except as otherwise provided for in this Agreement. The regular starting time of such shift shall be between 6:00 a.m. and 9:00 a.m.

(a)    Where in any locality, existing traffic conditions, job conditions or weather conditions render it desirable to start the day shift at an earlier hour, not earlier than 5:00 a.m., or a later starting time not later than 10:00 a.m., the Individual Employer is permitted to do so.

(b)    Special Single Shift*:    When the Individual Employer produces evidence in writing to the appropriate Local Union or the Union of a bona fide job requirement which certifies that work can only be done outside the normal shift hours, and notifies the appropriate Local Union or the Union at least three (3) days prior to the start of such special shift, the Individual Employer may initiate such special shift of eight (8) consecutive hours, exclusive of meal period, Monday through Friday. Such shift shall be in accordance with the provisions of subsection 5(a) of this Section. Provided, however, if by direction of the Contracting Authority, the bid specifications require it, or congestive traffic conditions on Fridays are such that work conditions would be unsafe for employees, or counter-productive to the performance of work, the special single shift may commence on Sunday with double time (2x) to be paid from the start of the shift to 8:00 p.m. and the applicable straight-time rate paid from 8:00 p.m. until completion of the eight (8) hour special single shift.

Special single shifts may be used in conjunction with any other shifts. The special single shift premium shall only apply to that work that is mandated to be performed outside of the normal shift hours. All other work on the project performed during the normal day shift hours shall be paid at the regular rate of pay.

*NOTE:  Special Single Shift rates Area "A" / Area "B" $3.00/hr over classification.

(c)    Four-ten (4 x 10) Hour Work Week:  An Individual Employer may establish a work week of four (4) consecutive days of ten (10) consecutive hours. Applicable overtime rate shall be paid for all work before a shift begins, after ten (10) hours, and on Saturdays, Sundays and holidays. In the event two (2) shifts are employed, ten (10) consecutive hours' work, (on the 2nd shift) exclusive of meal period, shall constitute a shift's work for which ten (10) hours shall be paid. Provided, further, all shifts are worked the same four (4) consecutive days during a four-ten (4 x 10) hour day work week, except as may be changed by mutual agreement. All hours in excess of forty (40) hours in any one (1) week shall be compensated at the applicable overtime rate.

(d)    In the event that work cannot be performed Monday through Friday or Monday through Thursday four-ten (4 x 10) hour day work week) because of inclement weather, major mechanical breakdown or lack of materials beyond the control of the Individual Employer, employees (at their option) may make up such day on Friday or Saturday, whichever the case may be, and shall be paid at the applicable straight time rate.

(e)    Notwithstanding the above, it shall not be a violation of this Agreement to start individual employees at no more than one (1) hour prior to the regularly established starting time.

3.    On shift work, the day shift, eight (8) hours' work for eight (8) hours' pay. When two (2) shifts are employed for five (5) or more consecutive days, eight (8) consecutive hours (exclusive of meal period), shall constitute a day of work, for which eight (8) times the straight time hourly rate shall be paid at the Second Shift Premium rate. When three (3) shifts are employed for five (5) or more consecutive days, seven and one-half (7½) consecutive hours (exclusive of meal period) shall constitute a day of work, for which eight (8) times the straight time hourly rate shall be paid for the second shift. The third shift shall be seven (7) hours for eight (8) hours pay. On two (2) shift operations, the first shift shall have a regular starting time not earlier than 5:00 a.m., and not later than 8:00 a.m. On three (3) shift operations, the first shift shall start at 8:00 a.m. Shifts shall run consecutively with not more than one (1) hour between shifts.

Two Shift Operations.  The second shift differential is ($3.00/hr – Area A and Area B) incorporated in Supplement No. 1 of this Agreement.

The Friday graveyard shift, though coming off work Saturday morning, is to be considered working Friday.

Work performed after 8:00 a.m. Saturday morning shall be deemed Saturday work.

The Saturday graveyard shift, though coming off work Sunday morning, is to be considered working Saturday. Work performed after 8:00 a.m. Sunday morning shall be deemed Sunday work. The Sunday graveyard shift, though coming off work Monday morning, is to be considered working Sunday, with the exception that a graveyard shift employee who has worked seven (7) or more hours prior to the scheduled starting time of the Monday day shift and continues to work after starting time shall continue to receive the double time (2x) wage rate.

4.  Weekends and Holidays.  One and onehalf (1½) times the regular straight time hourly rate shall be paid for all work on Saturdays (except makeup day) and before a shift begins and after it ends. Double the regular straight time hourly rate shall be paid for all work on Sundays and holidays. On two shift operations, Laborers working a complete second shift of shift work on Saturdays, Sundays and holidays shall be paid eight (8) hours of pay at the appropriate overtime rate for eight (8) hours of work. For work on Saturdays, Sundays and holidays on a three-shift operation, Laborers working a complete second shift shall be paid eight (8) hours of pay at the appropriate overtime rate for seven and one-half (7-1/2) hours of work. Laborers working a complete third shift shall be paid eight (8) hours of pay at the appropriate rate for seven (7) hours of work.

5.  Minimum Hours

(a)  From April 1 to November 14, the hours of employment shall be reckoned by the day and half day. From November 15 to March 31, the hours of employment shall be reckoned by the day, three-quarter day and half day. The fraction of a half or three quarter day to be paid for as a half or three-quarter day. Overtime hours, Monday through Friday, shall be reckoned by the hour and half hour. If after work is begun, work is suspended on account of weather conditions, not less than four (4) hours (or five (5) hours on a four-ten (4 x 10) shift) at the applicable rate shall be paid for work performed and any time thereafter shall be reckoned by the hour.

(b)  Whenever a Laborer is called out to work on Saturdays, Sundays or holidays (except on makeup days), he/she shall be paid at least four (4) hours, five (5) hours on a four-ten (4 x 10) hour shift, at the applicable overtime rate. All time worked beyond the first four (4) consecutive hours, five (5) consecutive hours on a 4 x 10 shift, on Saturdays, Sundays and holidays shall be reckoned by the hour at the applicable overtime rate.

On shift work, the above shall apply to Laborers called out to work on the day shift and second shift of a two (2) shift operation only. If three (3) shifts are employed, the above shall apply except that three and onehalf (3½) hours worked shall be paid as four (4) hours worked, seven (7) hours worked shall be paid as eight (8) hours worked, and hours worked in excess of three and onehalf (3½) hours but less than seven (7) hours shall be paid on a pro rata basis, except as modified by a four-ten (4 x 10) hour day work week.

NOTE:   Shift differential applies only to the second shift of a two (2) shift operation. Shift differential is as follows:  Area "A" / Area "B" $3.00/hr. over the appropriate classification rate.

6.  Tide Work:  When an employee or employees are called out to work tide work, the employee shall receive a guarantee of a full shift at straight time. The overtime rate for Saturday, Sunday and holidays or work in excess of eight (8) hours in any twentyfour (24) hour period shall be the same rate of overtime pay as set forth in this Agreement. The hours between 8:00 a.m. and 5:00 p.m. shall be worked at straight time.  Work performed between 5:00 p.m. and 8:00 a.m. shall be considered overtime work.

7.  Exceptions:  Watchpersons may be required to work any five (5) days out of the week on any shift and may

also be required to do job office cleanup work. The overtime rates provided in paragraph 4 of this Section 20A shall apply only to watchpersons, cleaning and washing windows, service landscape laborers for work in excess of eight (8) hours in any one (1) day, or forty (40) hours per week.

Employees cleaning and washing windows (after initial cleaning) and service landscape laborers (establishment warranty period), may be required to work any five (5) days out of the week on any shift.

When the Individual Employer sets up a camp or boarding house on a project, the charge made to the employee for board and room shall not exceed the subsistence rate incurred during a calendar week.

8.    Flagpersons: Any employees such as a flagperson shall be furnished adequate relief for use of toilet facilities.


## Section 20B    Parking

In the event free parking facilities are not available within five (5) blocks of a job site, the Individual Employer will provide such parking facilities and the Individual Employer shall have the right to designate parking areas to be used. Where, because of congested parking conditions, it is necessary to use public parking facilities, the Individual Employer will reimburse the employees for the cost of such parking upon being presented with a receipt or voucher certifying to the cost thereof, submitted weekly. Such reimbursement is to be made on a weekly basis or at the conclusion of the project, whichever occurs earlier.

On remote jobs when the access to where the work is being performed (at a job or project or within a job or project) is unsuitable, and no parking facilities are provided within a five (5) minute walk from where the work is being performed, the Individual Employer shall transport the employees to and from the place where the work is being performed, and such transporting shall be one-half (½) on the Individual Employer's time and one-half (½) on the employee's time.


## Section 21    Status of Foremen

When the Individual Employer determines that a foreman is required to supervise a crew of Laborers, he/she shall be or become a member of this Union in accordance with Section 3A of this Agreement.


## Section 22    Steward

A.    The Union may select an employee on the job as a Steward and he/she shall be a working employee. Written notification shall be given to the Individual Employer of such assignment. The Union agrees that the Steward's duties shall be performed as expeditiously as possible and the Individual Employer agrees to allow him/her a reasonable amount of time for the performance of his/her duties. The Individual Employer will give the Union fortyeight (48) hours advance written notice before terminating the Steward unless the job is completed or he/she is discharged for cause.

B.    The Steward shall be limited to and shall not exceed the following duties and activities:

(1)    Check the dispatch of each employee dispatched under the terms of this Agreement.

(2)    Report to his/her Business Representative all violations of this Agreement.

(3)    Report to his/her Business Representative any employee covered by this Agreement who, during his/her shift, leaves the job site without giving the Individual Employer and the Steward prior

notice.

C.      The Steward shall not:

(1)      Stop the Individual Employer's work for any reason or tell any workers or any employee covered by this Agreement that he/she cannot work on the job.

Infraction of either of the two rules set forth above in (C) (1) shall be cause for immediate dismissal of the Steward without any prior notice.


## Section 23      Recognized Holidays

The following days are recognized as holidays:   Every Saturday and Sunday in the year, except as otherwise provided herein:  New Year's Day, President's Day, Memorial Day, Fourth of July, Labor Day, Thanksgiving Day, Day After Thanksgiving Day and Christmas Day.

If any of the above holidays fall on Sunday, the Monday following shall be considered a holiday.

Martin Luther King Day will become a recognized holiday when and if the five basic crafts adopt it as a holiday.


## Section 24      Gunite, Shot Crete, Panel Crete and Similar Type Work including all Placing, Finishing and Patching of Shot Crete or Gunite

The wages and certain other conditions not specifically enumerated elsewhere in this Agreement for the Gunite, Shot Crete, Panel Crete and similar type work including all placing, finishing and patching of shot crete or gunite are set forth in Supplement No. 2, attached hereto and made a part hereof, as if set out in full herein covering the territory in which the Agreement is to apply.


## Section 25      Wrecking Work; Gardening, Horticultural and Landscaping Work

The wages and certain other conditions not specifically enumerated elsewhere in this Agreement for Wrecking Work are set forth in Supplement No. 3; for Gardening, Horticultural and Landscaping Work are set forth in Supplement No. 4. Each of the Supplements referred to herein is made a part hereof, as if set forth in full herein.


## Section 26      Liability of the Parties

It is mutually understood and agreed that neither the Employer, any Individual Employer, the Union nor any Local Union shall be liable for damages caused by the acts or conduct of any individual or group of individuals who are acting or conducting themselves in violation of the terms of this Agreement without authority of the respective party, provided that such action or conduct has not been specifically authorized, participated in, fomented or condoned by the Employer, the Individual Employer, the Union or the Local Union, as the case may be.

In the event of any unauthorized violation of the terms of this Agreement, responsible and authorized representatives of the Union, Local Union, the Employer or the Individual Employer, as the case may be, shall promptly take such affirmative action as is within their power to correct and terminate such violation for the purpose of bringing such unauthorized persons into compliance with the terms of this Agreement. Such individuals acting or conducting themselves in violation of the terms of this Agreement shall be subject to discipline, up to and including discharge.

**Section 27    Employees Not To Be Discharged For Recognizing Authorized Picket Lines**

The parties to this Agreement recognize that it is vital to the unionized segment of the construction industry that the work opportunities of the employee and the Individual Employer signatory to this Agreement proceed without interruption because of disputes involving unions not signatory to an Agreement with the Employer.

No employee covered hereby may be discharged by any Individual Employer for refusing to cross a picket line established by a Local Union of the basic crafts.

**Section 28A    Health and Welfare Plan, Pension/Annuity Plan, VacationHolidayDues Supplement Plan, Training-Retraining/Apprenticeship Plan**

In continuation of the Laborers' Health and Welfare Trust Fund for Northern California, the Laborers' Pension/ Annuity Trust Fund for Northern California, the Laborers' VacationHolidayDues Supplement Trust Fund for Northern California and the Laborers' Training-Retraining/Apprenticeship Trust Fund for Northern California (provided for in Trust Agreements dated March 4, 1953, August 2, 1963, April 1, 1985, June 4, 1963, November 19, 1968 and December 31, 1975, respectively, as amended and modified, and the appropriate plans adopted thereunder), each Individual Employer shall pay hourly contributions for each hour paid for and/or worked, including overtime pay, shift pay, showup time pay and similar payments in accordance with the schedule specified in this Section, as follows:

|  | 6/26/17 | 6/25/18 | 7/1/19 | 6/29/20 | 6/28/21 | 6/27/22 |
|---|---|---|---|---|---|---|
| Health & Welfare | $7.70 | $ * | $ * | $ * | $ * | $ * |
| Retiree Health & Welfare | $ .30 | $ * | $ * | $ * | $ * | $ * |
| Pension | $8.96 | $ * | $ * | $ * | $ * | $ * |
| Annuity | $3.04 | $ * | $ * | $ * | $ * | $ * |
| Vacation/Holiday/Dues Supplement | $2.63 | $ * | $ * | $ * | $ * | $ * |
| **Training-Retraining/Apprenticeship/LECET | $ .45 | $ * | $ * | $ * | $ * | $ * |
| Contract Administration Fund | $ .10 | $ * | $ * | $ * | $ * | $ * |
| ***Industry Stabilization Fund | $ .14 | $ * | $ * | $ * | $ * | $ * |

To be allocated among wages and fringe benefits at the discretion of the Union.

