UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VINCENT CARRILLO,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MONTEREY MECHANICAL CO.,<br><br>　　　　Defendant. | Case No. 24-cv-09202-LJC<br><br>**ORDER REGARDING MOTION TO REMAND**<br><br>Re: Dkt. No. 14 |

## I.　INTRODUCTION

Plaintiff Vincent Carrillo asserts wage-and-hour claims against Defendant Monterey Mechanical Co. (Monterey) on behalf of himself and a putative class of similarly situated employees. Monterey removed the case from the California Superior Court for Santa Clara County, arguing that Carrillo's state law claims are preempted by the Labor Management Relations Act (LMRA), and Carrillo moves to remand. The Court previously found the matter suitable for resolution without oral argument and now DENIES the Motion to Remand.[1]

## II.　BACKGROUND

Carrillo asserts the following claims against Monterey: (1) failure to pay minimum wage and compensation for all hours worked as required by sections 204 and 1194 of the California Labor Code, Compl.[2] ¶¶ 32–41; (2) failure to pay overtime as required by sections 204, 510, 1194, and 1198 of the Labor Code, Compl. ¶¶ 42–50; (3) failure to provide meal periods as required by sections 226.7 and 512 of the Labor Code, as well as section 11 of applicable wage orders, Compl.

---

[1] The parties consented to the jurisdiction of a magistrate judge for all purposes under 28 U.S.C. § 636(c).
[2] Carrillo's Complaint appears in the record as pages 14 through 42 of Monterey's Notice of Removal, ECF No. 1. This Order cites documents filed in the record using page numbers as assigned by the Court's ECF filing system unless otherwise specified.

¶¶ 51–54; (4) failure to allow rest periods as required by section 512 of then Labor Code, Compl. ¶¶ 55–58; (5) failure to pay timely wages to discharged employees as required by sections 201 and 202 of the Labor Code, Compl. ¶¶ 59–65; (6) failure to maintain and provide accurate and compliant wage statements as required by section 226(a) of the Labor Code, Compl. ¶¶ 66–73; (7) failure to reimburse employees' expenses as required by section 2802 of the Labor Code, Compl. ¶¶ 74–78; (8) failure to provide employment records as required by sections 226 and 1198.5(a) of the Labor Code, Compl. ¶¶ 79–87; and (9) violation of the section 17200 of the California Business and Professions Code (the Unfair Competition Law, or UCL) by virtue of the violations alleged above.

Carrillo filed his Complaint in state court on September 20, 2024. *See* ECF No. 1 at 14. The parties disputed—and now dispute once again—whether process was served on an employee at Monterey's office on October 10, 2024. Monterey's attorney Marco Garcia states in a declaration he told Carrillo's attorney Fawn Bekam by telephone on October 28, 025 that Monterey disputed whether service had been completed but "was willing to accept service via Notice of Acknowledgment of Receipt ('NAR')." ECF No. 21-3, ¶ 2. According to Garcia, "Ms. Bekam agreed and stated that she would send the NAR document as opposed to dispute the validity of service," and a paralegal sent the NAR on Bekam's behalf shortly thereafter. *Id.* ¶ 3. Monterey executed the Notice of Acknowledgment of Receipt on November 18, 2024, effectively waiving service under state law. *Id.*; ECF No. 1 at 51. Monterey removed to this Court thirty days later on December 18, 2024, asserting that many of Carrillo's claims are preempted by section 301 of the LMRA because any right to relief he might have on those claims is governed by a collective bargaining agreement (CBA). *See generally* ECF No. 1.

Carrillo now moves to remand, arguing both that Monterey's removal was untimely and that no claim in his Complaint is preempted by the LMRA. Carrillo does not dispute that the CBA governs putative class members' employment, but he contends that his claims arise solely under state law and do not rely on or require interpretation of the CBA such that the LMRA preempts them.