* Allocation shall become effective thirty (30) days after allocation notice is received, but in no event earlier than June 25, 2018, July 1, 2019, June 29, 2020, June 28, 2021 or June 27, 2022.

**Effective 6/26/06 four cents ($.04) per hour is earmarked for Laborers-Employers Cooperation and Education Trust (L.E.C.E.T.)

***Effective 7/1/13 seven cents ($.07) per hour is earmarked for California Alliance for Jobs, two cents ($.02) per hour is earmarked for the Construction Industry Force Account Council (CIFAC), and five cents ($.05) per hour is earmarked for the Foundation for Fair Contracting.

Each Individual Employer shall be subject to and entitled to the benefits of all of the provisions of the Trust Agreements specified herein establishing said Funds and any amendment or modification thereto. In order to provide for benefits to employees without disruption during periods of contract negotiations and to assure an orderly means of collecting Trust Fund contributions during such periods, each signatory employer agrees that he/she shall be obligated to contribute to each and every Trust Fund referred to in this Agreement for any period following their termination date of this Agreement unless and until a lawful impasse occurs or until a successor Agreement is negotiated. Each signatory employer further agrees that any and all said Trust Funds may enforce this obligation by action to collect such delinquent contributions filed in any court of competent jurisdiction.

The Health & Welfare Plan shall be supplemented to provide that the Trustees shall apply amounts from the contributions specified in this Agreement to such Plan for the purpose of providing benefits to employees retired pursuant to the provisions of the Laborers Pension Trust Fund for Northern California.

The parties agree that the Trustees of the VacationHolidayDues Supplement Trust Fund may allocate up to twentyfive percent (25%) of the applicable contributions for Holiday pay.

The Union and the Employer agree that the Individual Employers covered by the Master Agreement may continue the coverage of their supervisory personnel above the rank of general foreman in the Laborers' Health & Welfare Trust Fund for Northern California, the Laborers' Pension/Annuity Trust Fund for Northern California, the Laborers' Vacation-Holiday-Dues Supplement Trust Fund for Northern California, the Laborers' Training-Retraining/Apprenticeship Trust Fund for Northern California by paying into all Trusts monthly on the basis of one hundred seventy (170) hours per month in accordance with the schedules set forth in the Master Agreement, regardless of the hours worked by any such employee in a month, provided, however, the Individual Employer having made one (1) payment on an employee shall continue to make such a payment so long as the employee is in his employ.

Any Individual Employer who is found to be delinquent as a result of an audit will pay and satisfy such delinquency with accrued interest and in addition pay liquidated damages. All delinquent contributions shall bear simple interest at the rate of one and one-half percent (1.5%) per month until receipt of payment. Subject to accounting verification, liquidated damages shall be assessed on delinquent contributions at a flat rate of one hundred and fifty dollars ($150.00) per month to reflect the internal administrative costs incurred by the trust administrators in monitoring and tracking such late contributions. The cost of any audit shall be borne by the Individual Employer if the delinquency disclosed by the audit is in excess of one thousand dollars ($1,000.00) and is not the result of a clerical error. When economic conditions warrant, the Trustees of the Trust Funds specified in this Agreement are authorized to amend the liquidated damages and interest provisions of this Agreement. Any adjustments implemented by the Trustees shall be reflective of true increases in the administrative and legal costs associated with the recovery of delinquent Trust Fund contributions.

## Section 28B    Delinquency Withdrawals

In the event that the Board of Trustees of a fund into which the Individual Employers are required to pay, determine that an Individual Employer is delinquent in the making of any payments required by Section 28A hereof, it shall not be a violation of this Agreement, so long as such delinquency continues, if the Union takes economic action against such Individual Employer and such economic action shall not be a strike or work stoppage within the terms of this Agreement. In the event that any employees of any Individual Employer should be withdrawn pursuant to any similar clause in any agreement between the Collective Bargaining Representative of the Employer and any other Union, then the Union may respect such withdrawal, and for the period thereof, may refuse to perform any work for such Individual Employer and such refusal for such period shall not be a violation of this Agreement. Any employees so withdrawn or refusing to perform any work as herein provided shall not lose their status as employees but no such employee shall be entitled to claim or receive any wages or other compensation for any period during which he has been so withdrawn or refused to perform any work.

## Section 28C    Security For Individual Employer Payments Into Trust Funds

Each Individual Employer delinquent by one (1) or more months in making the payments set forth in Section 28A above shall be notified by mail by the Administrator of the Trust or Trusts applicable of such delinquency. Copies of such notices shall be sent to the Employer and to the Union. Each such delinquent Individual Employer shall, within five (5) days of the receipt of such notice (by certified mail), give a satisfactory bond in a sum equal to two (2) times the amount of the delinquency. Such amounts are to be determined by the Administrator of the Trust or Trusts applicable. Such bond is not in any way to be construed as in lieu of any payments required under this Agreement.

All such bonds shall be deposited with the Administrator and shall be in a form acceptable by the Administration of the various Trusts.

If the bond must be used to make any payments under Section 28A, the money shall be prorated among the amounts owed by such Individual Employer, with the first priority to the VacationHoliday Dues Supplement Trust Fund, and the balance dispersed equally to the Health & Welfare, Pension/Annuity and Training-Retraining/ Apprenticeship Trusts.

Whenever an Individual Employer fails to deposit a satisfactory bond within the time provided by this Section, if the notice herein provided for has been given, the Local Union shall not be required to dispatch employees, and further economic action by the Union to obtain compliance of this Section will not be a violation of Section 8 of this Agreement.

Any employees so withdrawn or refusing to perform any work as herein provided, shall not lose their status as employees, but no such employee shall be entitled to claim or receive any wages or other compensation for any period during which he/she has been so withdrawn or refused to perform any work.

Whenever any Employer covered by this Agreement is delinquent with respect to the payment of any contributions or other sum of money due to any Trust Fund specified in this Agreement, the Union may withdraw workers and place appropriate pickets at the premises of the Employer or places where said Employer is performing work.

## Section 28D    Supplemental Dues

Effective July 1, 2013, for all work performed upon authorization as required by law, the amount of ninety-one cents ($.91) per hour  for each hour paid for or worked shall be transmitted from the Vacation-Holiday benefit of each Laborer and shall be remitted directly to the Union.

This amount shall not be deemed to be part of the Vacation-Holiday benefit but is an amount specifically agreed to as a Supplemental Dues benefit. The amount of the Supplemental Dues transmittal shall be specified on a statement sent to the Laborer. Such remittance shall be made to the Union not less than twice per year.

The Union shall bear all responsibility and liability for ensuring that any and all sums received as supplemental dues are supported by proper written authorization from the employee. The Union shall indemnify, defend and hold the Individual Employer harmless to the maximum extent permitted by law from any and all claims, liability and damages arising from contentions and/or findings that supplemental dues have been collected in an unauthorized or otherwise improper manner.

### Section 28E    Wage and Fringe Benefit Increase

| | |
|---|---|
| June 25, 2018 | $1.65 * ** **** |
| July 1, 2019 | $1.90* ** |
| June 29, 2020 | $1.95* ** |
| June 28, 2021 | $1.95* ** |
| June 27, 2022 | $2.00* ** *** |

* The parties agree that sufficient contributions will be made available from these increases to the Pension fund to support any rehabilitation/funding improvement schedule adopted by the bargaining parties. Additional money required for such rehabilitation/funding improvement schedule shall be reallocated from the existing wages and/or fringe benefits.

** To be allocated among wages and fringe benefits at the discretion of the Union.

*** If an early extended Agreement is negotiated prior to June 27, 2022, Individual Employers who do not extend said Agreement shall be subject to an additional twenty-five cents ($0.25) per hour increase, effective June 27, 2022, for a total increase of two dollars and twenty-five cents ($2.25). If an early extended Agreement is not negotiated prior to June 27, 2022, the total increase on June 27, 2022 shall be two dollars and twenty-five cents ($2.25).

**** Effective June 25, 2018, Individual Employers who have not signed on to this extended agreement will be subject to an additional $.25 increase, allocated to Annuity.

There shall be an additional one (1) dollar and sixty-five (65) cents per hour increase effective on 6/25/18, an additional one (1) dollar and ninety (90) cents increase effective 7/1/19, an additional one (1) dollar and ninety-five (95) cents increase effective 6/29/20, an additional one (1) dollar and ninety-five (95) cents increase effective 6/28/21, and an additional two (2) dollars increase effective on 6/27/22 (subject to $.25 increase as stated above).

The Union may elect at its option upon ninety (90) days' notice to the Employer, prior to 6/25/18, 7/1/19, 6/29/20, 6/28/21, or 6/27/22, to allocate each increase to any or all of the following:

1. Wages
2. Health and Welfare
3. Retiree Health and Welfare
4. Pension/Annuity
5. VacationHolidayDues Supplement
6. Training-Retraining/Apprenticeship

7.   Industry Stabilization Fund
8.   Laborers-Employers Cooperation and Education Trust (L.E.C.E.T.)

provided, if any or  all of the allocation is made to Fringe Benefits, such Fringe Benefits shall be effective on 6/25/18, 7/1/19, 6/29/20, 6/28/21, or 6/27/22 as applicable.

In the event the Laborers Health and Welfare Trust Fund falls below a six (6) month reserve level and/or when the Pension Plan is fully funded (100%) or for any other benefit funding adjustment, any wage or benefit reallocation shall be subject to mutual agreement by the parties at least ninety (90) days prior to the effective increase date.

## Section 28F    Laborers' Apprenticeship Program

1.   TERM OF APPRENTICESHIP:   New applicants for union membership, who cannot demonstrate a minimum of 4,000 hours of experience as a Construction Craft Laborer shall enter the Laborers Apprenticeship Program (Apprenticeship Program). If an applicant is designated a journey-level Laborer by a referring Individual Employer who states in writing that the applicant's knowledge and experience warrants journey-level status, such Employees shall be considered provisional journey-level Laborers and may retain that status so long as they are employed by the designating Individual Employer. Any provisional journey-level Laborer who is laid-off or otherwise discharged prior to working 4,000 hours may not be placed on a journey-level out of work list until assessed by the Apprenticeship Program.

2.   RATIO:  Individual Employers shall participate in the Apprenticeship Program by accepting apprentices for employment upon referral by the Union. When four (4) journey-level Laborers are employed on a project for a particular Individual Employer, the next employee hired to perform Laborers' work must be an apprentice and this ratio will be continued for every four (4) additional Laborers being employed on the Project. On projects with fewer than four (4) journey-level Laborers an Individual Employer may employ one (1) apprentice per project with at least one (1) journey-level Laborer.

3.   The Apprenticeship Standards approved by the Division of Apprenticeship Standards of the State of California are hereby incorporated by reference as part of this Agreement.

4.   All apprentices shall be properly dispatched through the appropriate Local Union's hiring hall. The Individual Employer must secure a dispatch from the appropriate Local Union for any apprentices employed by the Individual Employer.

5.   Entry into the Apprenticeship Program shall be controlled by the Laborers Joint Apprenticeship and Training Center (JATC), which shall employ appropriate screening procedures. An apprentice in good standing advances from one level to another only upon determination of satisfactory performance by the JATC, which shall have the authority to grant accelerated credit where warranted by the performance of an individual apprentice. The JATC may also grant credited hours to an apprentice who received work experience and/or training prior to entry into the Apprenticeship Program. The JATC will not unreasonably withhold entry and advancement in the Apprenticeship Program for provisional journey-level Laborers after their employment with a referring Individual Employer is terminated.

6.   An apprentice should, whenever possible, be rotated by the Individual Employer through different types of work so as to become trained in a variety of operations and work skills. Where the Individual Employer is unable to provide an apprentice with experience in the full range of craft skills causing the apprentice to exceed the number of hours allotted to a given work process, the JATC may coordinate with the Local Union to reassign the apprentice to other employment in order to provide that experience. For so long as the Individual Employer is able to provide the necessary range of employment experience, the Individual Employer may choose to retain the apprentice from job to job but shall notify the Local Union and JATC of all reassignments. An apprentice shall not work on the jobsite unless supervised by a journey-level Laborer.

7.      The Individual Employer shall release the apprentice to enroll in Related and Supplemental Instruction (RSI) when the apprentice is notified of mandatory training. An apprentice shall not be penalized for taking time off from work to receive RSI as required by the Apprenticeship Program. The Laborers Apprenticeship Program shall endeavor to notify the Individual Employer of any upcoming RSI requirements the apprentice must satisfy. The Program will assist the Individual Employer in meeting its apprentice ratio requirements.

8.      An apprentice who fails to maintain his/her apprenticeship status shall not be eligible for employment as a journey-level Laborer unless he/she successfully completes the Apprenticeship Program after reinstatement by the JATC. Reinstatement is at the sole discretion of the JATC. If reinstatement is denied, an apprentice may reapply for entry into the Apprenticeship Program after waiting one (1) year from the date he/she was terminated from the Apprenticeship Program. The failure of any apprentice to maintain his/her apprenticeship status shall obligate the Individual Employer to discharge such person upon written notice from the Apprenticeship Program.

Apprentice wage and fringe benefit rates shall be:

| Hours of Credit | Wage Rate | Fringe Benefits |
|---|---|---|
| 1-1,000 | 65% of Journey Worker | Health & Welfare, Training, Vacation/Holiday/Dues Supplement (current Supplemental Dues amount only), Contract Administration and Industry Stabilization |
| 1,001-2,000 | 70% of Journey Worker | Full Benefits |
| 2,001-3,000 | 80% of Journey Worker | Full Benefits |
| 3,001-4,000 | 90% of Journey Worker | Full Benefits |

Journey Worker rates are based on the Group 3 Laborer rate.

The Individual Employer may pay a higher rate at its option. However, the apprentice must meet his or her commitments to the JATC regardless of compensation.