### III. LEGAL STANDARD

Federal courts may only resolve cases falling within their limited subject matter jurisdiction. A defendant can generally remove a case from state court to federal court if the case falls within federal subject matter jurisdiction such that it could have been filed in federal court, subject to applicable procedural rules and restrictions. *See generally* 28 U.S.C. § 1441. The removing defendant has the burden of showing that removal is proper. *See, e.g.*, *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004). The Ninth Circuit has recognized a "strong presumption against removal," such that any doubts as to whether a case is properly removed must be resolved in favor of remand to state court. *Gaus v. Miles*, 980 F.2d 564, 566 (9th Cir. 1992) (citation and internal quotation marks omitted); *see Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003).

A notice of removal is timely if "filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief . . ., or within 30 day after service of summons upon the defendant if such initial pleading has been filed in court and is not required to be served on the defendant, whichever period is shorter." 28 U.S.C. § 1446(b)(1). Subject to certain exceptions not applicable here for cases that are removable based on diversity jurisdiction, "if the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." *Id.* § 1446(b)(3). A case can be removed outside of those two thirty-day deadlines if neither the original pleading nor any other paper served on the defendant shows that it is removable, but the defendant determines that it is removable based on the defendant's own knowledge or investigation. *Kenny v. Wal-Mart Stores, Inc.*, 881 F.3d 786, 791 (9th Cir. 2018).

### IV. ANALYSIS

Carrillo's Complaint purports to assert only state law claims. Neither party suggests that the parties are citizens of different states such that the case might implicate diversity jurisdiction under 28 U.S.C. § 1332. Monterey's sole argument for subject matter jurisdiction is that Carrillo's

3

1  claims implicitly depend on a collective bargaining agreement (the CBA), and therefore fall within

2  federal question jurisdiction under 28 U.S.C. § 1331 because they are preempted by section 301 of

3  the LMRA, 29 U.S.C. § 185.

> Although normally federal preemption is a defense that does not authorize removal to federal court, § 301 has such "extraordinary pre-emptive power" that it "converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Metro. Life Ins. v. Taylor*, 481 U.S. 58, 65 (1987). In other words, a civil complaint raising claims preempted by § 301 raises a federal question that can be removed to a federal court. *See id.*

*Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1152 (9th Cir. 2019).

Carrillo contends that his claims are not preempted, and thus do not arise under federal law or otherwise fall within federal subject matter jurisdiction. He also argues that Monterey's removal was untimely. The Court begins with the threshold procedural issue of timeliness before turning to the question of federal preemption.

### A.     Timeliness of Removal

Carrillo asserts that he validly served Monterey under section 415.20 of the California Code of Civil Procedure by leaving the summons and Complaint with Christina Sou, the person apparently in charge at Monterey's office, and thereafter mailing copies to Monterey, and that such service was effective October 20, 2024, fifty-nine days before Monterey removed this case on December 18, 2024. ECF No. 14 at 8–9. Monterey does not dispute that such service would have satisfied section 415.20 and been effective on the date Carrillo asserts *if* Carrillo had done what he says, but Monterey contends that such service was never completed, and that the Carrillo's Complaint was not sufficient on its face to put Monterey on notice that the case was removable. ECF No. 21 at 7–8. The Court addresses those two arguments in turn.

#### 1.     Disputed Facts Regarding Service of Process

Monterey offers a declaration from Sou stating under penalty of perjury that she "did not receive a copy of the Summons, Complaint, Civil Case Cover Sheet, and Notice of Case Management on Thursday, October 10, 2024, at 11:48am," and is "unaware of anyone else from [her] office receiving these documents." ECF No. 21-1, ¶ 3. Carrillo offers a proof of service

4

1  completed by process server Moises Altunar Hernandez declaring under penalty of perjury that he
2  served process on Sou at that time, ECF No. 41-1 at 4–5, as well as a subsequent declaration by
3  Hernandez confirming that to be true, stating that he could not have identified Sou as the person
4  served if he had not spoken with her, and attaching a photograph of the outside of Monterey's
5  office that he asserts he took at the time he completed service, ECF No. 22-1.

6  It appears that someone is either mistaken or lying. The Court need not resolve that
7  question of credibility, however, for two separate and sufficient reasons. First, undisputed
8  evidence in the record indicates that Carrillo's attorney agreed not to dispute the validity of the
9  purported service of process on Sou. Second, the four corners of Carrillo's Complaint did not
10 provide notice of removability, so § 1446(b)(1)'s thirty-day deadline never began to run. This
11 Order should not be construed as determining the credibility of either Hernandez or Sou.