## Section 29      General Saving Clause

It is not the intent of either party hereto to violate laws, rulings or regulations of any governmental authority or agency having jurisdiction of the subject matter or of this Agreement, and the parties hereto agree that in the event any provisions of this Agreement are finally held or determined to be illegal or void as being in contravention of any such laws, rulings or regulations; nevertheless, the remainder of the Agreement shall remain in full force and effect, unless the parts so found to be void are wholly inseparable from the remaining portion of this Agreement. The clauses hereof relating to "Hiring," Section 3A hereof, and "No Cessation of Work," Section 8 hereof, are intended to be inseparable and mutually interdependent. Should either of such sections be held or determined to be illegal or void for any reason, then both of said clauses shall forthwith become of no further force or effect, and

neither party shall by implication be bound thereby. The parties agree that if and when any provisions of this Agreement are finally held or determined to be illegal or void, they will then promptly enter into lawful negotiations concerning the substance thereof.

It is the intent of the parties to this Agreement that each and every, all and singular, of the provisions of this Agreement be fully in accordance with Federal and State Law. Its interpretation and the interpretation of each of the provisions of this Agreement is therefore intended to apply no broader than that permitted by law.

## Section 30    Change of Name or Style

This Agreement is binding upon each Individual Employer regardless of whether he/she or it changes the name or style or address of his/her or their business. Each Individual Employer shall give notice in writing to said District Council of any intent to change the name, style or address of his/her or its business, or to perform business under more than one name or style or at more than one address, prior to the adoption of a new or different name, style or address, or the addition of new names or styles or addresses, as specified herein.

Nothing in this paragraph shall be construed as adding to the scope of work covered by this Agreement.

## Section 31    Warranty

Each of the persons executing this Agreement on behalf of their respective Employers or Unions hereby warrants his/her authority to execute this Agreement and to bind the respective party on whose behalf he/she signs.

## Section 32    Effective and Termination Date

This Agreement shall be effective as of the 1st day of July 2018, and remain in effect without reopening for any purpose until the 30th day of June 2023, and shall continue from year to year thereafter, unless either of the Collective Bargaining Representatives shall give written notice to the other of a desire to change the wages, hours and working conditions hereof not more than ninety (90) and not less than sixty (60) days prior to June 30 of any succeeding year.

The parties to this Agreement recognize the necessity of assuring the competitive position of the parties within the industry during the term of this Agreement. Consistent with that recognition, the parties will continually monitor the effectiveness of this Agreement relative to specific geographic or market area and will endeavor, by mutual agreement, to initiate such modifications to the Agreement during its term as may be necessary to assure the work opportunities of the employees and the competitive position of the Individual Employers.

It is agreed that in the event either party should exercise its rights under the paragraph first above set out, they will for a period of sixty (60) days prior to the 30th day of June, 2023, or June 30th of any succeeding year bargain with each other with respect to all wage rates, working conditions and hours of employment for the work herein covered.

Should an impasse be reached during the course of future negotiations to amend and/or extend the present Agreement, or during the course of negotiations over a new agreement, either party may submit the items in dispute to the Dispute Settlement Board established in the UCON-Basic Trades Joint Labor Management Committee Impasse Settlement Plan for resolution.   The findings of the Dispute Settlement Board shall be binding on the parties.

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals by respective officers duly authorized to do so, this 21st day of December, 2017.

**FOR THE EMPLOYER:**

**UNITED CONTRACTORS**

**FOR THE UNION:**

**NORTHERN CALIFORNIA DISTRICT COUNCIL OF LABORERS OF THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA**

*/s/ Donna Rehrmann*

By:  **Donna Rehrmann, Laborers Craft Committee Co-Chair**

*/s/ Oscar De La Torre*

By:  **Oscar De La Torre, Business Manager**

*/s/ Michael Ghilotti*

**Michael Ghilotti, Laborers Craft Committee Co-Chair**

*/s/ Victor Sella*

**Victor Sella, Director of Labor Relations**

**ATTACHMENT A   NOTIFICATION OF TERMINATION FORM**

**(Please type or print clearly.)**

**Instructions:  Immediately upon termination of an employee for any cause other than lack of work, please mail, fax or scan and e-mail this completed form to the District Council or Local Union.**

**Employer Completing This Form:**

**Company Name:** _____

**Address:** _____

**Phone:** _____

**Authorized Signature:** _____

**Name of Authorized Person:** _____

**Name of Employee Being Terminated:** _____

**Date of Termination:** _____

**Reason for Termination (Check One or More)**

_____ **Excessive Absenteeism**

_____ **Excessive Tardiness**

_____ **Lack of Required Skills (This area cannot be checked for apprentices.)**

_____ **Insubordination**

_____ **Theft**

_____ **Other (please specify):** _____

_____

## SUPPLEMENT NO. 1    LABORERS WAGE RATES

**WAGE RATES:** In each group, two (2) different wage rates will apply for each classification.

**Wage Rate A** will apply to the following six (6) counties:

Alameda, Contra Costa, Marin, San Francisco, San Mateo and Santa Clara.

**Wage Rate B** will apply to the following forty (40) counties:

Alpine, Amador, Butte, Calaveras, Colusa, Del Norte, El Dorado, Fresno, Glenn, Humboldt, Kings, Lake, Lassen, Madera, Mariposa, Mendocino, Merced, Modoc, Monterey, Napa, Nevada, Placer, Plumas, Sacramento, San Benito, San Joaquin, Santa Cruz, Sierra, Shasta, Siskiyou, Solano, Sonoma, Stanislaus, Sutter, Tehama, Trinity, Tulare, Tuolumne, Yolo and Yuba.

Labor Foremen shall receive two dollars and twenty-five cents ($2.25) per hour above any classification in this Agreement working under his/her direction. Effective July 1, 2019, Laborer Foreman shall receive two dollars and fifty cents ($2.50) per hour above any classification in this Agreement working under his/her direction. Effective June 28, 2021, Laborer Foreman shall receive two dollars and seventy-five cents ($2.75) per hour above any classification in this Agreement for working under his/her direction. Effective June 27, 2022, Laborer Foreman shall receive three dollars ($3.00) per hour above any classification in this Agreement for working under his/her direction. When there is a need for more than one foreman on a crew or shift, one of said foremen may be designated as a General Foreman and shall receive an hourly rate higher than that of the most highly paid Laborer Foreman on that crew or shift.

General Foreman – Whether an employee shall be designated General Foreman, the person who shall be so designated and the specific assignment for such person shall be within the sole and exclusive judgement of the Individual Employer and such determination to appoint a General Foreman, or not to do so, shall not be subject to the Grievance Procedure (Section 9) of this Agreement. General Foreman shall receive an hourly rate higher than the highest paid laborer foreman on the crew or shift.

A $3.00/hour premium (shift differential) shall be added to the base rate of Wage Rate A and Wage Rate B for the second shift of two (2) shift operations and for special single shifts as defined in Section 20A.

Premiums (shift differential) are not applicable to three (3) shift operations.

A $3.00/hour premium (zone pay) shall be added to the base rate of Wage Rate B for work performed outside the geographic area as defined in Supplement No. 6.

## CONSTRUCTION SPECIALIST - WAGE RATE

### EFFECTIVE DATE

|  | 6/26/17 | 6/25/18 | 7/1/19 | 6/29/20 | 6/28/21 | 6/27/22 |
|---|---|---|---|---|---|---|
| **RATE A** | $30.49 | $1.65* | $1.90* | $1.95* | $1.95* | $2.00* |
| **RATE B** | $29.49 | $1.65* | $1.90* | $1.95* | $1.95* | $2.00* |

## CLASSIFICATIONS OF CONSTRUCTION SPECIALIST
Asphalt Ironers and Rakers

Chainsaw
Laser Beam in connection with Laborers' work
Masonry and Plasterer Tender
Cast in place manhole form setters
Pressure pipelayers
Davis Trencher - 300 or similar type (and all small trenchers)
State Licensed Blaster as designated
Diamond Drillers
Multiple Unit Drills
High Scalers (including drilling of same)
Certified Welder
Certified Traffic Control Supervisor
Directional Boring Machine/Hydraulic Drills
Remote Controlled Breaker
Operator of Laser for grade checking for pipe
Water Truck Operator (2,000 gallons or less)
Mechanical Pipe Layer  All types regardless of type or method of power

New or additional classification subject to 14A of this Agreement


## GROUP 1  WAGE RATE

**EFFECTIVE DATE**

|  | 6/26/17 | 6/25/18 | 7/1/19 | 6/29/20 | 6/28/21 | 6/27/22 |
|---|---|---|---|---|---|---|
| **RATE A** | $29.79 | $1.65* | $1.90* | $1.95* | $1.95* | $2.00* |
| **RATE B** | $28.79 | $1.65* | $1.90* | $1.95* | $1.95* | $2.00* |


## CLASSIFICATIONS OF GROUP 1

Asphalt Roller/Compacter (Walk Behind)
Asphalt Saw/Cutting, including self-propelled
Asphalt Spreader Boxes (all types)
Barko, Wacker and Similar Type Tampers
Bobcat/Skidsteer
Buggymobile
Caulkers, Banders, Pipewrappers, Conduit Layers, Plastic Pipe Layers
Certified Asbestos & Mold Removal Worker
Certified Hazardous Waste Worker (Including Lead Abatement)
Compactors of all types
Concrete and Magnesite Mixer and ½ yard
Concrete Pan Work
Concrete Sanders, Concrete Saw Cutting, including self-propelled
Cribbers and/or Shoring
Cut Granite Curb Setter
Dri pakit Machine
Faller, Logloader and Bucker
Form Raisers, Slip Forms
Green Cutters
Headerboard Men, Hubsetters, Aligners by any method

High Pressure Blow Pipe (11/2" or over, 100 lbs pressure/over)
Hydro Seeder & Similar Type
Jackhammer Operators
Jacking of Pipe over 12 inches
Jackson and Similar Type Compactors
Kettlemen, Potmen and men applying asphalt, Lay Kold, Creosote, Lime, caustic and similar type materials,
    (applying means applying dipping or handling of such materials)
Lagging, Sheeting, Whaling, Bracing, Trenchjacking, Lagging hammer
Magnesite, Epoxy resin, Fiber Glass and Mastic Workers (wet/dry)
Mechanically Stabilized Earthen Wall Constructor and Installer
No joint pipe and stripping of same, including repair of voids
Pavement Breakers and Spaders, including tool grinder
Perma Curbs
Pipe Wrappers, Pipe Fusers
Pipelayers (including grade checking in connection with pipe-laying)
Plastic and Rigid Pipe Layers
Precastmanhole setters
Pressure Pipe Tester
Post Hole Diggers  Air, Gas and Electric Power Broom Sweepers
Power Tampers of all types, except as shown in Group 2
Ram Set Gun and Stud Gun
Riprap  Stonepaver and Rockslinger, including placing of sacked concrete and/or sand (wet or dry) and Gabions
    and similar type
Rock Slicer, Rock Splitter
Rotary Scarifier or Multiple Head Concrete Chipping Scarifier
Roto and Ditch Witch
Rototiller
Sand Blasters, all types, Potmen, Gunmen and Nozzlemen
Self Propelled Brooms Under 65hp
Signaling and Rigging
Tank Cleaners
Tree Climbers
Trenchless Technology Laborer – Pipe installation, bursting, relining or similar
Turbo Blaster
VibraScreed  Bull float in connection with Laborers' work
Vibrators
Water Meter Installer

## GROUP 1(a)  WAGE RATE

**EFFECTIVE DATE**

|  | 6/26/17 | 6/25/18 | 7/1/19 | 6/29/20 | 6/28/21 | 6/27/22 |
|---|---|---|---|---|---|---|
| **RATE A** | $30.01 | $1.65* | $1.90* | $1.95* | $1.95* | $2.00* |
| **RATE B** | $29.01 | $1.65* | $1.90* | $1.95* | $1.95* | $2.00* |

## CLASSIFICATIONS OF GROUP 1(a)

Joy Drill Model TWM2A
Gardener  Denver Model DH143 and similar type drills.  (In accordance with Memorandum of Understanding
    between Laborers and Operating Engineers dated at Miami, Florida, February 3, 1954.)
Track Drillers
Jack Leg Drillers
Wagon Drillers
Mechanical Drillers  All types regardless of type or method of power
Blasters and Powderman
All work of loading, placing and blasting of all powder and explosives of whatever type, regardless of method used
    for such loading and placing
Tree Topper
Bit Grinder

## GROUP 1(b)  WAGE RATE

Sewer Cleaners shall receive four dollars ($4.00) per day above Group 1 wage rates.  "Sewer Cleaner" means any
workman who handles or comes in contact with raw sewage in small diameter sewers.  Those who work inside
recently active, large diameter sewers, and all recently active sewer manholes shall receive five dollars ($5.00) per
day above Group 1 wage rates.

## GROUP 1(c) WAGE RATE

**EFFECTIVE DATE**

|  | 6/26/17 | 6/25/18 | 7/1/19 | 6/29/20 | 6/28/21 | 6/27/22 |
|---|---|---|---|---|---|---|
| **RATE A** | $29.84 | $1.65* | $1.90* | $1.95* | $1.95* | $2.00* |
| **RATE B** | $28.84 | $1.65* | $1.90* | $1.95* | $1.95* | $2.00* |

## CLASSIFICATIONS OF GROUP 1(c)

Burning and welding in connection with Laborers' work Synthetic thermoplastics and similar type welding.

**GROUP 1(d)**

Maintenance and Repair Trackmen and Road Beds and all employees performing work covered by this Agreement shall receive twenty-five cents ($.25) per hour above their regular rate for all work performed on underground structures not specifically covered herein. This paragraph shall not be construed to apply to work below ground level in open cut. It shall apply to cut and cover work of subway construction after the temporary cover has been placed.