### 2. Carrillo Waived Reliance on Hernandez's Purported Service

13 Monterey's attorney Marco Garcia states in a declaration that he conferred with Carrillo's
14 attorney Fawn Bekam by telephone on October 28, 2024 regarding whether service had been
15 completed. ECF No. 21-3, ¶ 2. Garcia told Bekam that "no one at Defendant's place of business
16 was personally served." *Id.* In other words, Monterey took the position service had not occurred
17 as Hernandez described it in his proof of service. Garcia said that Monterey "was willing to
18 accept service via Notice of Acknowledgment of Receipt ('NAR')." *Id.* According to Garcia,
19 "Ms. Bekam agreed and stated that she would send the NAR document *as opposed to dispute the*
20 *validity of service*." *Id.* ¶ 3 (emphasis added). Bekam's paralegal sent the NAR form (along with
21 the Complaint and related documents) to Garcia a short time later the same day,[3] and Garcia
22 executed it on Monterey's behalf on November 18, 2025. *Id.*; *see* ECF No. 1 at 12–48 (October
23 28, 2024 from Bekam's paralegal transmitting the NAR form with the Complaint and other

---

[3] Although Monterey therefore *received* the Complaint on October 28, 2024, the Supreme Court has held "that a named defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, but not by mere receipt of the complaint unattended by any formal service." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347–48 (1999). Crediting Carrillo's agreement not to dispute Monterey's refutation of the purported service on Sou, "formal service" did not occur until Monterey executed the NAR.

1  documents); at 50–51 (November 18, 2024 from Garcia's legal secretary transmitting the NAR
2  executed by both parties).

3        Carrillo offered no evidence with his Reply controverting Garcia's account of an express
4  agreement by both parties to complete service using the NAR instead of disputing the validity of
5  the purported earlier service by Hernandez.  Carrillo cannot now rely on its earlier purported
6  service to render Monterey's removal untimely after Monterey relied on that express agreement
7  and removed within thirty days after service was effective pursuant to the Notice of
8  Acknowledgment of Receipt signed by both parties.  The Court finds that agreement sufficient in
9  itself to render Monterey's December 18, 2024 removal timely, even assuming for the sake of
10 argument that § 1446(b)(1)'s thirty-day deadline began to run upon service of the Complaint.  The
11 following section addressing whether the Complaint provided sufficient notice of removability is
12 provided only in an abundance of caution, as a separate and sufficient basis to reach the same
13 conclusion.

14       **3.**      **Whether Carrillo's Complaint Provided Notice of Removability**

15       Accepting for the sake of argument that service was effective October 20, 2024,
16 Monterey's removal fifty-nine days later on December 18, 2024 would be untimely if Carrillo's
17 Complaint provided sufficient notice of the purportedly federal nature of his claims to implicate
18 the thirty-day deadline under § 1446(b)(1).

19       Carrillo relies heavily on *Cantrell v. Great Republic Insurance Co.*, 873 F.2d 1249 (9th
20 Cir. 1989), to argue that Monterey's removal was untimely.  In that case, the defendant insurance
21 companies rescinded the plaintiff's policy, and the plaintiff brought a claim in state court against
22 one of two related companies for breach of the implied covenant of good faith and fair dealing.
23 873 F.2d at 1249–50.  More than a year after the first defendant answered the complaint, but less
24 than thirty days after the plaintiff amended her complaint to add the other related company (which
25 was already litigating the case as if it was the defendant), the defendants removed to federal court.
26 *Id.* at 1250–51.  The defendants asserted jurisdiction under the Employee Retirement Income
27 Security Act of 1974 (ERISA), which preempts state law claims for improper handling of
28 employee benefits, and both the district court and the Ninth Circuit agreed that the complaint arose

6

1  under federal law. *Id.* at 1251–53.