**GROUP 1(e)  WAGE RATE**

**EFFECTIVE DATE**

|  | 6/26/17 | 6/25/18 | 7/1/19 | 6/29/20 | 6/28/21 | 6/27/22 |
|---|---|---|---|---|---|---|
| **RATE A** | $30.34 | $1.65* | $1.90* | $1.95* | $1.95* | $2.00* |
| **RATE B** | $29.34 | $1.65* | $1.90* | $1.95* | $1.95* | $2.00* |

**CLASSIFICATIONS OF GROUP 1(e)**

Work on and/or in Bell Hole Footings and Shafts thereof, and work on and in Deep Footings (Deep Footing is a hole fifteen (15) feet or more in depth).  In the event the depth of the footing is unknown at the commencement of excavation, and the final depth exceeds fifteen (15) feet, the contractor agrees to pay the deep footing wage rate to all employees for each and every day worked on or in the excavation of the footing from the date of inception.

All work in the construction of tunnels and shafts shall be performed in accordance with the provisions of the Laborers' Tunnel Master Agreement for Northern California and the Individual Employer agrees to comply with all of the provisions of said Tunnel Agreement in such work.

Shaft is an excavation over fifteen (15) feet deep of any type, generally vertical in nature, but may decline from the vertical, and whose depth is greater than its largest horizontal dimension.  It is specifically understood that Bell Hole Footings and Deep Footings are subject to the provisions of this Agreement, and all Shafts, Stopes, Raises and Tunnels are subject to the provisions of the Tunnel Master Agreement specified herein.

**GROUP 1(g)  WAGE RATES FOR CONTRA COSTA COUNTY**

**EFFECTIVE DATE**

|  | 6/26/17 | 6/25/18 | 7/1/19 | 6/29/20 | 6/28/21 | 6/27/22 |
|---|---|---|---|---|---|---|
| **RATE** | $29.99 | $1.65* | $1.90* | $1.95* | $1.95* | $2.00* |

**CLASSIFICATIONS OF GROUP 1(g)**

Pipelayers (including grade checking in connection with pipelaying)
Caulkers
Banders
Pipewrappers
Conduit Layers
Plastic Pipe Layer

Pressure Pipe Tester
No joint pipe and stripping of same, including repair of voids
Precast Manhole setters, cast in place manhole form setters


**GROUP 1(h)**


Laborers working off or with or from Bos'n Chairs, Swinging Scaffolds, or Belts shall receive fifty cents ($.50) per hour above the applicable wage rate. This premium rate shall be reckoned by the day and half day. This shall not apply to Laborers entitled to receive the wage rate set forth in Group 1(a).


**GROUP 2  WAGE RATE**

**EFFECTIVE DATE**

|  | 6/26/17 | 6/25/18 | 7/1/19 | 6/29/20 | 6/28/21 | 6/27/22 |
|---|---|---|---|---|---|---|
| **RATE A** | $29.64 | $1.65* | $1.90* | $1.95* | $1.95* | $2.00* |
| **RATE B** | $28.64 | $1.65* | $1.90* | $1.95* | $1.95* | $2.00* |

**CLASSIFICATIONS OF GROUP 2**

Asphalt Shovelers
Cement Dumpers and handling dry cement or gypsum
Chokesetter and Rigger (clearing work)
Concrete Bucket Dumper and Chuteman
Concrete Chipping and Grinding
Concrete Laborers (wet or dry)
Drillers Helper, Chuck Tender, Nipper (One (1) Chuck Tender on single machine operation with minimum of one (1) Chuck Tender for each two (2) machines on multiple machine operations.  (Jackhammers are in no way involved in this item.)
Guinea Chaser (Stakeman), Grout Crew
High Pressure Nozzlemen, Adductors
Hydraulic Monitor (over 100 lbs. pressure)
Loading and unloading, carrying and handling of all rods and materials for use in reinforcing concrete construction
Pittsburgh Chipper, and similar type brush shredders
Sloper
Single foot, hand held, pneumatic tamper
All Pneumatic, Air, Gas and Electric Tools not listed in Groups 1 through 1(f)
Jacking of Pipe  under 12 inches

## GROUP 3  WAGE RATE

**EFFECTIVE DATE**

|  | 6/26/17 | 6/25/18 | 7/1/19 | 6/29/20 | 6/28/21 | 6/27/22 |
|---|---|---|---|---|---|---|
| **RATE A** | $29.54 | $1.65* | $1.90* | $1.95* | $1.95* | $2.00* |
| **RATE B** | $28.54 | $1.65* | $1.90* | $1.95* | $1.95* | $2.00* |

### CLASSIFICATIONS OF GROUP 3

Construction Laborers, including Bridge Laborers, General Laborers and Cleanup Laborers
Dumpman, Load Spotter
Flagperson/Pedestrian Monitor
Fire Watcher
Fence Erectors, including temporary fencing
Guardrail Erectors
Gardeners, Horticultural and Landscape Laborers (See Supplement No. 4)
Jetting
Limbers, Brush Loaders and Pilers
Pavement Markings (Button Setters/Stripers)
Maintenance, Repair Trackmen and Road Beds
Street Car and Railroad Construction Track Laborers (Rail Trackmen), including welding of rails
Temporary Air and Water Lines, Victaulic or similar
Tool Room Attendant (job site only)
Dry Utilities Laborers – Electrical and telecommunication conduit layer, joint utility trench Laborer including gas
Remediation/Land Restoration Laborer – Wetlands restoration, mitigation, or revegetation of lands (ornamental
    landscape is not included in this classification)
Demolition Worker
Pavers, Interlocking Pavers (all types) and Interlocking Paver Machines
Erosion Control Worker
Escort Driver (Construction Zone Traffic Control Pilot Car)
Solarvoltaic (Photovoltaic Assembler and Installer) Systems
Wheelbarrow, including power driven

## GROUP 3(a)  WAGE RATE

**EFFECTIVE DATE**

|  | 6/26/17 | 6/25/18 | 7/1/19 | 6/29/20 | 6/28/21 | 6/27/22 |
|---|---|---|---|---|---|---|
| **RATE A** | $29.54 | $1.65* | $1.90* | $1.95* | $1.95* | $2.00* |
| **RATE B** | $28.54 | $1.65* | $1.90* | $1.95* | $1.95* | $2.00* |

## CLASSIFICATION OF GROUP 3(a)

Composite Crew Person - Shall apply only to the operation of vehicles, when operated in conjunction with Laborers duties.

## GROUP 4  WAGE RATE

## EFFECTIVE DATE

|  | 6/26/17 | 6/25/18 | 7/1/19 | 6/29/20 | 6/28/21 | 6/27/22 |
|---|---|---|---|---|---|---|
| **RATE A** | $23.23 | $1.65* | $1.90* | $1.95* | $1.95* | $2.00* |
| **RATE B** | $22.23 | $1.65* | $1.90* | $1.95* | $1.95* | $2.00* |

## CLASSIFICATIONS OF GROUP 4

All final cleanup work of debris, grounds and building near the completion of the project including but not limited to street cleaners.  It is agreed that the Group 4 Classification is not applicable to engineering or heavy highway projects.

Cleaning & Washing Windows (subject to provisions of Section 20A)
Brick Cleaners (job site only)
Watchman (Subject to provisions of Section 20A)
Material Cleaners (job site only)

The classification "Material Cleaner" is to be utilized under the following conditions:

A.    At demolition sites for the salvage of the material.
B.    At the conclusion of a job where the material is to be salvaged and stocked to be reused on another job.
C.    The cleaning of salvage material at the Employer's job site or temporary job site yard.

The classification of "Material Cleaner" is not to be used to perform "form stripping cleaning and oiling and moving to the next point of erection."

**SUPPLEMENT NO. 2     GUNITE, SHOTCRETE, PANELCRETE AND SIMILAR TYPE WORK INCLUDING ALL PLACING, FINISHING AND PATCHING OF SHOTCRETE OR GUNITE**

Hours and working conditions and wages shall be the same as in this Master Agreement except those expressly herein provided.

## CLASSIFICATIONS/RATES PER HOUR:

Structural Nozzleman

|  | 6/26/17 | 6/25/18 | 7/1/19 | 6/29/20 | 6/28/21 | 6/27/22 |
|---|---|---|---|---|---|---|
| **RATE A** | $30.75 | $1.65* | $1.90* | $1.95* | $1.95* | $2.00* |
| **RATE B** | $29.75 | $1.65* | $1.90* | $1.95* | $1.95* | $2.00* |

Nozzleman, Gunman and Potman

|  | 6/26/17 | 6/25/18 | 7/1/19 | 6/29/20 | 6/28/21 | 6/27/22 |
|---|---|---|---|---|---|---|
| **RATE A** | $30.25 | $1.65* | $1.90* | $1.95* | $1.95* | $2.00* |
| **RATE B** | $29.25 | $1.65* | $1.90* | $1.95* | $1.95* | $2.00* |

Rodman

|  | 6/26/17 | 6/25/18 | 7/1/19 | 6/29/20 | 6/28/21 | 6/27/22 |
|---|---|---|---|---|---|---|
| **RATE A** | $30.25 | $1.65* | $1.90* | $1.95* | $1.95* | $2.00* |
| **RATE B** | $29.25 | $1.65* | $1.90* | $1.95* | $1.95* | $2.00* |

Groundman

|  | 6/26/17 | 6/25/18 | 7/1/19 | 6/29/20 | 6/28/21 | 6/27/22 |
|---|---|---|---|---|---|---|
| **RATE A** | $30.25 | $1.65* | $1.90* | $1.95* | $1.95* | $2.00* |
| **RATE B** | $29.25 | $1.65* | $1.90* | $1.95* | $1.95* | $2.00* |

Gunite Trainee**

|  | 6/26/17 | 6/25/18 | 7/1/19 | 6/29/20 | 6/28/21 | 6/27/22 |
|---|---|---|---|---|---|---|
| **RATE A** | $23.23 | $1.65* | $1.90* | $1.95* | $1.95* | $2.00* |
| **RATE B** | $22.23 | $1.65* | $1.90* | $1.95* | $1.95* | $2.00* |

Wire Winding Machine Aligner

|  | 6/26/17 | 6/25/18 | 7/1/19 | 6/29/20 | 6/28/21 | 6/27/22 |
|---|---|---|---|---|---|---|

**RATE A**                          $30.37    $1.65*    $1.90*    $1.95*    $1.95*    $2.00*

**RATE B**                          $29.37    $1.65*    $1.90*    $1.95*    $1.95*    $2.00*

Wire Winding Machine Helper

|  | 6/26/17 | 6/25/18 | 7/1/19 | 6/29/20 | 6/28/21 | 6/27/22 |
|---|---|---|---|---|---|---|
| **RATE A** | $29.39 | $1.65* | $1.90* | $1.95* | $1.95* | $2.00* |
| **RATE B** | $28.39 | $1.65* | $1.90* | $1.95* | $1.95* | $2.00* |

Reboundman

|  | 6/26/17 | 6/25/18 | 7/1/19 | 6/29/20 | 6/28/21 | 6/27/22 |
|---|---|---|---|---|---|---|
| **RATE A** | $29.66 | $1.65* | $1.90* | $1.95* | $1.95* | $2.00* |
| **RATE B** | $28.66 | $1.65* | $1.90* | $1.95* | $1.95* | $2.00* |

General Laborers

|  | 6/26/17 | 6/25/18 | 7/1/19 | 6/29/20 | 6/28/21 | 6/27/22 |
|---|---|---|---|---|---|---|
| **RATE A** | $29.54 | $1.65* | $1.90* | $1.95* | $1.95* | $2.00* |
| **RATE B** | $28.54 | $1.65* | $1.90* | $1.95* | $1.95* | $2.00* |

Gunite Foreman

|  | 6/26/17 | 6/25/18 | 7/1/19 | 6/29/20 | 6/28/21 | 6/27/22 |
|---|---|---|---|---|---|---|
| **RATE A** | $31.25 | $1.65* | $1.90* | $1.95* | $1.95* | $2.00* |
| **RATE B** | $30.25 | $1.65* | $1.90* | $1.95* | $1.95* | $2.00* |

\*\*One trainee shall be allowed for each three (3) Journeymen on a crew. In the absence of the Journeyman, the trainee shall receive the Journeyman scale.

**Travel from Jurisdiction of One Area to Another Area:**

The Employer shall have the right to bring six (6) workers from one area into another area within the area covered by this Agreement. Such Employer shall notify the Local Union one day in advance of starting the job. Other workers will be obtained when available from the area where the work is to be performed.

**Travel, Driving and Out of Town Expense Allowance:**

On projects sixty (60) miles or more by the shortest and most direct regularly traveled route from the main office or permanently established area office of the individual employer, such employer shall provide each employee transportation either physically or by paying the cost of such transportation. If the employer chooses to pay the cost of such transportation the cost shall be determined at the rate of fifty ($0.50) cents per mile for each mile in excess of sixty (60) miles. Additionally the employee will be compensated at rate of one-half (½) of his straight time wage rate both to and from the job less seventy-five (75) minutes each way.

Any employee operating or responsible for the control of a company vehicle being used to transport personnel, equipment and/or supplies from the employer's regularly established shop or yard to a jobsite shall be compensated at a rate of twenty dollars ($20.00) per hour. Any employee who is a passenger in and not directly responsible for

the control of a company vehicle is deemed to be in the vehicle voluntarily and is not subject to compensation other than discussed above. Employees assigned company vehicles will not be compensated for travel to and from the project to their homes unless it is in excess of sixty (60) miles from the regularly established shop or yard.

Travel & Driving time is not subject to Section 28 (Fringe Benefits).

Employees required to stay out of town will be compensated at the rate of seventy dollars ($70.00) per day for each night the employee is at the project location. If an employee arrives on a project on Monday and returns to his home on Friday he/she would be compensated for four (4) night's subsistence. At the employer's option on continuing projects the employee may be paid subsistence through the weekend or pay the travel to and from the project for every weekend that the employee return to such project. If the employer pays for the lodging the employee will be compensated at the rate of thirty dollars ($30.00) per day for food and other out of town expenses.

## SUPPLEMENT NO. 3        WRECKING WORK

Hours and working conditions and wages shall be the same as in this Master Agreement, except those expressly herein provided.