2    The parties' arguments regarding timeliness of removal in that case focused on whether the
3  addition of the second defendant provided a new opportunity to remove the case. The district
4  court held that it did, and that removal was therefore timely. *Id.* at 1254. The Ninth Circuit
5  disagreed, holding that the district court should have remanded the case because the deadline ran
6  from service of the original complaint—at least where the second defendant had "acted as a
7  'party' to the action" even before being named as a defendant. *Id.* at 1254–56.[4] The Ninth Circuit
8  also briefly addressed the fact that neither of the plaintiff's complaint specifically invoked ERISA:

> Finally, it should be noted that appellees have not argued that [Plaintiff] Cantrell's failure to allege explicitly any causes of action arising under ERISA in her original complaint caused appellees' failure to remove the action within thirty days of the filing of the original complaint. [Footnote 11.] Nor would it be fair to let appellees "have it both ways," i.e., to permit them to remove the action on the basis of ERISA preemption but excuse them from compliance with the thirty-day removal period, at least in the absence of evidence that appellees were ignorant of the presence of an ERISA component in the action prior to the filing of the amended complaint.
>
> [Footnote 11:] To the contrary, appellees assert, in another context, that no "discovery" is needed in this case to reveal the "true [i.e. "ERISA"] nature of [Cantrell's] claim." Appellees' Brief at 16. In support of this assertion appellees point to a declaration by Anne Van Belkom which they attached to their opposition to Cantrell's motion to remand. According to appellees, this declaration states that Cantrell's insurance policy was part of "an ERISA plan." *Id.* (citing C.R. 12, Exhibit B). Thus appellees concede that they were aware that the action was really an ERISA case at the outset of the litigation.

20  *Id.* at 1255 & n.11 (brackets within footnote in original).

21    On its own, *Cantrell* could perhaps be read as suggesting that the defendants' existing
22  knowledge of the nature of the insurance policy was relevant to their understanding of whether the
23  plaintiff's complaints stated a removable claim. *Cantrell* also implied that the two thirty-day
24  periods discussed in § 1446 are the only times when a defendant can remove a case. *See id.* at
25  1254 (stating that because the case was removed around two years after the original complaint was

---

[4] One district court has questioned whether that holding is still good law. *Griffith v. Am. Home Prods. Corp.*, 85 F. Supp. 2d 995, 999 (E.D. Wash. 2000). This Court need not address that issue when the case at hand does not involve a newly added defendant.

7

served, "the removal could only be justified, if at all, under the second paragraph of section 1446(b)"[5]).  But more recent decisions that speak more directly to those issues have rejected both of those propositions.

With respect to the significance of a defendant's knowledge, the Ninth Circuit held that "that notice of removability under § 1446(b) is determined through examination of the four corners of the applicable pleadings, *not through subjective knowledge* or a duty to make further inquiry."  *Harris v. Bankers Life & Casualty Co.*, 425 F.3d 689, 694 (9th Cir. 2005) (emphasis added).  As for when removal based on a defendant's own investigation or knowledge can occur, the Ninth Circuit held "that §§ 1441 and 1446, read together, permit a defendant to remove outside the two thirty-day periods on the basis of its own information, provided that it has not run afoul of either of the thirty-day deadlines" by failing to remove after being served with a complaint or other document that showed the case to be removable.  *Roth v. CHA Hollywood Medical Center, L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013).[6]  "As long as the complaint or 'an amended pleading, motion, order or other paper' does not reveal that the case is removable, a defendant, in effect, may remove at any time," and has no "duty of inquiry" to determine whether the case is removable.  *Kenny*, 881 F.3d at 791 (cleaned up).

The clearest way to square *Cantrell* with that more recent precedent is to take at face value the Ninth Circuit's statement that "Cantrell's original complaint gave both of the appellees notice of the federal question raised by Cantrell's complaint."  *Cantrell*, 873 F.2d at 1256; *see also Harris*, 425 F.3d at 694 (quoting that language).  If the complaint in that case included sufficient

---

[5] At the time, the second paragraph of § 1446(b) included language substantially identical to the current § 1446(b)(3), which provides for removal after within thirty days after service of any other paper that demonstrates a case is removable if the original complaint did not.  *See Cantrell*, 873 F.2d at 1254 (quoting the statute in effect at the time).