**CLASSIFICATIONS/RATES PER HOUR:**

**Skilled Wrecker**
  **Group No. 1**
  (Removing and salvaging of sash, windows, doors,
  plumbing and electric fixtures.)

| | 6/26/17 | 6/25/18 | 7/1/19 | 6/29/20 | 6/28/21 | 6/27/22 |
|---|---|---|---|---|---|---|
| **RATE A** | $29.79 | $1.65* | $1.90* | $1.95* | $1.95* | $2.00* |
| **RATE B** | $28.79 | $1.65* | $1.90* | $1.95* | $1.95* | $2.00* |

**Semi Skilled Wrecker**
  **Group No. 2**
  (Salvaging of other building materials)

| | 6/26/17 | 6/25/18 | 7/1/19 | 6/29/20 | 6/28/21 | 6/27/22 |
|---|---|---|---|---|---|---|
| **RATE A** | $29.64 | $1.65* | $1.90* | $1.95* | $1.95* | $2.00* |
| **RATE B** | $28.64 | $1.65* | $1.90* | $1.95* | $1.95* | $2.00* |

## SUPPLEMENT NO. 4          GARDENERS, HORTICULTURAL & LANDSCAPE WORKERS

Hours and working conditions and wages shall be the same as in this Master Agreement, except those expressly herein provided.

## CLASSIFICATION/RATES PER HOUR:

Gardeners, Horticultural and Landscape Laborers
(New Construction)

|  | 6/26/17 | 6/25/18 | 7/1/19 | 6/29/20 | 6/28/21 | 6/27/22 |
|---|---|---|---|---|---|---|
| **RATE A** | $29.79 | $1.65* | $1.90* | $1.95* | $1.95* | $2.00* |
| **RATE B** | $28.79 | $1.65* | $1.90* | $1.95* | $1.95* | $2.00* |

Service Landscape Laborers
(Establishment Warranty Period)

|  | 6/26/17 | 6/25/18 | 7/1/19 | 6/29/20 | 6/28/21 | 6/27/22 |
|---|---|---|---|---|---|---|
| **RATE A** | $29.64 | $1.65* | $1.90* | $1.95* | $1.95* | $2.00* |
| **RATE B** | $28.64 | $1.65* | $1.90* | $1.95* | $1.95* | $2.00* |

The overtime rates provided in paragraph 5 of Section 20A shall apply only to service landscape laborers (establishment warranty period) for work in excess of forty (40) hours in any one (1) week, or in excess of eight (8) hours in any one (1) day.

Service landscape laborers (establishment warranty period), may be required to work any five (5) days out of the week on any shift.

## ENTRY LEVEL LANDSCAPE LABORER

A new classification, Entry Level Landscape Laborer, is based on an eighteen (18) month training program, as follows:

| **RATE A** | 6/26/17 | 6/25/18 | 7/1/19 | 6/29/20 | 6/28/21 | 6/27/22 |
|---|---|---|---|---|---|---|
| 1st 6 mos. @ 70% | $20.85 | $1.65* | $1.90* | $1.95* | $1.95* | $2.00* |
| 2nd 6 mos. @ 80% | $23.83 | $1.65* | $1.90* | $1.95* | $1.95* | $2.00* |
| 3rd 6 mos. @ 90% | $26.81 | $1.65* | $1.90* | $1.95* | $1.95* | $2.00* |

| **RATE B** | 6/26/17 | 6/25/18 | 7/1/19 | 6/29/20 | 6/28/21 | 6/27/22 |
|---|---|---|---|---|---|---|
| 1st 6 mos. @ 70% | $20.15 | $1.65* | $1.90* | $1.95* | $1.95* | $2.00* |
| 2nd 6 mos. @ 80% | $23.03 | $1.65* | $1.90* | $1.95* | $1.95* | $2.00* |

| | | | | | | |
|---|---|---|---|---|---|---|
| 3rd 6 mos. @ 90% | $25.91 | $1.65* | $1.90* | $1.95* | $1.95* | $2.00* |

**(The above rates are wages only. Fringe Benefits are the same as in Section 28A of the Laborers' Master Agreement.)**

Prior to employment, the Employer must submit in writing any request for employees from the Local Union; and, all employees must be referred by the Local Union in the area of work.

The ratio of Entry Level Landscape Laborers shall be: One (1) in three (3), with the understanding that each Individual Contractor utilizing this Classification must employ at least one (1) Second Period Entry Level Landscape Laborer in the Second Period of the Agreement and at least one (1) Third Period Entry Level Landscape Laborer in the Third Period of the Agreement before being eligible to employ another First Period Entry Level Landscape Laborer.

## SUPPLEMENT NO. 5    REFINERY WORK

All Laborers' work in refineries, including, but not limited to, General Laborers' work, firewatch, hole watch, bottle watch, safety attendant, fire blanket, weather protection, distribution of all drinking water, storm drains, sanitary sewer pipes, demolition, emergency spill cleanup, flagging and traffic control, erosion control and silt fence, pipe laying, concrete work, cleanup and janitorial cleanup, manholes, and catch fence.

Hiring, hours and working conditions, fringe benefits, and wages shall be the same as in the Master Labor Agreement, except those expressly herein provided.

Overtime / Section 20A(4) (Weekends & Holidays) of the Master  Labor Agreement shall be modified as follows:

> One and one-half (1-1/2x) times the regular straight time hourly rate shall be paid for all work on Saturdays (except make up day) and before a shift begins and after it ends.    Double (2x) the regular straight time hourly rate shall be paid for all work on Sundays, holidays and for work in excess of twelve (12) hours in any given work day under this Supplement No. 5 for refinery work.

Recognized Jurisdiction – In addition to Section 1A(3) of the Master Labor Agreement the classifications contained in this Supplement No. 5 will not apply to all certified managers, supervisors, medical coordinators, safety auditors, or other high-level safety professionals (i.e. those that provide safety consulting, program development, supervision, or management of safety programs or personnel, operate safety equipment, and data tracking systems, risk management related services, etc.) and office clerical employees.

## EFFECTIVE DATE

|  | 6/26/17 | 6/25/18 | 7/1/19 | 6/29/20 | 6/28/21 | 6/27/22 |
|---|---|---|---|---|---|---|
| **RATE A** | $29.54 | $1.65* | $1.90* | $1.95* | $1.95* | $2.00* |
| **RATE B** | $28.54 | $1.65* | $1.90* | $1.95* | $1.95* | $2.00* |

## CLASSIFICATIONS (Group 3 Rates)
Bottle Watcher
Demolition Worker
Drinking Water Attendant
Erosion Control/ Silt Fence Worker
Fire Blanket
Fire Watcher
Flagperson
General Tool Room Attendant
Hole Watcher
No joint pipe and stripping of same, including repair  of voids
Safety Attendant (Craft)
Weather Protection Attendant

**SUPPLEMENT NO. 6        ZONE PAY**

Zone pay at three dollars ($3.00) per hour will be added to the base rate for work performed outside the Free Zone described by the following boundaries along Township and Range lines.

**MAP DESCRIPTION FOR AREA FREE ZONE.**

The following is a description based upon township and Area free zones for all of Northern California within the following lines:

1.    Commencing in the Pacific Ocean on the extension of the Southerly line of Township 19S, of the Mount Diablo Base and Meridian,
2.    Thence Easterly along the Southerly line of Township 19S, to the Northwest corner of Township 20S, Range 6E,
3.    Thence Southerly to the Southwest corner of Township 20S, Range 6E,
4.    Thence Easterly to the Northwest corner of Township 21S, Range 7E,
5.    Thence Southerly to the Southwest corner of Township 21S, Range 7E,
6.    Thence Easterly to the Northwest corner of Township 22S, Range 9E,
7.    Thence Southerly to the Southwest corner of Township 22S, Range 9E,
8.    Thence Easterly to the Northwest corner of Township 23S, Range 10E,
9.    Thence Southerly to the Southwest corner of Township 24S, Range 10E,
10.   Thence Easterly to the Southwest corner of Township 24S, Range 31E,
11.   Thence Northerly to the Northeast corner of Township 20S, Range 31E,
12.   Thence Westerly to the Southeast corner of Township 19S, Range 29E,
13.   Thence Northerly to the Northeast corner of Township 17S, Range 29E,
14.   Thence Westerly to the Southeast corner of Township 16S, Range 28E,
15.   Thence Northerly to the Northeast corner of Township 13S, Range 28E,
16.   Thence Westerly to the Southeast corner of Township 12S, Range 27E,
17.   Thence Northerly to the Northeast corner of Township 12S, Range 27E,
18.   Thence Westerly to the Southeast corner of Township 11S, Range 26E,
19.   Thence Northerly to the Northeast corner of Township 11S, Range 26E,
20.   Thence Westerly to the Southeast corner of Township 10S, Range 25E,
21.   Thence Northerly to the Northeast corner of Township 9S, Range 25E,
22.   Thence Westerly to the Southeast corner of Township 8S, Range 24E,
23.   Thence Northerly to the Northeast corner of Township 8S, Range 24E,
24.   Thence Westerly to the Southeast corner of Township 7S, Range 23E,
25.   Thence Northerly to the Northeast corner of Township 6S, Range 23E,
26.   Thence Westerly to the Southeast corner of Township 5S, Range 20E,
27.   Thence Northerly to the Northeast corner of Township 5S, Range 20E,
28.   Thence Westerly to the Southeast corner of Township 4S, Range 19E,
29.   Thence Northerly to the Northeast corner of Township 1S, Range 19E,
30.   Thence Westerly to the Southeast corner of Township 1N, Range 18E,
31.   Thence Northerly to the Northeast corner of Township 3N, Range 18E,
32.   Thence Westerly to the Southeast corner of Township 4N, Range 17E,
33.   Thence Northerly to the Northeast corner of Township 4N, Range 17E,
34.   Thence Westerly to the Southeast corner of Township 5N, Range 15E,
35.   Thence Northerly to the Northeast corner of Township 5N, Range 15E,
36.   Thence Westerly to the Southeast corner of Township 6N, Range 14E,
37.   Thence Northerly to the Northeast corner of Township 10N, Range 14E,
38.   Thence Easterly along the Southern line of Township 11N, to the California/Nevada State Border,
39.   Thence Northerly along the California/Nevada State Border to the Northerly line of Township 17N,
40.   Thence Westerly to the Southeast corner of Township 18N, Range 10E,

41.    Thence Northerly to the Northeast corner of Township 20N, Range 10E,
42.    Thence Westerly to the Southeast corner of Township 21N, Range 9E,
43.    Thence Northerly to the Northeast corner of Township 21N, Range 9E,
44.    Thence Westerly to the Southeast corner of Township 22N, Range 8E,
45.    Thence Northerly to the Northeast corner of Township 22N, Range 8E,
46.    Thence Westerly to the Northwest corner of Township 22N, Range 8E,
47.    Thence Northerly to the Southwest corner of Township 27N, Range 8E,
48.    Thence Easterly to the Southeast corner of Township 27N, Range 8E,
49.    Thence Northerly to the Northeast corner of Township 28N, Range 8E,
50.    Thence Westerly to the Southeast corner of Township 29N, Range 6E,
51.    Thence Northerly to the Northeast corner of Township 32N, Range 6E,
52.    Thence Westerly to the Northwest corner of Township 32N, Range 6E,
53.    Thence Northerly to the Northeast corner of Township 35N, Range 5E,
54.    Thence Westerly to the Southeast corner of Township 36N, Range 3E,
55.    Thence Northerly to the Northeast corner of Township 36N, Range 3E,
56.    Thence Westerly to the Southeast corner of Township 37N, Range 1W,
57.    Thence Northerly to the Northeast corner of Township 38N, Range 1W,
58.    Thence Westerly to the Southeast corner of Township 39N, Range 2W,
59.    Thence Northerly to the Northeast corner of Township 40N, Range 2W,
60.    Thence Westerly to the Southeast corner of Township 41N, Range 4W,
61.    Thence Northerly to the Northeast corner of Township 42N, Range 4W,
62.    Thence Westerly to the Southeast corner of Township 43N, Range 5W,
63.    Thence Northerly to the California/Oregon State Border,
64.    Thence Westerly along the California/Oregon State Border to the Westerly Boundary of Township Range 8W,
65.    Thence Southerly to the Southwest corner of Township 43N, Range 8W,
66.    Thence Easterly to the Southeast corner of Township 43N, Range 8W,
67.    Thence Southerly to the Southwest corner of Township 42N, Range 7W,
68.    Thence Easterly to the Southeast corner of Township 42N, Range 7W,
69.    Thence Southerly to the Southwest corner of Township 41N, Range 6W,
70.    Thence Easterly to the Northwest corner of Township 40N, Range 5W,
71.    Thence Southerly to the Southwest corner of Township 38N, Range 5W,
72.    Thence Westerly to the Northwest corner of Township 37N, Range 6W,
73.    Thence Southerly to the Southwest corner of Township 35N, Range 6W,
74.    Thence Westerly to the Northwest corner of Township 34N, Range 10W,
75.    Thence Southerly to the Southwest corner of Township 31N, Range 10W,
76.    Thence Easterly to the Northwest corner of Township 30N, Range 9W,
77.    Thence Southerly to the Southwest corner of Township 30N, Range 9W,
78.    Thence Easterly to the Northwest corner of Township 29N, Range 8W,
79.    Thence Southerly to the Southwest corner of Township 23N, Range 8W,
80.    Thence Easterly to the Northwest corner of Township 22N, Range 6W,
81.    Thence Southerly to the Southwest corner of Township 16N, Range 6W,
82.    Thence Westerly to the Southeast corner of Township 16N, Range 9W,
83.    Thence Northerly to the Northeast corner of Township 16N, Range 9W,
84.    Thence Westerly to the Southeast corner of Township 17N, Range 12W,
85.    Thence Northerly to the Northeast corner of Township 18N, Range 12W,
86.    Thence Westerly to the Northwest corner of Township 18N, Range 15W,
87.    Thence Southerly to the Southwest corner of Township 14N, Range 15W,
88.    Thence Easterly to the Northwest corner of Township 13N, Range 14W,
89.    Thence Southerly to the Southwest corner of Township 13N, Range 14W,
90.    Thence Easterly to the Northwest corner of Township 12N, Range 13W,
91.    Thence Southerly to the Southwest corner of Township 12N, Range 13W,
92.    Thence Easterly to the Northwest corner to Township 11N, Range 12W,
93.    Thence Southerly into the Pacific Ocean, and,