[6] *Roth* acknowledged concerns that allowing a defendant to remove outside of either of § 1446(b)'s deadlines could invite gamesmanship by a defendant waiting to remove until a strategically advantageous time late in a case, but held that no such gamesmanship was apparent in the case at hand, and that the "best answer—and a likely sufficient answer—is that plaintiffs are in a position to protect themselves" by promptly serving the defendant with notice of any potential grounds for removability.  720 F.3d at 1126.  To the extent that *Roth* and subsequent decisions might have left open the question of whether courts can reject strategically delayed removals, this is not such a case.  Monterey removed the case at most a few weeks too late, no meaningful litigation occurred during that time, and Carrillo has not argued that he was prejudiced by the timing of removal.

8

information on its face to put the defendants on notice that the state law claims the plaintiff asserted were preempted by ERISA, then § 1446(b)'s thirty-day deadline began to run when that complaint was served, and the defendants' removal more than a year later was untimely.

Here, Carrillo's Complaint does not mention within its four corners the CBA on which Monterey's removal relies. *See generally* ECF No. 1 at 14–42. Service of the Complaint therefore did not trigger a thirty-day deadline to remove under § 1446(b)(1).

### 4. Whether Monterey Waived Arguments Regarding Notice of Removability

Carrillo suggests in his Reply that Monterey conceded the Complaint triggered § 1446(b)(1) by asserting in its Notice of Removal that, "[p]ursuant to 28 U.S.C. § 1446(b), this Notice of Removal is being timely filed with this Court within 30 days after service of the Complaint on Defendant." ECF No. 1 at 9, ¶ 25; *see* ECF No. 22 at 4. But the Notice of Removal does not go so far as to directly assert that the Complaint provided sufficient notice of removability, and Carrillo cites no authority requiring a notice of removal to state the grounds for its timeliness with particularity.

As a matter of law and logic, any removal filed within thirty days after service of a case-initiating complaint would be timely, regardless of whether the complaint itself put the defendant on notice of removability and thus started § 1446(b)(1)'s thirty-day countdown. That is so because one of the following three things would necessarily be true: (1) the complaint demonstrated removability, and the removal properly occurred within § 1446(b)(1)'s thirty-day deadline; (2) the complaint did not, but some "other paper" establishing removability was served later and set a later thirty-day deadline under § 1446(b)(3) that also would not yet have expired; or (3) no paper establishing removability had been served, and the "defendant, in effect, may remove at any time" under *Kenny*, 881 F.3d at 791.

Given that Monterey apparently credited Sou's statement that she was never served and believed it had not been served until it executed a Notice of Acknowledgment of Receipt, Monterey could reasonably have concluded that asserting it removed within thirty days after that date was the most straightforward way to establish the timeliness of its removal, even if it was not

Monterey's only available argument that removal was timely. The Court therefore does not construe the Notice of Removal as waiving an argument that the Complaint itself was not sufficient on its face to put Monterey on notice of removability and trigger § 1446(b)(1)'s thirty-day deadline to remove.

\* \* \*

As discussed above, even if the Complaint put Monterey on notice of removability, Monterey timely removed this case under § 1446(b)(1) within thirty days of service of process through the NAR, and permissibly relied on Carrillo's agreement not to dispute the question of whether service had previously been completed. Alternatively, even if service had been completed earlier, the Complaint did not provide notice of removability, so Monterey could remove at any time under the Ninth Circuit's holding in *Roth* and *Kenny*.[7] The Court therefore concludes that removal was timely, and proceeds to the parties' arguments regarding federal preemption and jurisdiction.

### B. LMRA Preemption

As noted above, section 301 of the LMRA preempts many state law claims asserting rights that arise from a collective bargaining agreement, such that a complaint bringing such claims is construed as invoking section 301 and may be removed to federal court on that basis.