94. Commencing in the Pacific Ocean on the extension of the Humboldt Base Line,
95. Thence Easterly to the Northwest corner of Township 1S, Range 2E,
96. Thence Southerly to the Southwest corner of Township 2S, Range 2E,
97. Thence Easterly to the Northwest corner of Township 3S, Range 3E,
98. Thence Southerly to the Southwest corner of Township 5S, Range 3E,
99. Thence Easterly to the Southeast corner of Township 5S, Range 4E,
100. Thence Northerly to the Northeast corner of Township 4S, Range 4E,
101. Thence Westerly to the Southeast corner of Township 3S, Range 3E,
102. Thence Northerly to the Northeast corner of Township 5N, Range 3E,
103. Thence Easterly to the Southeast corner of Township 6N, Range 5E,
104. Thence Northerly to the Northeast corner of Township 7N, Range 5E,
105. Thence Westerly to the Southeast corner to Township 8N, Range 3E,
106. Thence Northerly to the Northeast corner of Township 9N, Range 3E,
107. Thence Westerly to the Southeast corner of Township 10N, Range 1E,
108. Thence Northerly to the Northeast corner of Township 13N, Range 1E,
109. Thence Westerly into the Pacific Ocean, excluding that portion of Northern California contained within the following lines:
110. Commencing at the Southwest corner of Township 12N, Range 11E, of the Mount Diablo Base and Meridian,
111. Thence Easterly to the Southeast corner of Township 12N, Range 16E,
112. Thence Northerly to the Northeast corner of Township 12N, Range 16E,
113. Thence Westerly to the Southeast corner of Township 13N, Range 15E,
114. Thence Northerly to the Northeast corner of Township 13N, Range 15E,
115. Thence Westerly to the Southeast corner of Township 14N, Range 14E,
116. Thence Northerly to the Northeast corner of Township 16N, Range 14E,
117. Thence Westerly to the Northwest corner of Township 16N, Range 12E,
118. Thence Southerly to the Southwest corner of Township 16N, Range 12E,
119. Thence Westerly to the Northwest corner of Township 15N, Range 11E,
120. Thence Southerly to the point of beginning at the Southwest corner of Township 12N, Range 11E.

**Zone Pay and map changes shall apply for work bid after June 26, 2006.**

**All areas other than free zones shall be subject to the payment of Zone Pay.**

The Individual Employer shall not be required to pay Zone Pay to employees employed by an Individual Employer in a permanent yard or shop or plant and employees employed by an Individual Employer on residential construction projects (not camps); subdivisions; buildings of three (3) stories or less including utilities and site work related to these buildings; streets, roadways and utilities which are a part of a residential construction project.

**Zone pay shall not be applicable within the city limits of the following cities or towns:**

Auburn, Coalinga, Crescent City, Exeter, Grass Valley, Greenfield, Jackson, Jamestown, Lindsay, Mariposa, Nevada City, Placerville, Porterville, Sonora, Strathmore, Terrabella, Tuolumne, Twain Harte, Woodlake or Yreka.

Zone Pay shall apply to publicly financed camps, highways, dams, tunnels, power facilities, defense facilities, utilities (except as provided above), sewage disposal plants and heavy engineering projects together with the camps, warehouses, offices or facilities constructed in connection with such latter projects.

No Zone Pay shall be paid on a job located within the right of way of a road or highway forming part of the boundary of the Zone Pay area.

If a road or highway forming part of the boundary of a Zone Pay Area is relocated, such relocated road or highway upon being officially opened shall form a part of the boundary of the Zone Pay Area in place of the old road.

When the work is to be performed in the Zone Pay Area, each employee employed to perform work covered by this Agreement shall receive the Zone Pay specified herein.

When the work to be performed is in the Free Zone, such employees shall not be entitled to receive Zone Pay; provided, however, if two or more hours of compensable time (straight time or premium time) are worked by said employee in the Zone Pay Area, he/she shall be entitled to be paid appropriate Zone Pay for all hours worked.

**SUPPLEMENT NO. 7     SUPPLEMENT TO THE MASTER AGREEMENT REGARDING LABORERS WORK FOR THE CONCRETE SAWING, DRILLING, CORING AND BREAKING INDUSTRY**

**CLASSIFICATIONS/WAGE RATES PER HOUR:**

**Construction Specialists:**

Chainsaw, Concrete Diamond Chainsaw,
Diamond Drillers, Diamond Core Drillers,
Multiple Unit Drills, High Scaler,
Hydraulic Drills
**RATE A**
**RATE B**

**Group 1:**

Barko, Wacker and Similar Type Tampers,
Concrete Sanders, Concrete Saw,
Green Cutters, Jackhammer Operators,
Pavement Breakers and Spaders,
Power Tampers of all Types (except as
Shown in Group 2), Rotary Scarifier or
Multiple Head, Concrete Chipping Scarifier,
Roto and Ditch Witch
**RATE A**
**RATE B**

**Group 1(a):**

Joy Drill, Gardener, Track Drillers,
Jack Leg Drillers, Wagon Drillers,
Mechanical Drillers, Mechanical Pipe Layer,
Blasters and Powderman, Tree Topper,
Bit Grinder
**RATE A**
**RATE B**

**Group 1 (c)**

Burning and Welding in Connection with
Laborer's Work
**RATE A**
**RATE B**

**CLASSIFICATIONS/WAGE RATES PER HOUR: (cont.)**

**Group 1(e)**

Bell Footings and Shafts,
Deep Footings (Hole fifteen (15)
feet or more in depth)
**RATE A**
**RATE B**

**Group 1(f):**

Aligner-
**RATE A**
**RATE B**

Helper-
**RATE A**
**RATE B**

**Group 1(g):**
Contra Costa County
**RATE**

**Group 2:**

Concrete Chipping and Grinding,
Drillers Helper, Chuck Tender, Nipper
**RATE A**
**RATE B**

**Group 3:**

Construction Laborers, including Bridge
Laborers and General Laborers, Flagperson
**RATE A**
**RATE B**

**Group 4:**

All final cleanup work, Cleaning & Washing Windows,
Brick Cleaners, Watchman,
Material Cleaners
**RATE A**
**RATE B**

**TRAVEL & DRIVING TIME**

TRAVEL RATES PER HOUR:

**EFFECTIVE DATE**

| | **6/26/17** | **6/25/18** | **7/1/19** | **6/29/20** | **6/28/21** | **6/27/22** |
|---|---|---|---|---|---|---|
| | $18.91 | $19.16 | $  * | $  * | $  * | $  * |

1.  Time and one-half the travel rate shall be paid on travel during work time after the employee has worked a total of forty (40) hours work in a week or eight (8) hours work in a day on prevailing wage projects. Any employee operating or responsible for the control of a company vehicle being used to transport personnel, equipment and/or supplies from the Individual Employer's regularly established shop or yard to a jobsite shall be compensated at the travel rate. No employee shall suffer a reduction in rate as a result of this agreement.

2.  The employee's working time starts at the jobsite, yard or shop where he or she is required to report for work or begin driving a vehicle. Those who, as a matter of convenience, travel as passengers in company provided transportation shall not be paid travel time to the first site of employment or from the last site of employment during the workday. Employees assigned company vehicles that are provided primarily for the employee's convenience will be paid a driving stipend based on the travel rate for travel time spent driving in excess of sixty (60) miles to and from the first and last project in a workday where the project is located in excess of sixty (60) miles from the regularly established shop or yard.

3.  Travel & Driving time is not subject to Section 28 (Fringe Benefits) in the Agreement except as set forth herein. However, an Individual Employer shall be required to contribute one hundred ten (110) hours to the Health & Welfare Trust Fund on behalf of an employee in any month where the employee's travel time work hours and non-travel work hours equal or exceed one hundred ten (110) hours for the month and the employee's non-travel time work hours are less than one hundred ten (110) hours. The Individual Employer will designate on the Trust Fund report form those hours which represent travel time work hours. (Example:  Employee works ninety [90] non-travel time hours and twenty-five [25] travel time work hours in January. The Individual Employer will remit one hundred ten [110] hours of contributions to the Health & Welfare Trust Fund.) When an employee's non-travel time work hours for an Individual Employer in a given calendar year are not sufficient to earn a year of pension service credits, an Individual Employer will be required to contribute the additional hours an employee would need to earn a year of pension service credit where the employee's travel time and non-travel work hours would equal or exceed the number of hours necessary to earn a year of pension service credit. (Example:  One thousand [1,000] hours are needed for a year of service credits. Employee works nine hundred [900] non-travel time hours and one hundred twenty-five [125] travel time hours in calendar year 2013. Individual Employer reports an additional one hundred (100) hours to the Pension Trust Fund for the month of December 2013 to enable an employee to earn a year of service credits.)

**SCHEDULE "A"    DISTRICT COUNCIL OF LABORERS HIRING HALL LOCATIONS**

| Local | City | Street Address | Phone Number | Dispatch Hours |
|-------|------|----------------|--------------|----------------|
| 67* | Oakland | 8301 Edgewater Drive, #201 | 510-569-4761 | 7:00-9:00 a.m. |
| 67* | Sacramento | 2717 Cottage Way, #12 | 916-482-2607 | 7:00-9:00 a.m. |
| 73 | Stockton | 3984 Cherokee Road | 209-466-3356 | 6:30-9:00 a.m. |
| 166 | Oakland | 8400 Enterprise Way, Rm 109 | 510-568-0141 | 7:00-9:00 a.m. |
| 185 | Sacramento | 1320 National Drive | 916-928-8300 | 6:30-9:00 a.m. |
| 185 | Redding | 2210 Twin View Blvd. | 530-221-0961 | 6:30-9:00 a.m. |
| 261 | San Francisco | 3271 18th Street | 415-826-4550 | 6:30-9:00 a.m. |
| 261 | San Mateo | 300 – 7th Ave. | 650-344-7168 | 6:30-9:00 a.m. |
| 261 | San Rafael | 4174 Redwood Highway | 415-492-0936 | 6:30-9:00 a.m. |
| 270 | San Jose | 509 Emory St. | 408-297-2620 | 6:00-9:00 a.m. |
| 270 | Santa Cruz | 640 Eaton St. | 831-475-7058 | 6:00-9:00 a.m. |
| 270 | Salinas | 117 Pajaro St. | 831-422-7077 | 7:00-9:00 a.m. |
| 294 | Fresno | 5431 East Hedges Ave. | 559-255-3019 | 6:30-9:00 a.m. |
| 294 | Visalia | 319 N. Church St. | 559-734-9426 | 6:30-9:00 a.m. |
| 304 | Hayward | 29475 Mission Blvd. | 510-581-9600 | 6:00-9:00 a.m. |
| 304 | Oakland | 425 Roland Way | 510-562-2661 | 6:00-9:00 a.m. |
| 304 | Livermore | 2063 Research Drive. | 925-455-8292 | 6:00-9:00 a.m. |
| 324 | Martinez | 611 Berrellesa St. | 925-228-0930 | 6:30-9:00 a.m. |
| 324 | Antioch | 1005 Fitzuren Road | 925-522-0006 | 6:30-9:00 a.m. |
| 324 | Fairfield | 4727 Mangels Blvd. | 707-643-7214 | 6:30-9:00 a.m. |
| 324 | Richmond | 101 S. 12th St. | 510-234-1069 | 6:30-9:00 a.m. |
| 886 | Oakland | 8400 Enterprise Way, Rm 110 | 510-632-0161 | N/A |
| 1130 | Modesto | 2549 Yosemite Blvd., Ste K | 209-521-9883 | 7:00-9:00 a.m. |

*Asbestos

**Northern California District Council of Laborers**
**Union Plaza**
**4780 Chabot Drive, Suite 200**
**Pleasanton, CA 94588**
**Telephone 925-469-6800**
**Facsimile 925-469-6900**
**Office Hours: 7:00 a.m. to 5:00 p.m. Monday through Friday**

# 2018-2023 SIDE LETTERS

**LETTER OF UNDERSTANDING**

**2018-2023 UCON-LABORERS MASTER AGREEMENT**

**COMPOSITE CREWS ON PRIVATE WORK**

1.  It is hereby agreed by and between the Employer, United Contractors (UCON) on its own behalf and on behalf of its Individual Employers, and the Union, the Northern California District Council of Laborers for and on behalf of its affiliated Local Unions as follows:

2.  In order to enhance productivity and competitiveness in private work covered by the Laborers' Master Agreement, the Individual Employer may, upon advanced written notice to the Union, establish composite crews consisting of laborers and members of other signatory crafts, in such number and proportions as the Individual Employer determines appropriate to the type of work to be performed. Composite crew members will not be restricted as to the duties they perform while working as members of the composite crew on the assigned work. And the composition of the composite crew, its size, number, and foremen shall be solely at the discretion of the Individual Employer; provided,

    (i)    Laborers on the composite crew be properly compensated for the duties actually performed;

    (ii)   This Agreement is applicable only where the craft union representing the members of the composite crew , other than the Laborers, are also signatory to this Composite Crew Side Letter of Understanding;

    (iii)  This understanding shall not be utilized as precedent for establishing or altering craft jurisdiction in any form;

    (iv)   The Union may, at its sole discretion, deny and withhold the terms of this Agreement to any Individual Employer which misuses this Letter of Understanding. And either party may rescind and nullify the terms of this Letter of Understanding upon advance notice to the other party;

    (v)    Any and all disputes regarding the interpretation and application of this Letter of Understanding, including the withholding or rescinding of the terms of this Side Letter must be resolved through Section 9 of the Laborers' Master Agreement Board of Adjustment procedure, which is the sole and exclusive forum for resolving such disputes, and the decision of which is final and binding on the parties, including the Individual Employers.