There are limits, however, to the scope of LMRA preemption. "[D]efensive reliance on the terms of the CBA, mere consultation of the CBA's terms, or a speculative reliance on the CBA will not suffice to preempt a state law claim." *Humble v. Boeing Co.*, 305 F.3d 1004, 1008 (9th Cir. 2002). Courts use a two-step test to determine whether a claim is preempted:

> First, we ask whether the asserted cause of action involves a right that exists solely as a result of the CBA. The essential inquiry is this: Does the claim seek purely to vindicate a right or duty created by the CBA itself? If so, then the claim is preempted, and the analysis ends there.
>
> But if not, we proceed to the second step and ask whether a plaintiff's state law right is substantially dependent on analysis of the CBA, which turns on whether the claim cannot be resolved by simply

---

[7] Neither party points to any "amended pleading, motion, order or other paper" that demonstrated removability and started the thirty-day clock under § 1446(b)(3), or asserts that Monterey otherwise received such information during this litigation.

10

> "looking to" versus "interpreting" the CBA. We have stressed that "interpretation" is construed narrowly in this context. At this second step of the analysis, claims are only preempted to the extent there is an active dispute over 'the meaning of contract terms. Accordingly, a state law claim may avoid preemption if it does not raise questions about the scope, meaning, or application of the CBA.

*Curtis*, 913 F.3d at 1152–53 (cleaned up).

The parties' disputes in this case turn primarily on whether the CBA at issue meets various exceptions to the statutes on which Carrillo bases his claims. Section 514 of the Labor Code, for example, provides that "Sections 510 and 511 do not apply to an employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage." Cal. Lab. Code § 514.  Section 512(f) of the Labor Code states that the statute's requirement to provide meal periods does not apply to employees in certain industries who are covered by a collective bargaining agreement that "expressly provides for the wages, hours of work, and working conditions of employees, and expressly provides for meal periods for those employees, final and binding arbitration of disputes concerning application of its meal period provisions, premium wage rates for all overtime hours worked, and a regular hourly rate of pay of not less than 30 percent more than the state minimum wage rate." Cal. Lab. Code § 512(f).

For a time, district courts were divided over whether such exceptions established a basis for preemption. Some courts held that an employee whose Labor Code claim was precluded by a qualifying CBA was then effectively seeking relief under that CBA, so the claim was preempted. *E.g.*, *Coria v. Recology, Inc.*, 63 F. Supp. 3d 1093, 1098–1100 (N.D. Cal. 2014) (denying a motion to remand based on the court's conclusion that the plaintiff's meal period claim under section 512 and overtime claim under section 510 were barred by a CBA meeting the standards of sections 512(e) and 514). Other courts held that those exceptions to the labor code provided affirmative defenses, and that if a plaintiff was not able to pursue such a claim because the plaintiff was covered by a qualifying CBA, the result would be dismissal under the terms of the applicable state statute, not preemption by the LMRA. *E.g.*, *Young v. Securitas Sec. Servs. USA, Inc.*, No. 17-cv-

11

05342-JCS, 2018 WL 1142190, at *6–7 (N.D. Cal. Mar. 2, 2018) (citing primarily *Vasserman v. Henry Mayo Newhall Mem'l Hosp.*, 65 F. Supp. 3d 932, 954 (C.D. Cal. 2014)).

In *Curtis*, however, the Ninth Circuit took the former approach, holding that the LMRA preempted a plaintiff's claim for overtime wages under section 510 under step one of the two-part test when the plaintiff's CBA met the criteria for the exception under section 514. *Curtis*, 913 F.3d at 1155 ("Because Curtis's right to overtime exists solely as a result of the CBA, his claim that Irwin violated overtime requirements by not paying him for the 12 off-duty hours is preempted under § 301. Thus, his claim fails at step one of the preemption analysis." (cleaned up)). The plaintiff in that case did not dispute that the relevant CBAs met the requirements of section 514, but claimed that the exemption was inapplicable because the CBA established a definition for overtime that differed from section 510's provision for overtime wages. *Id.* at 1154. Although *Curtis* did not address the question of whether section 514 and similar provisions provided for affirmative defenses (or the line of district court cases that held they did not support preemption), its holding is clear that a claim falling within those exemptions is preempted "at step one" of the analysis, without need to consider the extent to which the claim relies on interpretation of a CBA. *See id.* At step one, "[t]he essential inquiry is this: Does the claim seek purely to vindicate a right or duty created by the CBA itself?" *Id.* at 1152 (cleaned up). Since *Curtis*, district courts that previously treated such defenses as not establishing preemption have changed course, recognizing *Curtis*'s holding to the contrary. *E.g.*, *Tejeda v. Vulcan Materials Co.*, No. 23-cv-00619-JCS, 2024 WL 3642403, at *16 (N.D. Cal. Aug. 1, 2024).