IN WITNESS WHEREOF, the parties hereto execute this Letter of Understanding by their respective officers authorized to do so this 21ˢᵗ day of December 2017.

**FOR THE EMPLOYER:**

**UNITED CONTRACTORS**

**Donna Rehrmann, UCON Laborers Craft Committee Co-Chair**

**Mike Ghilotti, UCON Laborers Craft Committee Co-Chair**

**Victor Sella, Director of Labor Relations**

**FOR THE UNION:**

**NORTHERN CALIFORNIA DISTRICT COUNCIL OF LABORERS OF THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, AFL-CIO**

**Oscar De La Torre, Business Manager**

**LETTER OF UNDERSTANDING**

**2018-2023 UCON-LABORERS MASTER AGREEMENT**

**SECTION 11 (SUBCONTRACTORS)**

It is hereby agreed by and between United Contractors (UCON) and the Northern California District Council of Laborers of the Laborers' International Union of North America, AFL-CIO (NCDCL) that an Individual Employer will have satisfied the requirements of Section 11 (Subcontractors) if the subcontractor is bound by and complies with the terms and conditions of the Laborers Master Builders Agreement, Laborers Master Agreement, or an appropriate agreement negotiated specific to that type of work by the Northern District Council of Laborers.

IN WITNESS WHEREOF, the parties hereto execute this Letter of Understanding by their respective officers authorized to do so this 21st day of December 2017.

**FOR THE EMPLOYER:**

**UNITED CONTRACTORS**

Donna Rehrmann, UCON Laborers Craft
Committee Co-Chair

Mike Ghilotti, UCON Laborers Craft
Committee Co-Chair

Victor Sella, Director of Labor Relations

**FOR THE UNION:**

**NORTHERN CALIFORNIA DISTRICT COUNCIL OF LABORERS OF THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, AFL-CIO**

Oscar De La Torre, Business Manager

**SIDE LETTER**

**2018-2023 UCON-LABORERS MASTER AGREEMENT**

**STAGGERED STARTS**

It is hereby agreed by and between United Contractors (UCON) and the Northern California District Council of Laborers of the Laborers' International Union of North America, AFL-CIO (NCDCL) as follows:

The following language shall be placed in a Side Letter until the other basic crafts agree, then placed in the main body of the agreement.

"The Individual Employer may, at its discretion, stagger individual employee's starting times at the employee's regular rate of pay within the established starting times of this Agreement."

All other terms and conditions of the 2018-2023 UCON-Laborers Master Labor Agreement between the collective parties and Northern California District Council of Laborers, including Side Letters and Private Work Agreements shall remain unchanged.

IN WITNESS WHEREOF, the parties hereto execute this Letter of Understanding by their respective officers authorized to do so this 21st day of December 2017.

**FOR THE EMPLOYER:**

**UNITED CONTRACTORS**

Donna Rehrmann, UCON Laborers Craft Committee Co-Chair

Mike Ghilotti, UCON Laborers Craft Committee Co-Chair

Victor Sella, Director of Labor Relations

**FOR THE UNION:**

**NORTHERN CALIFORNIA DISTRICT COUNCIL OF LABORERS OF THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, AFL-CIO**

Oscar De La Torre, Business Manager

**SIDE LETTER**

**2018-2023 UCON-LABORERS MASTER AGREEMENT**

**SAN JOSE OPPORTUNITY TO WORK ORDINANCE WAIVER**

The collective bargaining parties agree that, to the fullest extent permitted by law, the UCON-NCDCL Master Agreement shall operate to waive any provision of the San Jose Opportunity to Work Ordinance, effective March 13, 2017, and shall supersede and be considered to have fulfilled all requirements of said Ordinance as presently written and/or amended during the life of this Agreement.

Specifically, in accordance with the provisions of Section 4.101.110 (Collective Bargaining Under Federal Law) of the San Jose Opportunity to Work Ordinance, the collective bargaining parties hereby expressly waive the Opportunity to Work Ordinance requirements in clear and unambiguous terms.

In addition, this waiver shall apply to any other state, city, county or other local law or ordinance containing like requirements as those found in the San Jose Opportunity to Work Ordinance that may be adopted during the term of this Agreement.

IN WITNESS WHEREOF, the parties hereto execute this Letter of Understanding by their respective officers authorized to do so this 21st day of December 2017.

**FOR THE EMPLOYER:**

**UNITED CONTRACTORS**

_____
Donna Rehrmann, UCON Laborers Craft Committee Co-Chair

_____
Mike Ghilotti, UCON Laborers Craft Committee Co-Chair

_____
Victor Sella, Director of Labor Relations

**FOR THE UNION:**

**NORTHERN CALIFORNIA DISTRICT COUNCIL OF LABORERS OF THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, AFL-CIO**

_____
Oscar De La Torre, Business Manager

**SIDE LETTER**

**2018-2023 UCON-LABORERS MASTER AGREEMENT**

**STATUTORY CLAIMS**

It is hereby agreed by and between United Contractors and its respective members, ("Employer") and the Northern California District Council of Laborers, affiliated with the Laborers' International Union of North America ("Union"), as follows:

This Side Letter supplements and expands on the provision in Section 9 (Grievance Procedure) of the Master Agreement requiring that all claims arising under the federal Fair Labor Standards Act, the California Labor Code or Wage Order 16 be processed through the grievance and arbitration procedure and not in a court of law or administrative proceeding. The time limit for pursuing claims for missed meal periods and rest periods shall be the time limit in the Grievance procedure, which is consistent and permitted by Labor Code Section 512(e) and Wage Order 16, Section 11(E). For all other statutory claims governed by this provision, the time limit for asserting such claims shall be six months, which the parties have chosen based on the statute of limitations for filing unfair labor practice charges under the National Labor Relations Act.

IN WITNESS WHEREOF, the parties hereto execute this Letter of Understanding by their respective officers authorized to do so this 21st day of December 2017.

**FOR THE EMPLOYER:**

**UNITED CONTRACTORS**

_____
Donna Rehrmann, UCON Laborers Craft Committee Co-Chair

_____
Mike Ghilotti, UCON Laborers Craft Committee Co-Chair

_____
Victor Sella, Director of Labor Relations

**FOR THE UNION:**

**NORTHERN CALIFORNIA DISTRICT COUNCIL OF LABORERS OF THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, AFL-CIO**

_____
Oscar De La Torre, Business Manager

**LETTER OF UNDERSTANDING**

**2018-2023 UCON-LABORERS MASTER AGREEMENT**

**SAN FRANCISCO FAMILY FRIENDLY WORKPLACE ORDINANCE**

It is hereby agreed by and between United Contractors (UCON) and the Northern California District Council of Laborers of the Laborers' International Union of North America, AFL-CIO (NCDCL) as follows:

In accordance with the provisions of Section 12Z.12 (Waiver through Collective Bargaining) of the San Francisco Family Friendly Workplace Ordinance, the undersigned collective bargaining parties hereby expressly waive the Family Friendly Workplace Ordinance requirements in clear and unambiguous terms, effective January 1, 2014.

In addition, this waiver shall apply to any other city, county or other local ordinance requiring caregiver leave that may be adopted during the term of this Agreement.

IN WITNESS WHEREOF, the parties hereto execute this Letter of Understanding by their respective officers authorized to do so this 21st day of December 2017.

**FOR THE EMPLOYER:**

**UNITED CONTRACTORS**

Donna Rehrmann, UCON Laborers Craft Committee Co-Chair

Mike Ghilotti, UCON Laborers Craft Committee Co-Chair

Victor Sella, Director of Labor Relations

**FOR THE UNION:**

**NORTHERN CALIFORNIA DISTRICT COUNCIL OF LABORERS OF THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, AFL-CIO**

Oscar De La Torre, Business Manager

**SIDE LETTER**

**2018-2023 UCON-LABORERS MASTER AGREEMENT**

**SHIFT DIFFERENTIAL ON PRIVATE WORK & BUILDING PROJECTS**

It is hereby agreed by and between United Contractors (UCON) and the Northern California District Council of Laborers of the Laborers' International Union of North America, AFL-CIO (NCDCL) that the shift differential premiums for special single shifts in Section 20(A) of the UCON/Laborers Master Agreement do not apply for private work projects and building projects (same conditions as CEA/Laborers Master Agreement).

Shift differential will continue to apply for two-shift operations.

IN WITNESS WHEREOF, the parties hereto execute this Letter of Understanding by their respective officers authorized to do so this 21st day of December 2017.

**FOR THE EMPLOYER:**

**UNITED CONTRACTORS**


_____
**Donna Rehrmann, UCON Laborers Craft Committee Co-Chair**


_____
**Mike Ghilotti, UCON Laborers Craft Committee Co-Chair**


_____
**Victor Sella, Director of Labor Relations**

**FOR THE UNION:**

**NORTHERN CALIFORNIA DISTRICT COUNCIL OF LABORERS OF THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, AFL-CIO**


_____
**Oscar De La Torre, Business Manager**

**SIDE LETTER**

**2018-2023 UCON-LABORERS MASTER AGREEMENT**

**PREVAILING WAGE PROTECTION**

The bargaining parties agree that should either the Federal or State Department of Labor or Department of Industrial Relations change the method by which Prevailing Wage Determinations are made during the term of this agreement, the parties agree to meet and confer within thirty (30) business days to try to develop an alternative application of the terms of this agreement for the bidding of Public Works Projects.

IN WITNESS WHEREOF, the parties hereto execute this Letter of Understanding by their respective officers authorized to do so this 21st day of December 2017.

**FOR THE EMPLOYER:**

**UNITED CONTRACTORS**

_____
**Donna Rehrmann, UCON Laborers Craft Committee Co-Chair**

_____
**Mike Ghilotti, UCON Laborers Craft Committee Co-Chair**

_____
**Victor Sella, Director of Labor Relations**

**FOR THE UNION:**

**NORTHERN CALIFORNIA DISTRICT COUNCIL OF LABORERS OF THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, AFL-CIO**

_____
**Oscar De La Torre, Business Manager**

## SIDE LETTER

## 2018-2023 UCON-LABORERS MASTER AGREEMENT

## SAN FRANCISCO PAID PARENTAL LEAVE ORDINANCE WAIVER

The collective bargaining parties agree, that to the fullest extent permitted by law, the UCON-NCDCL Master Agreement shall operate to waive any provision of the San Francisco Paid Parental Leave Ordinance, San Francisco Police Code Article 33H (Sections 3300H.1 through 3300H.14), effective May 21, 2016 and operative January 1, 2017, and shall supersede and be considered to have fulfilled all requirements of said Ordinance as presently written, and/or amended during the life of this Agreement.

Specifically, in accordance with the provisions of Section 3300H.9 (Waiver through Collective Bargaining) of the San Francisco Paid Parental Leave Ordinance, the collective bargaining parties hereby expressly waive the Paid Parental Leave Ordinance requirements in clear and unambiguous terms.

In addition, this waiver shall apply to any other city, county or other local ordinance requiring similar paid parental leave by the employer that may be adopted during the term of this Agreement.

IN WITNESS WHEREOF, the parties hereto execute this Letter of Understanding by their respective officers authorized to do so this 21st day of December 2017.

FOR THE EMPLOYER:

UNITED CONTRACTORS

_____
Donna Rehrmann, UCON Laborers Craft Committee Co-Chair

_____
Mike Ghilotti, UCON Laborers Craft Committee Co-Chair

_____
Victor Sella, Director of Labor Relations

FOR THE UNION:

NORTHERN CALIFORNIA DISTRICT COUNCIL OF LABORERS OF THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, AFL-CIO

_____
Oscar De La Torre, Business Manager

**SIDE LETTER**

**2018-2023 UCON-LABORERS MASTER AGREEMENT**

**PAID SICK LEAVE WAIVER**

The collective bargaining parties agree that, to the fullest extent permitted by law, the UCON-NCDCL Master Agreement shall operate to waive any provisions of the Healthy Workplaces, Healthy Families Act of 2014 (AB 1522), effective January 1, 2015, and shall supersede and be considered to have fulfilled all requirements of the Act as presently written and/or amended during the life of this Agreement.

The bargaining parties also expressly agree, to the fullest extent permitted by law, to waive any paid sick leave provisions of the following local paid sick leave ordinances: San Francisco (Administrative Code Section 12W), Oakland (Municipal Code Section 592 et. seq.), Emeryville (Municipal Code Title 5, Chapter 37), Berkeley (Municipal Code Chapter 13.100). In addition, to the fullest extent permitted by law, this waiver shall apply to any other Federal, State, City, County or other local ordinance requiring mandatory Paid Sick Leave that may be adopted during the term of this agreement.

In addition, if any Federal, State, City, County or other local ordinance requiring mandatory compensated time off other than Paid Sick Leave is enacted during the term of this Agreement, then the Union and the Employer agree to meet and confer within thirty (30) business days.

All disputes concerning the validity of the waivers are subject to Section 9 Grievance Procedure.

IN WITNESS WHEREOF, the parties hereto execute this Letter of Understanding by their respective officers authorized to do so this 21st day of December 2017.

FOR THE EMPLOYER:

**UNITED CONTRACTORS**

_____
**Donna Rehrmann, UCON Laborers Craft Committee Co-Chair**

_____
**Mike Ghilotti, UCON Laborers Craft Committee Co-Chair**

_____
**Victor Sella, Director of Labor Relations**

FOR THE UNION:

**NORTHERN CALIFORNIA DISTRICT COUNCIL OF LABORERS OF THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, AFL-CIO**

_____
**Oscar De La Torre, Business Manager**

**SIDE LETTER**

**2018-2023 UCON-LABORERS MASTER AGREEMENT**

**SECOND SHIFT STARTING TIME ON PRIVATE WORK**

It is hereby agreed by and between United Contractors and its respective members, ("Employer") and the Northern California District Council of Laborers, affiliated with the Laborers' International Union of North America ("Union"), as follows:

For private work, on two-shift operations, the starting time for the second shift may be within three (3) hours prior to the end of the first shift or within three (3) hours after the end of the first shift.