Consistent with *Curtis*, Carrillo does not argue here that a claim falling within an exemption would be subject to dismissal on state law grounds rather than preemption by the LMRA.[8] Instead, Carrillo disputes that that the exemptions apply to his claims and to the CBA at issue, and whether a "derivative" claim falling within an exemption can be preempted if an

---

[8] Carrillo also does not argue that the step-two question of whether a claim depends on and requires interpretation of a CBA would be relevant if an exemption to the Labor Code applies, apparently conceding that, under *Curtis*, an exemption would establish preemption at step one. Both parties offer arguments related to step two in relation to Monterey's alternative position that some of Carrillo's claims depend on the CBA even if they do not implicate a Labor Code exemption.

12

underlying claim that it relates to is not. As discussed below, the Court concludes that Carrillo's "derivative" claims for late payment in violation of section 204 of the Labor Code are preempted, and that preemption of those claims is sufficient to deny the Motion to Remand.

### 1. Preemption of Late Payment Claims

Two of Carrillo's claims include assertions that Monterey failed to pay wages when due twice per month as required by section 204 of the California Labor Code. Compl. ¶ 40 (minimum wage and straight time claim), ¶ 50 (overtime claim).

Monterey argues that the LMRA preempts Carrillo's late payment claims because section 204(c) of the Labor Code provides that notwithstanding section 204's default requirement of bimonthly payments, "when employees are covered by a collective bargaining agreement that provides different pay arrangements, those arrangements shall apply to the covered employees." Cal. Lab. Code § 204(c); *see* ECF No. 21 at 18–19. As Monterey notes, the CBA here provides for weekly payments, ECF No. 1 at 81 (CBA § 10(A)), which is a "different pay arrangement[]" from the bimonthly payments under section 204. Carrillo does not dispute that the CBA provides for such an arrangement.

Courts have generally held that a claim for late payment under section 204 is preempted if the employment at issue is governed by a CBA that provides a different arrangement as contemplated by section 204(c). *E.g.*, *Johnson v. San Francisco Health Care & Rehab Inc.*, No. 22-cv-01982-JSC, 2022 WL 2789809, at *9 (N.D. Cal. July 15, 2022); *Tolentino v. Gillig, LLC*, No. 20-cv-07427-MMC, 2021 WL 121193, at *3 (N.D. Cal. Jan. 13, 2021) ("[I]t is undisputed that the subject CBA provides for such an arrangement, specifically, the payment of wages on a weekly basis. . . . Consequently, Tolentino's right to the timely payment of wages 'exists solely as a result [of] the CBA.'" (second alteration in original)). The structure of section 204(c)'s exemption for pay schedules is sufficiently similar to section 514's treatment of overtime, which the Ninth Circuit's addressed in *Curtis*, to strongly suggest that the same principle of preemption applies to this statute. *See Johnson*, 2022 WL 2789809, at *9 (citing *Curtis* in the context of

13

finding a late payment claim preempted as a result of section 204(c)).[9]

Carrillo does not dispute that the CBA provides for weekly payments[10] or that section 204(c)'s exemption can be a basis for LMRA preemption, but he contends that his claims under section 204 are not preempted because they are derivative of his unwaivable minimum wage claim and (in his view) non-preempted overtime claim. ECF No. 14 at 15–16; ECF No. 22 at 11. In the cases he cites holding "derivative" claims not preempted, however, there is no indication that any party had argued that the "derivative" claims themselves established preemption, rather than merely following the outcome of an underlying claim that a defendant had unsuccessfully argued was preempted. *E.g.*, *Fennix v. Tenderloin Hous. Clinic, Inc.*, No. 20-cv-05207-DMR, 2020 WL 6462394, at *6 (N.D. Cal. Nov. 3, 2020) ("THC argues that these claims are derivative of Fennix's overtime and meal/rest period claims and so they must also be preempted. The court rejects this argument since it found above that Fennix's meal and rest period claims are not preempted by the LMRA."); *Alexander v. Republic Servs., Inc.*, No. CV 2:17-0644 WBS AC, 2017 WL 2189770, at *6 (E.D. Cal. May 18, 2017) ("Defendants concede that such claims are 'derivative' of plaintiff's first through third claims for purposes of LMRA section 301 preemption. . . . Having found that plaintiff's first through third claims are not preempted under LMRA section 301, the court finds that plaintiff's fourth and fifth claims are also not preempted under LMRA section 301.").