The Individual Employer shall notify the Union prior to implementing the provisions of this Side Letter.

IN WITNESS WHEREOF, the parties hereto execute this Letter of Understanding by their respective officers authorized to do so this 21st day of December 2017.

**FOR THE EMPLOYER:**

**UNITED CONTRACTORS**

_____
**Donna Rehrmann, UCON Laborers Craft Committee Co-Chair**

_____
**Mike Ghilotti, UCON Laborers Craft Committee Co-Chair**

_____
**Victor Sella, Director of Labor Relations**

**FOR THE UNION:**

**NORTHERN CALIFORNIA DISTRICT COUNCIL OF LABORERS OF THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, AFL-CIO**

_____
**Oscar De La Torre, Business Manager**

**SIDE LETTER**

**2018-2023 UCON-LABORERS MASTER AGREEMENT**

**GOVERNMENT ORDINANCE WAIVERS DURING TERM OF AGREEMENT**

In the event that any local, state or federal entity passes legislation with a collective bargaining waiver provision during the term of this Agreement which may result in negative impact to the Union or Management, the Union and Management agree on a case-by-case basis to meet and confer to obtain necessary waivers within thirty (30) calendar days of a request from either party.

In the event the legislation precludes exclusion for parties covered by valid Collective Bargaining Agreements, the parties agree to the full extent permitted, prior to the effective date, to enter into bargaining for the purposes of addressing the specific legislation.

If the statute, ordinance, or regulation does not require adherence during the term of this Agreement and is stayed until the next contract cycle, then this provision shall not apply unless mutually agreed to by the parties. No party shall unreasonably withhold the granting of such waiver.

IN WITNESS WHEREOF, the parties hereto execute this Letter of Understanding by their respective officers authorized to do so this 21st day of December 2017.

FOR THE EMPLOYER:

UNITED CONTRACTORS

_____
Donna Rehrmann, UCON Laborers Craft Committee Co-Chair

_____
Mike Ghilotti, UCON Laborers Craft Committee Co-Chair

_____
Victor Sella, Director of Labor Relations

FOR THE UNION:

NORTHERN CALIFORNIA DISTRICT COUNCIL OF LABORERS OF THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, AFL-CIO

_____
Oscar De La Torre, Business Manager

**SIDE LETTER**

**2018-2023 UCON-LABORERS MASTER AGREEMENT**

**BERKELEY FAMILY FRIENDLY & ENVIRONMENT FRIENDLY
WORKPLACE ORDINANCE WAIVER**

The collective bargaining parties agree that, to the fullest extent permitted by law, the UCON-NCDCL Master Agreement shall operate to waive any provision of the Berkeley Family Friendly & Environment Friendly Workplace Ordinance (Berkeley Municipal Code, Chapter 13.101), effective March 16, 2017, and shall supersede and be considered to have fulfilled all requirements of said Ordinance as presently written and/or amended during the life of this Agreement.

Specifically, in accordance with the provisions of Section 13.101.110 (Waiver through Collective Bargaining) of the Ordinance, the collective bargaining parties hereby expressly waive the Family Friendly & Environment Friendly Workplace Ordinance in clear and unambiguous terms.

In addition, this waiver shall apply to any other state, city, county or other local law or ordinance containing like requirements as those found in the Berkeley Family Friendly & Environment Friendly Workplace Ordinance that may be adopted during the term of this Agreement.

IN WITNESS WHEREOF, the parties hereto execute this Letter of Understanding by their respective officers authorized to do so this 21st day of December 2017.

**FOR THE EMPLOYER:**                                   **FOR THE UNION:**

**UNITED CONTRACTORS**                                **NORTHERN CALIFORNIA DISTRICT COUNCIL OF LABORERS OF THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, AFL-CIO**

_____                      _____
Donna Rehrmann, UCON Laborers Craft Committee        Oscar De La Torre, Business Manager
Co-Chair

_____
Mike Ghilotti, UCON Laborers Craft Committee Co-Chair

_____
Victor Sella, Director of Labor Relations

**LETTER OF UNDERSTANDING**

**2018-2023 UCON-LABORERS MASTER AGREEMENT**

**SUBCONTRACTING**

It is hereby agreed by and between United Contractors (UCON) and the Northern California District Council of Laborers of the Laborers' International Union of North America, AFL-CIO (NCDCL) as follows:

Subcontracting – (wood fencing, temporary fencing, wood retaining walls, chip seal, slurry seal, landscaping, erosion and sediment control [including soil stabilization and soil, vegetation, and watershed pollution control], remediation/land restoration, dry utilities/conduit, striping [parking stalls only], housemover, solar voltaic and trenchless technology work).  Should the Individual Employer solicit union subcontractor bids with reasonable notice in writing by FAX or e-mail, the following provision is applicable.  When there are no union subcontractor bids, the non-union subcontractor may be used without restriction.  The Individual Employer shall be responsible to set up a meeting between the non-union subcontractor and the Union upon request.

The Union will be notified in writing by the Individual Employer by FAX or e-mail prior to implementation of this provision.

IN WITNESS WHEREOF, the parties hereto execute this Letter of Understanding by their respective officers authorized to do so this 21st day of December 2017.

**FOR THE EMPLOYER:**

**UNITED CONTRACTORS**

_____
Donna Rehrmann, UCON Laborers Craft
Committee Co-Chair

_____
Mike Ghilotti, UCON Laborers Craft
Committee Co-Chair

_____
Victor Sella, Director of Labor Relations

**FOR THE UNION:**

**NORTHERN CALIFORNIA DISTRICT
COUNCIL OF LABORERS OF THE
LABORERS' INTERNATIONAL UNION
OF NORTH AMERICA, AFL-CIO**

_____
Oscar De La Torre, Business Manager

### SIDE LETTER

### 2018-2023 UCON-LABORERS MASTER AGREEMENT

### WAIVER OF MINIMUM WAGE ORDINANCES

The collective bargaining parties agree, that to the fullest extent permitted by law, the UCON-NCDCL Master Agreement shall operate to waive any provision of all currently existing Minimum Wage Ordinances (MWOs) in Northern California, and shall supersede and be considered to have fulfilled all requirements of said Ordinances as presently written, and/or amended during the life of this Agreement. Specifically, in accordance with the applicable provisions of the Ordinances, the collective bargaining parties hereby expressly waive the Minimum Wage Ordinance requirements for the following Ordinances in clear and unambiguous terms:

    Belmont MWO – Belmont City Code Chapter 32; CBA Waiver – Section 32-9
    Berkeley MWO – Berkeley Municipal Code Chapter 13.99; CBA Waiver – Section 13.99.055
    Cupertino MWO – Cupertino Municipal Code Title 3, Chapter 3.37; CBA Waiver – Section 3.37.050
    El Cerrito MWO – El Cerrito Municipal Code Chapter 6.95; CBA Waiver – Section 6.95.050-B
    Emeryville MWO – Emeryville Municipal Code Title 5, Chapter 37; CBA Waiver – Section 5-37.07(e)(1)
    Los Altos MWO – Los Altos Municipal Code Chapter 3.5; CBA Waiver – Section 3.50.050
    Oakland MWO – Oakland Municipal Code Chapter 5.92; CBA Waiver – Section 5.92.050(B
    Palo Alto MWO – Palo Alto Municipal Code Chapter 4.62; CBA Waiver – Section 4.62.050
    Richmond MWO – Richmond Municipal Code Chapter 7.108; CBA Waiver – Section 7.108.050
    San Francisco MWO – San Francisco Administrative Code Chapter 12R; CBA Waiver – Section 12R.8
    San Jose MWO – San Jose Municipal Code Title 4, Chapter 4.100; CBA Waiver – Section 4.100.050
    San Leandro MWO – San Leandro Municipal Code Chapter 4-35; CBA Waiver – Section 4-35-500
    San Mateo MWO – San Mateo Municipal Code Chapter 5.92; CBA Waiver – Section 5.92.060
    Santa Clara MWO – Santa Clara City Code Title 3, Chapter 3.20; CBA Waiver – Section 3.20.050
    Sunnyvale MWO – Sunnyvale Municipal Code Title 3, Chapter 3.80; CBA Waiver – Section 3.80.050

In addition, this waiver shall apply to any other city, county or other local ordinance requiring minimum wage payments different from the state minimum wage that may be adopted during the term of this Agreement.

In the event that a local minimum wage ordinance provides for an hourly wage that is higher than the hourly rate provided for the appropriate classification in the UCON-NCDCL Master Agreement, the Individual Employer will pay the higher rate.

IN WITNESS WHEREOF, the parties hereto execute this Letter of Understanding by their respective officers authorized to do so this 21st day of December 2017.

FOR THE EMPLOYER:

UNITED CONTRACTORS

_____
**Donna Rehrmann, UCON Laborers Craft Committee Co-Chair**

_____
**Mike Ghilotti, UCON Laborers Craft Committee Co-Chair**

_____
**Victor Sella, Director of Labor Relations**

FOR THE UNION:

NORTHERN CALIFORNIA DISTRICT COUNCIL OF LABORERS OF THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, AFL-CIO

_____
**Oscar De La Torre, Business Manager**




**2018-2023 UCON-LABORERS MASTER AGREEMENT**

**MEMORANDUM OF UNDERSTANDING**

**RE: PRIVATE WORK**

### I.  Recognition-Scope

This Memorandum of Understanding is entered into by the Employer, United Contractors (UCON), for and on behalf of itself and its member Individual Employers and the Union, the Northern California District Council of Laborers, for itself and on behalf of its affiliated Local Unions, effective July 1, 2018, and is available only to Individual Employers which are and remain signatory to the applicable current Laborers Master Agreement for Northern California (2018-2023), and any extensions and modifications thereof and successors thereto.  Any Individual Employer rescinding its membership in an Association signatory to the Laborers Master Agreement and any Individual Employer abrogating its Laborers Master Agreement immediately nullifies and loses its eligibility to participate in this Memorandum of Understanding.

### II.  Geographic Jurisdiction

This Memorandum of Understanding shall apply to Northern California, which term means that portion of the State of California above the Northerly boundary of Kern County, the Northerly boundary of San Luis Obispo County, and the Westerly boundaries of Inyo and Mono Counties, which includes the following counties: Alameda, Alpine, Amador, Butte, Calaveras, Colusa, Contra Costa, Del Norte, El Dorado, Fresno, Glenn, Humboldt, Kings, Lake, Lassen, Madera, Marin, Mariposa, Mendocino, Merced, Modoc, Monterey, Napa, Nevada, Placer, Plumas, Sacramento, San Benito, San Francisco, San Joaquin, San Mateo, Santa Clara, Santa Cruz, Shasta, Sierra, Siskiyou, Solano, Sonoma, Stanislaus, Sutter, Tehama, Trinity, Tulare, Tuolumne, Yolo and Yuba.

### III.  Scope of Agreement

This Memorandum of Understanding will apply only to private work where the total value of the project is ten million dollars ($10,000,000.00) or less in the geographic areas set forth above.  In order to qualify for the terms of this Memorandum of Understanding, the signatory Individual Employer must notify the Union in writing of its intention to utilize this Memorandum of Understanding, the identity of the project, its owner, its funding sources, and the total dollar value of the project.  The Individual Employer must provide the Union with the documentation necessary to establish that the project meets the requirements set forth, *supra*.

This Memorandum of Understanding shall apply to all scopes of work set forth in the Laborers Master Agreement.

1




### IV.  Term of the Agreement

The Memorandum of Understanding shall be coextensive with the Laborers Master Agreement 2018-2023; its terms and conditions shall lapse and expire on June 30, 2023 and shall revert to the terms of the Laborers Master Agreement unless both parties agree expressly and in writing to extend the terms of this Memorandum of Understanding.    Moreover, this Memorandum of Understanding shall immediately be null and void for any Individual Employer or Association which terminates or abrogates its Laborers Master Agreement with the Union.    Either party may cancel this Memorandum of Understanding on the anniversary of its expiration upon thirty (30) days' written notice.

### V.  Manning and Hiring

For projects qualifying under the terms of this Memorandum of Understanding, the Individual Employer shall be permitted to employ one (1) apprentice for each journeyman hired up to a maximum of three (3) apprentices for three (3) journeymen.    Thereafter, the ratio shall be three (3) journeymen for each apprentice.

Any Individual Employer utilizing this Memorandum of Understanding must make its best effort to hire at least twenty-five percent (25%) of its workforce from the Local Union in whose area the project is located.

### VI.  Compensation

Upon application of the Individual Employer, as specified in III, *supra*, the District Council may in its discretion grant the Individual Employer some or all of the following:

i.    All journeymen Laborers working under this memorandum shall be classified and compensated as Group 3 Laborers; however, there shall be no shift premiums;

ii.    Fringe Benefits shall be as set forth in the Laborers Master Agreement with the exception of annuity, vacation pay, and Industry Stabilization;

iii.    The District Council may grant relief in the form of reduced wages by a maximum of thirty percent (30%) of the rates set forth in the Laborers Master Agreement;

iv.    Relief from the requirements of Section 11 of the Laborers Master Agreement at the discretion of the District Council in consideration of the give project for which such relief is requested.

2

 

### VII.  Access to Information

The Individual Employer will provide the Union with all the facts upon which it relies for seeking relief under this Private Work Agreement, including documentation.

IN WITNESS WHEREOF, the parties hereto execute this Letter of Understanding by their respective officers authorized to do so this 21st day of December 2017.

**FOR THE EMPLOYER:**

**UNITED CONTRACTORS**

**Donna Rehrmann, UCON Laborers Craft Committee Co-Chair**

**Mike Ghilotti, UCON Laborers Craft Committee Co-Chair**

**Victor Sella, Director of Labor Relations**

**FOR THE UNION:**

**NORTHERN CALIFORNIA DISTRICT COUNCIL OF LABORERS OF THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, AFL-CIO**

**Oscar De La Torre, Business Manager**

3