Here, in contrast, Monterey has offered specific—and correct—argument that Carrillo's claims for late payment under section 204 are preempted because section 204(c) and the CBA carve them out of the scope of that statute, such that any claim for late payment would arise, if at all, from the CBA. And although Carrillo nested his references to section 204 within other legal claims, he chose to assert violations of that statute as a basis for relief and has done so unambiguously. Assuming for the sake of argument that Carrillo can prevail solely under state

---

[9] The court in *Johnson* denied a motion to remand because the plaintiff's claim under section 204—and only that claim—was preempted by the LMRA when the relevant CBA provided for an alternative payment schedule as allowed by section 204(c). 2022 WL 2789809, at *9. The court granted the defendant's motion to dismiss that claim for failure to comply with the CBA's grievance and arbitration process, and then with the only federal claim dismissed, declined to continue to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) and remanded the remaining claims to state court. *Id.* at *9–10.

[10] *See* ECF No. 1 at 81 (CBA § 10(A)).

14

1  law on his claims that he was not paid minimum wage, straight time, or overtime, his derivative

2  claims of whether such non-payment also violated requirements for *timely* payment would "exist[]

3  solely as a result of the CBA." *See Curtis*, 913 F.3d at 1155. The Court declines to place form

4  over function and disregard Carrillo's invocations of section 204 merely because he did not locate

5  them under their own heading. Carrillo's late payment claims, as preempted by section 301 of the

6  LMRA, therefore fall within the Court's subject matter jurisdiction.

### 2. Supplemental Jurisdiction Over Other Claims

As the parties appear to agree, all of Carrillo's claims arising out of the terms and conditions of his employment at Monterey are sufficiently intertwined that if at least one of them is preempted, the rest fall within supplemental jurisdiction. *See* ECF No. 1 at 8 (Notice of Removal ¶ 22) ("To the extent any of Plaintiff's claims are not directly removable under 28 U.S.C. § 1331 in light of LMRA preemption, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a), because they are part of the same common nucleus of operative facts over which this Court has original jurisdiction"); ECF No. 21 at 6 n.2 (Monterey's opposition brief, asserting the same); *see generally* ECF Nos. 14 & 22 (Carrillo's Motion and Reply, not disputing or otherwise addressing Monterey's assertion of supplemental jurisdiction). Preemption of Carrillo's late payment claims is therefore sufficient to deny the Motion to Remand, without reaching the parties' arguments regarding potential preemption of other claims.[11]

//

//

//

---

[11] The parties' arguments regarding certain other claims, including Carrillo's overtime claim, may implicate the temporal relevance of CBA provisions to Labor Code exemptions. It is well established that section 514 of the Labor Code, which requires pay of at least thirty percent more than the minimum wage to establish an exemption, looks to a CBA's wage schedules for all employees rather than a specific plaintiff's actual pay. *E.g., Johnson*, 2022 WL 2789809, at *4 (N.D. Cal. July 15, 2022) (noting "that a CBA must satisfy § 514 as to all employees to render § 510 inapplicable to a particular employee"). But the Court has not found authority addressing whether that principle requires that the CBA provide for sufficient pay throughout its full duration, or if a claim for overtime wages owed at a time when the CBA provided for sufficient pay (for all employees) could be preempted even if the CBA did not call for sufficient wages in earlier or later years. If that question is relevant at a later stage of this case, the parties should be prepared to address it in more detail at that time.

15

## V. CONCLUSION

For the reasons discussed above, Carrillo's Motion to Remand is DENIED

**IT IS SO ORDERED.**

Dated: 6/10/2025

_____
LISA J. CISNEROS
United States Magistrate Judge