UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VINCENT CARRILLO,<br><br>Plaintiff,<br><br>v.<br><br>MONTEREY MECHANICAL CO.,<br><br>Defendant. | Case No.  24-cv-09202-LJC<br><br>**ORDER REGARDING MOTION TO DISMISS OR TO COMPEL ARBITRATION**<br><br>Re: Dkt. No. 32 |

## I.    INTRODUCTION

Plaintiff Vincent Carrillo asserts wage-and-hour claims against Defendant Monterey Mechanical Co. (Monterey) on behalf of himself and a putative class of similarly situated employees.  Monterey removed the case from the California Superior Court for Santa Clara County, arguing that Carrillo's state law claims are preempted by the Labor Management Relations Act (LMRA), and the Court previously denied Carrillo's Motion to Remand.  Monterey now moves to dismiss Carrillo's Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, or in the alternative, to compel individual arbitration.  The Court held a hearing on September 9, 2025.  For the reasons discussed below, Monterey's Motion to Dismiss is GRANTED as to Carrillo's claims for late payment, which are DISMISSED with prejudice.[1]

The Court concludes that none of Carrillo's other claims are preempted by the LMRA, and thus declines supplemental jurisdiction under 28 U.S.C. § 1367(c) and REMANDS the case to state court, without reaching any other argument for dismissal or Monterey's Motion to Compel Arbitration.  Whether any such claims are subject to dismissal or arbitration based on the collective bargaining agreement (CBA) at issue, or for any other reason, are matters for the state

---

[1] The parties have consented to the jurisdiction of a magistrate judge for all purposes under 28 U.S.C. § 636(c).  ECF Nos. 12, 16; *see also* ECF No. 35.

United States District Court<br>Northern District of California

1    court to decide.

2        The Clerk shall remand the case to the California Superior Court for the County of

3    Alameda, where it was assigned case number 24CV093407.

4    II.    **BACKGROUND**

5        A.    **Complaint and Procedural History**

6        Carrillo asserts the following claims against Monterey: (1) failure to pay minimum wage

7    and compensation for all hours worked as required by sections 204 and 1194 of the California

8    Labor Code, Compl.[2] ¶¶ 32–41; (2) failure to pay overtime as required by sections 204, 510, 1194,

9    and 1198 of the Labor Code, Compl. ¶¶ 42–50; (3) failure to provide meal periods as required by

10   sections 226.7 and 512 of the Labor Code, as well as section 11 of applicable wage orders, Compl.

11   ¶¶ 51–54; (4) failure to allow rest periods as required by section 512 of then Labor Code, Compl.

12   ¶¶ 55–58; (5) failure to pay timely wages to discharged employees as required by sections 201 and

13   202 of the Labor Code, Compl. ¶¶ 59–65; (6) failure to maintain and provide accurate and

14   compliant wage statements as required by section 226(a) of the Labor Code, Compl. ¶¶ 66–73;

15   (7) failure to reimburse employees' expenses as required by section 2802 of the Labor Code,

16   Compl. ¶¶ 74–78; (8) failure to provide employment records as required by sections 226 and

17   1198.5(a) of the Labor Code, Compl. ¶¶ 79–87; and (9) violation of the section 17200 of the

18   California Business and Professions Code (the Unfair Competition Law, or UCL) by virtue of the

19   violations alleged above.

20       Carrillo filed his Complaint in state court on September 20, 2024. *See* ECF No. 1 at 14.

21   Monterey removed to this Court on December 18, 2024, asserting that many of Carrillo's claims

22   are preempted by section 301 of the LMRA because any right to relief he might have on those

23   claims is governed by a CBA. *See generally* ECF No. 1. After concluding that Monterey's

24   removal was timely, the Court held "that Carrillo's 'derivative' claims for late payment in

25   violation of section 204 of the Labor Code are preempted," and therefore denied the motion to

26

27   ───────────────
     [2] Carrillo's Complaint appears in the record as pages 14 through 42 of Monterey's Notice of
28   Removal, ECF No. 1. This Order cites documents filed in the record using page numbers as
     assigned by the Court's ECF filing system unless otherwise specified.

United States District Court
Northern District of California

remand.  ECF No. 29 at 13.[3]  Because preemption of those claims was sufficient to establish

supplemental jurisdiction over all of Carrillo's other claims, the Court did not reach the parties'

arguments regarding preemption of other claims.  *Id.* at 15 & n.11.

Monterey now moves to dismiss, or in the alternative, to compel individual arbitration of

any remaining claims.  ECF No. 32.

### B.    The Parties' Arguments

#### 1.    Monterey's Motion

Monterey contends that Carrillo's overtime claim under section 510 of the Labor Code is

preempted by the LMRA because the CBA meets the criteria for an exemption under section 514,

including providing for pay at rates at least thirty percent higher than the minimum wage.  ECF

No. 32-1 at 12–16.  Even if that were not so, Monterey argues that the overtime claim is

preempted because it would require interpretation of CBA provisions governing overtime pay.  *Id.*

at 16–17.  Monterey raises similar arguments with respect to Carrillo's meal breaks claim under

section 512, both as to a statutory exemption that turns on the CBA's rates of pay and as to the

purported need to interpret the CBA.  *Id.* at 17–19.  Monterey argues that Carrillo's rest breaks

claim is preempted because it falls within Wage Order 16's exemption for CBA's that provide

equivalent protection.  *Id.* at 19–20.  Monterey's Motion then turns back to Carrillo's first claim

for failure to pay minimum wage and straight time wages, arguing that it is intertwined with his

overtime claim and thus preempted for the same reasons, and that it requires interpretation of the

CBA.  *Id.* at 20–21.  Monterey contends that Carrillo's claims for failure to pay wages timely

under section 204 fall with section 204(c)'s exemption for a CBA "that provides different pay

arrangements"—as this Court previously held in denying the Motion to Remand, though Monterey

does not discuss that Order in its arguments.  *Id.* at 21–22.  Monterey also argues that all other

claims are subject to preemption because they are derivative of claims discussed above.

Monterey contends that all claims are also preempted because they require interpretation of

the CBA's grievance procedures, which apply to claims under the Labor Code and other

---

[3] *Carrillo v. Monterey Mech. Co.*, No. 24-cv-09202-LJC, 2025 WL 1642423, at *8 (N.D. Cal. June 10, 2025).

United States District Court
Northern District of California

1    authorities, not only claims for breach of the CBA. *Id.* at 24–25. Monterey argues that Carrillo's

2    failure to exhaust those procedures—or to allege that his union breached its duty of representation

3    in failing to do so—warrants dismissal. *Id.* at 25–26, 31.

4        Monterey also argues that any remaining claims should be compelled to arbitration on an

5    individual basis under the Federal Arbitration Act and the terms of the CBA. *Id.* at 26–31.

6    Because this Order dismisses Carrillo's claims that arise under the CBA and remands all other

7    claims to state court, this Court does not reach any question of arbitrability and does not address

8    those arguments in detail.

9                    **2.      Carrillo's Opposition**

10       Carrillo "does not dispute that any claim for failure to timely pay wages under Labor Code

11   § 204 must be dismissed" in light of the Court's prior Order finding such claims preempted on the

12   Motion to Remand. ECF No. 36 at 19.

13       With respect to the claims that remain in dispute, Carrillo contends that his overtime and

14   meal periods claims are not preempted because the CBA does not meet the necessary wage

15   threshold (for all employees) to fall within the statutory exceptions. *Id.* at 8–13. He argues that

16   his rest breaks claim is not preempted because the CBA does not provide equivalent protections to

17   Wage Order 16. *Id.* at 14–15. Carrillo further argues that his right to minimum wage is not

18   waivable by a CBA, *id.* at 16, and that the CBA's grievance provision does not itself establish

19   preemption, *id.* at 18–19.

20       For all claims, Carrillo argues that Monterey cannot establish preemption through a need to

21   "interpret" the CBA because it has not identified terms of the CBA that are in dispute, as

22   compared to terms that might merely be referenced in resolving the claims. *Id.* at 11–13, 16–18.

23   He also asserts that his "claim for failure to produce requested employment records are [sic] not

24   derivative of any [other] claims." *Id.* at 18.

25       Carrillo contends that if the Court finds any claims subject to dismissal based on LMRA

26   preemption, it would lack jurisdiction over any remaining state-law claims, warranting remand.

27   *Id.* at 6, 19, 21. He also argues that the Court should not compel arbitration because the CBA does

28   not include a "clear and unmistakable" agreement to do so. *Id.* at 19–21.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 3. Monterey's Reply

Monterey's reply brief generally covers the same arguments as its Motion, responding to some of the points raised in Carrillo's opposition brief.  *See* ECF No. 37.  Monterey opposes remand of any state-law claims that the Court might find are not preempted, arguing that they are sufficiently intertwined with Carrillo's preempted claims to support supplemental jurisdiction, and that this Court should compel any remaining claims to arbitration.  *Id.* at 12.

### 4. Supplemental Briefs

The Court invited the parties to submit supplemental briefs regarding the Ninth Circuit's recent decision in *Renteria-Hinojosa v. Sunsweet Growers, Inc.*, __ F.4th __, No. 23-3379, 2025 WL 2351203 (9th Cir. Aug. 14, 2025).  ECF No. 38.  The parties' briefs in response are addressed in the Court's analysis below.  *See* ECF Nos. 42, 43.

## III.    LEGAL STANDARD FOR MOTION TO DISMISS

A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure "based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (citation and internal quotation marks omitted).  A complaint generally must include a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

A court reviewing a motion under Rule 12(b)(6) must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 900 (9th Cir. 2007).  "Threadbare recitals of the elements of a cause of action . . . do not suffice," however, and a court need not credit "legal conclusions" or "mere conclusory statements."  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).  The allegations in the complaint "must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A complaint must demonstrate "facial plausibility" by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

A court's review under Rule 12(b)(6) is generally limited to the contents of a complaint,

5

1    with the exception of materials incorporated by reference in a complaint or materials subject to

2    judicial notice. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

3    Both parties here extensively discuss the terms of the CBA and Memorandum of Understanding

4    (MOU) that the Court previously considered in denying Carrillo's Motion to Remand, and

5    stipulated at the hearing that the Court may consider them in resolving the present Motion.[4]  The

6    Court therefore considers those documents in addition to the allegations of Carrillo's Complaint.

7        A court generally should not dismiss a complaint with prejudice under Rule 12(b)(6)

8    unless it is clear the complaint cannot be saved by any amendment. *See United States v.*

9    *Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011).

10   **IV.    ANALYSIS**

11       **A.    LMRA Preemption**

12       The present Motion turns in large part on preemption under section 301 of the LMRA,

13   which the Court also addressed in its previous Order on Carrillo's Motion to Remand.

> Although normally federal preemption is a defense that does not authorize removal to federal court, § 301 has such "extraordinary pre-emptive power" that it "converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Metro. Life Ins. v. Taylor*, 481 U.S. 58, 65 (1987). In other words, a civil complaint raising claims preempted by § 301 raises a federal question that can be removed to a federal court. *See id.*

19   *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1152 (9th Cir. 2019).

20       There are limits, however, to the scope of LMRA preemption.  "[D]efensive reliance on

21   the terms of the CBA, mere consultation of the CBA's terms, or a speculative reliance on the CBA

22   will not suffice to preempt a state law claim." *Humble v. Boeing Co.*, 305 F.3d 1004, 1008 (9th

23   Cir. 2002).  Courts use a two-step test to determine whether a claim is preempted:

> First, we ask whether the asserted cause of action involves a right that exists solely as a result of the CBA. The essential inquiry is this: Does the claim seek purely to vindicate a right or duty created by the CBA itself? If so, then the claim is preempted, and the analysis ends there.

---

[4] This Order therefore need not and does not resolve whether the case Monterey cites as supporting judicial notice of the CBA—*Hall v. Live Nation Worldwide, Inc.*, 146 F. Supp. 3d 1187, 1193 (C.D. Cal. 2015)—correctly addressed this issue.

1

2

3

4

5

> But if not, we proceed to the second step and ask whether a plaintiff's state law right is substantially dependent on analysis of the CBA, which turns on whether the claim cannot be resolved by simply "looking to" versus "interpreting" the CBA. We have stressed that "interpretation" is construed narrowly in this context. At this second step of the analysis, claims are only preempted to the extent there is an active dispute over 'the meaning of contract terms. Accordingly, a state law claim may avoid preemption if it does not raise questions about the scope, meaning, or application of the CBA.

6    *Curtis*, 913 F.3d at 1152–53 (cleaned up); *see also Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053,

7    1060 (9th Cir. 2007) (a case often cited for this two-step test).

8         The parties' disputes in this case turn in part on whether the CBA at issue meets various

9    exceptions to the statutes on which Carrillo bases his claims.  Section 514 of the Labor Code, for

10   example, provides that "Sections 510 and 511 do not apply to an employee covered by a valid

11   collective bargaining agreement if the agreement expressly provides for the wages, hours of work,

12   and working conditions of the employees, and if the agreement provides premium wage rates for

13   all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30

14   percent more than the state minimum wage."  Cal. Lab. Code § 514.  Section 512(e) of the Labor

15   Code states that the statute's requirement to provide meal periods does not apply to employees in

16   certain industries who are covered by a collective bargaining agreement that "expressly provides

17   for the wages, hours of work, and working conditions of employees, and expressly provides for

18   meal periods for those employees, final and binding arbitration of disputes concerning application

19   of its meal period provisions, premium wage rates for all overtime hours worked, and a regular

20   hourly rate of pay of not less than 30 percent more than the state minimum wage rate."  Cal. Lab.

21   Code § 512(e).  As this Court previously noted, the Ninth Circuit has held that a claim falling

22   within one of those exemptions is preempted by the LMRA and must proceed as a claim under

23   that statute for violation of the CBA.  ECF No. 29 at 12 (discussing *Curtis*, 913 F.3d at 1152–55).

24        **B.    *Renteria-Hinojosa v. Sunsweet Growers***

25        Before this Order turns to the merits of Monterey's Motion, a summary of the Ninth

26   Circuit's recent decision in *Renteria-Hinojosa*[5] will serve as useful context for some of the

27   _____

28   [5] The Ninth Circuit's case caption and opinion list the plaintiff's surname as "Renteria-Hinojosa," while the district court used "Renteria-Hinjosa."  This Order uses the Ninth Circuit's spelling to

United States District Court
Northern District of California

1    analysis below.  The Court invited the parties to submit supplemental briefs addressing that

2    decision, and both parties did so.

3            The district court in that case found that the plaintiff's claim for untimely payment under

4    section 204 was preempted for the same reason as here: the plaintiff was covered by a CBA that

5    provided "different arrangements" from section 204's default timely payment rules, section 204(c)

6    therefore exempted the plaintiff from the statute's default rules, "and Plaintiff's right to timely

7    payment of wages exists solely as a result of the bargaining agreements."  *Renteria-Hinjosa v.*

8    *Sunsweet Growers, Inc.*, No. 2:23-cv-01413-DJC-DB, 2023 WL 6519308, at *4 (E.D. Cal. Oct. 5,

9    2023).  The district court found that the plaintiff's other claims were not preempted, rejecting

10   several arguments raised by the defendant.  The CBA did not satisfy section 514 of the Labor

11   Code when not all employees were entitled to wages at the applicable threshold.  *Id.* at *3–4.  The

12   application of a grievance procedure mandated by the CBA was a defense that did not confer

13   jurisdiction.  *Id.* at *5–6.  And the plaintiff's claims would not require interpretation of the CBA,

14   beyond perhaps "the need to simply apply [some of its] provisions."  *Id.* at *6–7 (citation omitted).

15   The court granted the defendant's motion to dismiss the preempted untimely payment claim

16   because the plaintiff had not exhausted grievance procedures required by the CBA.  *Id.* at *7–8.

17   With only state-law claims remaining, the court declined to exercise supplemental jurisdiction

18   under 28 U.S.C. § 1367(c), and granted the plaintiff's motion to remand what remained of the case

19   to state court.  *Id.* at *8.

20           The defendant appealed the decision to remand the remaining claims, "principally

21   argu[ing] that the district court erred in concluding that Renteria-Hinojosa's remaining state law

22   _____

23   refer to that case except in citations to the district court's decisions, which reflect the caption as it
     appears on those decisions.  The district court issued similar orders in two related cases brought by
24   the same plaintiff, one a putative class action and the other asserting claims the Private Attorneys
     General Act (PAGA), and both cases were the subject of the Ninth Circuit's appeal.  *See Renteria-*
25   *Hinjosa v. Sunsweet Growers, Inc.*, No. 2:23-cv-01673-DJC-DB, 2023 WL 8023700 (E.D. Cal.
     Nov. 20, 2023) (PAGA case); *Renteria-Hinjosa v. Sunsweet Growers, Inc.*, No. 2:23-cv-01413-
26   DJC-DB, 2023 WL 6519308 (E.D. Cal. Oct. 5, 2023) (class action); *see also Renteria-Hinojosa v.*
     *Sunsweet Growers, Inc.*, __ F.4th __, No. 23-3379, 2025 WL 2351203, at *2 n.3 (9th Cir. Aug. 14,
27   2025) ("Because the district court incorporated the reasoning from the class action order into the
     PAGA action order, we refer to the orders together.").  This Order summarizes the district court's
28   decision in the putative class action; its decision in the PAGA case did not differ in any way
     material to the present Motions.

United States District Court
Northern District of California

claims are not preempted by § 301." *Renteria-Hinojosa v. Sunsweet Growers, Inc.*, __ F.4th __, No. 23-3379, 2025 WL 2351203, at *5 (9th Cir. Aug. 14, 2025). The plaintiff did "not challenge the district court's dismissal of her untimely-wage claims on appeal." *Id.* at *3.

The Ninth Circuit found no preemption at Step 1 of the two-part test because "[e]ach of Renteria-Hinojosa's [remaining] state law claims allege[d] violations of rights that exist under California law," including several of the same Labor Code statutes at issue here. *Id.* at *6.

At Step 2, the court found no need to interpret the CBA, even if the plaintiff's claims might require reference to some of them—for example, to determine her regular rate of pay when calculating what she was owed for allegedly unpaid overtime. *Id.* at *7. The court noted that there would be no need to interpret the CBA's meal and rest break provisions despite the defendant's argument that the CBA allowed it "to modify breaks under certain circumstances," because California law does not allow parties to modify the terms for such breaks below the "minimum labor standard[s]" set by statute. *Id.* The Ninth Circuit also affirmed the district court's conclusion that the CBA's grievance process cannot establish preemption, even if a court might be required to interpret those provisions, because the defendant's invocation of that provision was a *defense* to the plaintiff's claims rather than inherent to the claims themselves. *Id.* at *8–11 (citing primarily *Caterpillar Inc. v. Williams*, 482 U.S. 386 (1987)).

Finally, the Ninth Circuit held that the district court properly exercised its discretion under 28 U.S.C. § 1367(c) to decline supplemental jurisdiction over the non-preempted claims and remand them to state court. *Id.* at *12.[6]

### C.     Preemption of Particular Claims

Turning to the issues in dispute, the Court begins with the most straightforward claims: Carrillo's claims for late payment in violation of section 204 of the Labor Code, which the Court's previous Order denying Carrillo's Motion to Remand held were preempted by the LMRA. *See* ECF No. 29 at 13–15. This Order addresses Carrillo's remaining claims in the same order as

---

[6] This summary of the Ninth Circuit's decision omits its discussion of issues that are not relevant to the case at hand, such as the Ninth Circuit's appellate jurisdiction over remand orders, 2025 WL 2351203, at *3–5, and LMRA preemption of PAGA claims, *id.* at *11.

United States District Court
Northern District of California

1   Monterey's Motion, followed by Monterey's overarching argument regarding the relevance of the

2   CBA's grievance provision.

3                              **1.    Late Payment Claims**

4           Though Carrillo asserts violations of section 204 only within other claims for relief

5   (specifically, his minimum wage/straight time claim and his overtime claim), the "Court decline[d]

6   to place form over function and disregard Carrillo's invocations of section 204 merely because he

7   did not locate them under their own heading."  ECF No. 29 at 15.[7]  The Court determined that the

8   late payment claims were preempted because Labor Code section 204(c) provides an exemption

9   for employees covered by CBAs that provide different pay arrangements, that exemption does not

10  differ materially from other Labor Code exemptions that the Ninth Circuit has held can give rise to

11  preemption, and the CBA at issue here provided different pay arrangements.  *Id.* at *13–15.

12          Based on the Court's previous conclusion that such claims are preempted, Carrillo states in

13  his opposition brief that he "does not dispute that any claim for failure to timely pay wages under

14  [that statute] must be dismissed."  ECF No. 36 at 19.  Or, to quote the heading for that section of

15  his brief: "Plaintiff Does Not Dispute that Any Claim Under Labor Code § 204 is Preempted, and

16  Therefore the Court Must Dismiss that Claim and Remand Plaintiff's Remaining Claims."  *Id.*

17  But without acknowledging that previous position, Carrillo charts a different course in his

18  supplemental brief:

19              Plaintiff also anticipates that Defendant will ask the Court to dismiss
                Plaintiff's Labor Code § 204 allegations as the district court did in
20              *Renteria-Hinojosa*. There, the district court found that the plaintiff's
                untimely wage claim under Section 204 was preempted and properly
21              construed as a federal claim. *Renteria-Hinojosa*, 2025 WL 2351203,
                at *2. The district court dismissed the claim because plaintiff failed to
22              allege she had exhausted the CBAs' grievance and arbitration
                procedures. *Id.* Significantly, the plaintiff did not challenge this
23              holding on appeal—a point the Ninth Circuit made sure to note in its
                opinion. *Id.* at *2, n. 4. Given the Ninth Circuit's holding as that
24              claims arising under the Labor Code do not solely arise under a CBA

25  _____

26  [7] To the extent Monterey asserts in the conclusion of its supplemental brief that "this Court has
    already found preemption applies to Plaintiff's claims for minimum wage, straight time, and
27  overtime," ECF No. 43 at 5—an argument Monterey does not pursue elsewhere in its briefing—
    that does not accurately reflect the Court's Order, which treated Carrillo's late payment claims as
28  distinct from the other claims in which he had situated them.  The Court did not previously resolve
    the parties' arguments regarding preemption of any other claim.  ECF No. 29 at 15.

United States District Court
Northern District of California

1    and therefore cannot be preempted under step one, this holding surely
2    would have been reversed had it been challenged on appeal. *See id*. a
     *9 ("Renteria-Hinojosa's claims do not arise from the CBAs or
     require interpretation of the CBAs.").

3    ECF No. 42 at 4.

4        Even setting aside Carrillo's previous concession, this is a frivolous argument. As a

5    starting point, Carrillo need not "anticipate" Monterey asking the Court to dismiss his section 204

6    claims. Monterey sought such dismissal clearly its Motion. ECF No. 32-1 at 21–22. This portion

7    of Carrillo's supplemental brief also appears to seek reconsideration of the Court's previous Order

8    finding such claims preempted, without satisfying any of the procedural or substantive

9    requirements of Civil Local Rule 7-9. In any event, *Renteria-Hinojosa* did not address any

10   arguments on appeal regarding claims subject to labor code exemptions, and includes no

11   indication that the district court was wrong to find that plaintiff's section 204 claim was

12   preempted. It certainly does not overrule the relatively recent precedential opinion on which this

13   Court previously relied, which unambiguously held a California Labor Code preempted "at step

14   one of the preemption analysis" when it fell within one of the Labor Code's exemptions for

15   qualifying CBAs. *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1155 (9th Cir. 2019); *see In re*

16   *Osborne*, 76 F.3d 306, 309 (9th Cir. 1996) ("[A] panel of this court may not overrule a decision of

17   a previous panel; only a court *in banc* has such authority."). Carrillo's assertion that "claims

18   arising under the Labor Code . . . *cannot* be preempted under step one," ECF No. 42 at 4, thus

19   directly contradicts binding precedent.

20       "Where, as here, the court converts an employee's state law claim into a § 301 claim, the

21   [contractual grievance] exhaustion requirement applies to the converted claim. In the ordinary

22   case, an employee's failure to exhaust contractually mandated procedures precludes judicial relief

23   and requires the dismissal of federal claims." *Renteria-Hinojosa*, __ F.4th at __ n.7, 2025 WL

24   2351203, at *3 n.7 (cleaned up). Carrillo has not alleged exhaustion of the grievance process

25   required by the CBA, and as noted above, declined to oppose dismissal of these claims in his

26   opposition brief. *See* ECF No. 1 at 78–80 (CBA § 9, establishing a mandatory grievance process

27   for "[a]ny dispute concerning the interpretation or application of this Agreement," subject to

28   exceptions not applicable here); ECF No. 36 at 19 (conceding dismissal). Monterey's Motion is

United States District Court
Northern District of California

therefore GRANTED as to Carillo's untimely payment claims, which Carillo asserted under section 204 but as a matter of law instead arise under the CBA.

Carrillo has not suggested that he could amend to allege he exhausted the grievance process for these claims, and his (at least initial) acquiescence to dismissing these claims and remanding the remaining claims indicates that he has no desire to amend them. At the hearing, Carrillo's counsel represented that he was not aware of any facts that would support an amendment to allege compliance with the grievance process or any basis to excuse such compliance. The Court therefore concludes that leave to amend would be futile, and DISMISSES WITH PREJUDICE Carrillo's late payment claims.

## 2.    Overtime Claim

Carrillo's second cause of action is for failure to pay overtime wages as required by section 510 of the Labor Code, among other statutory authorities. Compl. ¶¶ 42–50. Monterey contends that this claim is preempted because it meets an exemption to section 510 under section 514 of the Labor Code:

> Sections 510 and 511 do not apply to an employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage.

Cal. Lab. Code § 514; *see* ECF No. 32-1 at 12–13.

The Ninth Circuit held in *Curtis* that a claim falling within that exemption is preempted under section 301 of the LMRA. *Curtis*, 913 F.3d at 1152–45; *see* ECF No. 29 at 12 (this Court's previous Order, summarizing *Curtis*). "Because this exemption is considered an affirmative defense, Defendants bear the burden of demonstrating that the requirements of section 514 are satisfied." *Nordman v. Bon Appetit Mgmt. Co.*, No. 23-cv-00703-DMR, 2023 WL 3006563, at *3 (N.D. Cal. Apr. 18, 2023) (citing *Ramirez v. Yosemite Water Co.*, 20 Cal. 4th 785, 794 (1999)).

As on the previous Motion to Remand, for the purpose of this exemption, Carrillo disputes only whether the CBA here meets the requirement to provide "a regular hourly rate of pay . . . of not less than 30 percent more than the state minimum wage." *See* Cal. Lab. Code § 514; ECF No.

United States District Court
Northern District of California

36 at 8–11.  Monterey does not dispute that a CBA must provide a sufficient wage for *all* employees, as opposed to merely for the plaintiff or plaintiffs in a particular case, to meet the exemption.  *See* ECF No. 29 at 15 n.11 (citing *Johnson v. San Francisco Health Care & Rehab Inc.*, No. 22-cv-01982-JSC, 2022 WL 2789809, at *4 (N.D. Cal. July 15, 2022)).  The parties' arguments as to whether this CBA meets that test turn on its rates for travel and driving time for certain employees in the "concrete sawing, drilling, coring and breaking industry."  *See* ECF No. 1 at 120 (title of Supplement No. 7) (capitalization altered).

Monterey asserts that such rates are as follows:

| TRAVEL & DRIVING RATES | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 6/26/17 | 6/25/18 | 7/1/19 | 6/29/20 | 6/28/21 | 1/1/22 | 1/1/23 | 1/1/24 | 1/1/25 |
| $18.91 | $19.16 | $19.16 | $19.16 | $19.16 | $19.50 | $20.15 | $20.80 | $21.45 |

ECF No. 32-1 at 15.

But that is not what the CBA provides on its face.  Instead of listing rates of $19.16 to begin in 2019, 2020, and 2021, and $19.50 to begin in 2022, the CBA lists only asterisks as the applicable rates for those dates, and says nothing about rates for 2023, 2024, and 2025:

**TRAVEL & DRIVING TIME**

TRAVEL RATES PER HOUR:

**EFFECTIVE DATE**

| | 6/26/17 | 6/25/18 | 7/1/19 | 6/29/20 | 6/28/21 | 6/27/22 |
|---|---|---|---|---|---|---|
| | $18.91 | $19.16 | $ * | $ * | $ * | $ * |

ECF No. 1 at 122 (Supplement No. 7).  The parties have not identified any provision in the CBA that explains the meaning of the asterisks, and defense counsel represented at the hearing that the CBA includes no such explanation.

Monterey relies on a declaration United Contractors officer Victor Sella (prepared for the purpose of opposing Carrillo's Motion to Remand) stating that the parties intended such rates to

1   "align with requirements found under Labor Code Section 512,"[8] ECF No. 21-2, and a

2   Memorandum of Understanding (MOU) dated January 1, 2024 that provides in relevant part:

3           It is the intent of this Agreement to provide employees with a regular
4           hourly rate of pay not less than 30% more than the state minimum
            wage. Should the wage for any classification not meet this
5           requirement during the term of this Agreement, it shall be increased
            automatically in the amount needed to comply.

6           Effective January 1, 2024, the following modifications are made to
7           . . . Supplement No. 7 to stay in compliance:
            . . .
8           •   In Supplement No. 7, the travel rate for all classifications
                mentioned will be $20.80.

9   ECF No. 21-2 at 4.

10          Monterey's briefing does not address why the Court should consider Sella's declaration in

11  considering the present Motion under Rule 12(b)(6).[9]  Even if the Court considers that declaration,

12  though—perhaps for the purpose of assessing jurisdiction before remanding any claims, even if

13  not for the purpose of considering dismissal—it cannot make the CBA mean something that it

14  does not say.  Nor does it demonstrate shared intent by both parties to the CBA, as opposed to

15  merely the contractor's association of which Sella is an officer, as to the meaning of the CBA at

16  _____

17  [8] A subpart of that statute provides for an exemption similar to section 514, with the same "not
    less than 30 percent more than the state minimum wage rate" threshold.  Cal. Lab Code
18  § 512(e)(2).
    [9] At the hearing, Monterey asked the Court to construe its motion as seeking dismissal for lack of
19  subject matter jurisdiction under Rule 12(b)(1), which permits a court to consider extrinsic
    evidence.  Monterey's Motion includes a brief invocation of Rule 12(b)(1), albeit in a portion
20  addressing the alternative motion to compel arbitration, rather than the primary motion to dismiss.
    ECF No. 32-1 at 31; *cf. id.* at 10 (citing only Rule 12(b)(6) in the legal standard for the Motion to
21  Dismiss).  This Court is not persuaded by the cases Monterey cited therein for the proposition that
    a federal court lacks *jurisdiction* over claims subject to arbitration under a typical CBA.  One of
22  those cases relied on a Ninth Circuit decision that addressed the specific circumstances of the
    Railway Labor Act (RLA), 45 U.S.C. §§ 152 *et seq.*, which imposes "jurisdictional restraints" on
23  federal courts and directs certain claims to arbitration before a Board of Adjustment.  *Ass'n of
    Flight Attendants, AFL-CIO v. Horizon Air Indus., Inc.*, 280 F.3d 901, 904–05 (9th Cir. 2002); *see
24  Maiava v. Brinderson Constructors, Inc.*, No. CV 14-05514 BRO (AJWx), 2014 WL 12966423, at
    *3 (C.D. Cal. Sept. 11, 2014) (citing *Horizon Air* without addressing its RLA-specific context).
25  The other simply mentioned that the defendant moved to dismiss under "FRCP 12(b)(1), and/or
    12(b)(6)," without otherwise addressing Rule 12(b)(1) or any question of jurisdiction.  *Herrera v.
26  CarMax Auto Superstores Cal., LLC*, No. CV-14-776-MWF (VBKx), 2014 WL 3398363, at *1
    (C.D. Cal. July 2, 2014).  Monterey's characterization of its present Motion as seeking dismissal
27  for lack of subject matter jurisdiction is also at odds with its removal of the case from state court
    and opposition to Carrillo's previous Motion to Remand.  That said, consideration of Sella's
28  declaration would not alter the outcome of the present Motion or the Court's discretionary
    decision to remand the remaining claims to state court.

14

the time the parties entered it. Monterey offered at the hearing to provide a declaration from a union representative, but even assuming for the sake of argument that Monterey could establish grounds for the Court to consider this sort of extrinsic evidence on the present Motion, briefing has already closed, *see* Civ. L.R. 7-3(d), and Monterey has not demonstrated sufficient cause to allow it such further opportunities to meet its burden to establish this exemption.

Nothing in Supplement No. 7 provides that the asterisks for the 2019, 2020, 2021, and 2022 travel rates are intended to reflect payment at thirty percent greater than the minimum wage. Nor have the parties identified any other provision in the CBA itself—as opposed to the subsequent 2024 MOU—referencing that threshold. Such an interpretation is particularly implausible when none of the rates listed for preceding years have any discernable connection to that threshold (though all of them exceed it). *Cf.* ECF No. 32-1 at 15 (Monterey's chart of "130% of California Minimum Wage Rate" for the dates at issue). The most natural reading of the asterisks is that they represent rates for which the parties had not yet reached an agreement when they negotiated the CBA, and which they intended to revisit later. But the Court need not conclusively resolve the meaning of the asterisks. It is Monterey's burden to establish an exemption applies, and it has not met that burden to show that the asterisks indicated a rate of at least thirty percent more than the minimum wage.[10]

Section 514's exemption applies only where "a valid collective bargaining agreement . . . provides" for a rate of pay at the appropriate threshold. Cal. Lab. Code § 514. A declaration that "all employees covered by the CBA were *provided* with an hourly rate pursuant to the respective CBAs of more than 30 percent of the state minimum wage" is not sufficient. *Nordman*, 2023 WL

_____

[10] Monterey suggests in its supplemental brief that the parties' disagreement over the meaning of this provision *itself* establishes preemption under Step 2, because "[a]n active dispute exists over the amount of the CBA's increasing rates of pay for future years." ECF No. 43 at 4. Courts have rejected this "circular logic" seeking to use a dispute at Step 1 to establish preemption at Step 2. *Nordman v. Bon Appetit Mgmt. Co.*, No. 23-cv-00703-DMR, 2023 WL 3006563, at *3 (N.D. Cal. Apr. 18, 2023). Whether the CBA meets section 514's pay threshold for all covered employees is an issue that this Court must resolve at Step 1, and the Court now resolves it. No such dispute remains to be resolved on the merits. The Court has also found no indication in the record that Supplement No. 7's travel pay rates, which appear to apply only to employes in certain concrete-related industries when engaged in travel or driving, will be relevant to the merits of any putative class member's claims. *See* ECF No. 1 at 120–22.

1    3006563, at *4.  Monterey has not identified any *agreement* (as opposed to a mere declaration of

2    intent and practice, years later) that *provides* for a rate greater than $19.16 before January 1, 2024.

3    The 2024 MOU is not on its face retroactive, and its provision of a particular rate *only* for its

4    effective date in 2024 suggests that it was not.  Moreover, it is difficult to see how an amendment

5    that did not yet exist at the time Carrillo was employed from 2020 to 2022, *see* Compl. ¶ 7, could

6    be relevant to the exemption analysis, when it of course could not have affected the rate of any

7    employee's pay years before it was executed.

8            Monterey also suggested in its briefing and at the hearing that the parties to the CBA could

9    not have accounted for future increases to the minimum wage that were not yet known at the time

10   they entered it.  *See also* ECF No. 21-2, ¶ 3 (Sella Decl.) ("[W]e naturally were not able to foretell

11   what the state might do with the minimum wage throughout the contract cycle . . . .").  Yet the

12   MOU that Monterey now offers demonstrates two separate and sufficient reasons that is not true:

13   the parties could have amended the CBA to provide for new specific rates upon the enactment of

14   any increase, or they could have provided for automatic increases to any wages falling below the

15   necessary threshold.  They belatedly did both in 2024, but did not do either in time to account for

16   increases to the minimum wage in 2022 and 2023.  Further, at least one rate increase was entirely

17   foreseeable: the increase to a $15 minimum wage effective in 2022 (thus requiring a $19.50 pay

18   rate to meet section 514's exemption) was enacted in 2016, more than a year before the union and

19   the contractor's association entered the CBA.  *See* Cal. Senate Bill No. 3 (2015–2016) (Approved

20   by Governor Apr. 4, 2016).[11]  The parties to the CBA thus knew or should have known that the

21   rates provided therein would be insufficient to meet the exemption before the end of the CBA's

22   term, but failed to include either a sufficient rate or any language regarding automatic adjustments

23   to account for that deficiency.

24           Monterey does not dispute that the relevant thresholds to meet the exemption for 2022 and

25   2023 were greater than $19.16 per hour, the highest and final rate listed in the CBA itself for this

26   type of work.  *See* ECF No. 1 at 122; ECF No. 32-1 at 15.  The Court concludes that Monterey has

27

28   [11] *Available at* https://leginfo.legislature.ca.gov/faces/billNavClient.xhtml?bill_id=201520160SB3
     [https://perma.cc/3BSB-ZU9T].

United States District Court
Northern District of California

16

1  not met its burden under section 514 to show that the CBA provided for wages at least thirty

2  percent greater than minimum wage for those years.

3  　　　　Monterey asserts that federal wage-and-hour law provides a defense for employers who act

4  in good faith in reliance on government guidance or enforcement practices.  ECF No. 37 at 6

5  (citing 29 U.S.C. § 259; 29 C.F.R. § 790.13).[12]  Monterey asserts that they "reflect a broader

6  principle that employers should not be penalized for acting in good faith to comply with the law."

7  ECF No. 37 at 6 (citing 29 U.S.C. § 259; 29 C.F.R. § 790.13).  That assertion appears to concede,

8  as it must, that those authorities are not directly applicable here to interpret the California Labor

9  Code, much less in the absence of any governmental guidance or enforcement practice that might

10  suggest the CBA met section 514's exemption.  Regardless of any merits of Monterey's general

11  proposition that employers should not be punished for good-faith conduct, Monterey is not

12  *penalized* by a requirement to comply with the California Labor Code when its CBA did not meet

13  the terms of a statutory exemption, nor by defending this claim in a state court rather than here.

14  　　　　Monterey declined the Court's previous Order's invitation to address, if "relevant at a later

15  stage of the case," whether section 514 "requires that the CBA provide for sufficient pay

16  throughout its full duration, or if a claim for overtime wages owed at a time when the CBA

17  provided for sufficient pay (for all employees) could be preempted even if the CBA did not call

18  for sufficient wages in earlier or later years."  ECF No. 29 at 15 n.11.  Carrillo cites a decision

19  from the Central District of California finding no preemption where a CBA covering part of the

20  relevant employment period provided sufficient wage rates to meet the exemption, but another

21  CBA covering an earlier portion of the employment period did not.  *Ulloa v. Blackstone*

22  *Consulting, Inc.*, No. 5:24-cv-01134-HDV-SKX, 2025 WL 306380, at *3–6 (C.D. Cal. Jan. 27,

23

---

24  [12] Section 259 provides in relevant part: "[N]o employer shall be subject to any liability or
25  punishment for or on account of the failure of the employer to pay minimum wages or overtime
compensation under the Fair Labor Standards Act of 1938, as amended, the Walsh-Healey Act, or
26  the Bacon-Davis Act, if he pleads and proves that the act or omission complained of was in good
faith in conformity with and in reliance on any written administrative regulation, order, ruling,
27  approval, or interpretation, of the agency of the United States specified in subsection (b) of this
section, or any administrative practice or enforcement policy of such agency with respect to the
28  class of employers to which he belonged."  Section 790.13 is a regulation implementing § 259,
and nothing therein suggests that it has any bearing here.

United States District Court
Northern District of California

United States District Court
Northern District of California

2025); *see* ECF No. 36 at 11. In response, Monterey primarily relies on its argument that the CBA "always compensated its employees at least 130% above the state minimum wage," ECF No. 37 at 6, which the Court rejects for the reasons discussed above. Monterey also suggests that the distinction between two different CBAs in *Ulloa* and one CBA (which only sometimes provided a sufficient rate of pay) here is somehow relevant, but does not explain why that would be so. *See id.*

In the absence of reasoned argument to the contrary, the Court finds persuasive *Ulloa*'s rejection of "a piecemeal approach to Section 514 [as] inconsistent with the plain language of *Burnside* and its progeny" looking to whether a claim arises "solely" from a CBA, and as inconsistent with section 513's plain language referring in part to "*all* overtime hours worked." *See* 2025 WL 306380, at *4 (emphasis added). Because the CBA did not provide for at least thirty percent more than minimum wage for all employees at all relevant times, section 514 does not apply to Carrillo's overtime claim under section 510, and the claim is not preempted at Step 1 of the analysis under *Curtis*.

Monterey also asserts that Carrillo's overtime claim is preempted under Step 2, because it requires interpretation of the CBA's overtime provisions:

> Plaintiff's Complaint alleges he is entitled to overtime at one and one-half times his straight time hourly pay for all hours worked over 8 in a day or 40 in a week. *See* Doc. 1, Complaint ¶¶ 43-44. However, the 2018-2023 CBA provides a complex network of rules for when overtime is required which necessitates the application of contract interpretation principles to decipher. For example, section 20A (4) provides, "one and one half (1 ½) times the regular straight time hourly rate shall be paid for work on Saturdays (except makeup day) and before a shift begins and after it ends." The 2018-2023 CBA also provides a broader benefit than the California Labor Code § 510. Specifically, the 2018-2023 CBA provides that "[d]ouble the regular straight time hourly rate shall be paid for all work on Sunday's and holidays. *See* Doc. 1, Attach. 4, Section 20A.

ECF No. 32-1 at 16.

But Carrillo seeks to invoke his rights to overtime pay under the California Labor Code, not under the CBA, so it is not clear that any additional protection or pay that the CBA might provide would be relevant to the claim Carrillo asserts here. "[T]he mere fact that a broad contractual protection . . . may provide a remedy for conduct that coincidentally violates state-law

18

does not make the existence or the contours of the state law violation dependent upon the terms of the private contract." *Wilson-Davis v. SSP Am., Inc.*, 434 F. Supp. 3d 806, 816 (C.D. Cal. 2020) (quoting *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 412–13 (1988)) (alterations in original).

Even if those terms are relevant, they do not necessarily require *interpretation* within the meaning of the preemption analysis. As the district court explained in *Renteria-Hinojosa*:

> For claims to be preempted under the second *Burnside* prong, a Court must be required to do more than "look to" the terms of the bargaining agreement. *Burnside*, 491 F.3d at 1060. "When the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be [preempt]ed." *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994). "[I]nterpretation implies discordance over the meaning of a term that requires authoritative explication." *Cuellar-Ramirez v. US Foods, Inc.*, No. 16-CV-00085-RS, 2016 WL 1238603, at *5 (N.D. Cal. Mar. 22, 2016).

*Renteria-Hinojosa*, 2023 WL 6519308, at *6.

In sum, as the Ninth Circuit explained in its recent precedential opinion: "Claims are only preempted at step two to the extent there is an active dispute over the meaning of contract terms." *Renteria-Hinojosa*, __ F.4th at __, 2025 WL 2351203, at *6 (citations and internal quotation marks omitted). "[R]eliance on and reference to CBA-established or CBA-defined terms of employment do not make for a CBA dispute if there is no disagreement about the meaning or application of any relevant CBA-covered terms of employment." *Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 927 (9th Cir. 2018). Despite Monterey's general assertion of "the dispute raised in Plaintiff's Complaint" as evincing disputed contract terms, and its discussion of certain terms that might be relevant, Monterey has not shown that the parties dispute the meaning of any such term. ECF No. 37 at 7. Monterey therefore has not shown that Carrillo's overtime claim is preempted by the LMRA under either step of the analysis.

### 3. Meal Break Claim

Monterey's argument for preemption of Carrillo's meal break claim is substantially similar to its arguments regarding the overtime claim discussed above. Carrillo asserts this claim, in part, under section 512 of the Labor Code, which requires employers to provide one meal period if an

United States District Court
Northern District of California

employee works more than five hours per day or two meal periods if an employee works more than ten hours in a day (subject to waiver under limited circumstances not at issue).  Compl. ¶ 52; Cal. Lab. Code § 512(a).  Subpart (e) of that statute provides an exemption similar to section 514 discussed above, with the same requirement that a CBA provides for regular pay of at least thirty percent more than the minimum wage.  Cal. Lab Code § 512(e).  For the same reasons discussed above, the Court finds that exemption inapplicable here, and that the claim is therefore not preempted at Step 1.

At Step 2, Monterey contends that the "CBA provides a broader scope of protections than the statute, which necessitate the need to interpret the application 2018-2023 CBA to determine what an employee's rights are."  ECF No 32-1 at 18; *see* ECF No. 37 at 9.  But Carrillo does not bring a claim for breach of those terms, only for breach of Monterey's obligations under California statutes and wage orders, which Monterey has not shown to incorporate any rights or duties under the CBA.  In any event, Monterey has not identified any "active dispute over the meaning of [such] contract terms."  *Renteria-Hinojosa*, __ F.4th at __, 2025 WL 2351203, at *6.  Monterey thus has not shown Carrillo's meal break claim to be preempted by the LMRA.

### 4.    Rest Break Claim

Carrillo's rest break claims rely in part on "the applicable Wage Orders."  Compl. ¶ 57.  Here, the parties appear to agree that is IWC Wage Order 16, where section 11 provides for "ten (10) minutes net rest time for every four (4) hours worked, or major fraction thereof," but also provides that it "shall not apply to any employee covered by a valid collective bargaining agreement if the collective bargaining agreement provides equivalent protection."  Wage Order 16, § 11(A), *available at* https://www.dir.ca.gov/iwc/iwcarticle16.pdf [https://perma.cc/7BDW-GELG].  The Court presumes that *Curtis*'s preemption analysis would apply to this exemption in the same manner as to sections 204(c), 512(e), or 514 of the Labor Code, as discussed above.

The parties dispute whether the CBA provides "equivalent protection."  Unlike Wage Order 16's requirement of a rest break for every four hours of work "or major faction thereof," *see id.*, the CBA provides: "Employees shall be authorized and shall be permitted to take a total of ten (10) minutes *during each four (4) hour segment* of their assigned work shift for a rest period."

20

1    ECF No. 1 at 76 (CBA § 6.B) (emphasis added).  It goes on to discuss how "as far as practicable

2    the break will be taken as near to the middle of each *four (4) hour work segment* as possible."  *Id.*

3    (emphasis added).  As Monterey notes, however, the CBA also provides that the "rest period

4    provisions of this Agreement will be interpreted consistently with the rest period requirements of

5    IWC [Wage] Order 16."  *Id.* at 77 (CBA § 6.B).

6         Construing identical language in a different Wage Order, the California Supreme Court has

7    held that a "major fraction" of a four-hour period is a period of more than two hours (i.e., a

8    majority of the four-hour threshold).  *Brinker Rest. Corp. v. Superior Ct.*, 53 Cal. 4th 1004, 1028–

9    30 (2012).[13]  That is something far different from what appears on the face of the CBA, requiring a

10   rest break "during each four (4) hour segment of [an] assigned work shift."  ECF No. 1 at 76

11   (CBA § 6.B).  For example, an employee who worked six hours and five minutes would thus be

12   entitled to two rest breaks under the Wage Order, but only one under the plain language of the

13   CBA.  Under such circumstances, the protection provided by the CBA would not be "equivalent"

14   within the meaning of Wage Order 16's exemption.  *See, e.g.*, *Mauia v. Petrochem Insulation,*

15   *Inc.*, No. 18-cv-01815-MEJ, 2018 WL 3241049, at *8 (N.D. Cal. July 3, 2018) (holding that the

16   exemption did not apply where a CBA did not address topics covered by Wage Order 16,

17   including making up for and compensating for missed rest breaks).

18        The question, then, is whether the savings clause calling for the CBA's rest break

19   provision to be interpreted "consistently" with Wage Order 16 is enough to bring it in line when it

20   comes to the amount of time necessary to earn a rest break.  Though neither party has cited a case

21   resolving a comparable issue, the Court is not persuaded that the clause can bear such weight.

22

23   ───────────────

24   [13] Carrillo erroneously describes *Brinker*—using an erroneous page citation that resolves to an
     unrelated case—as having "interpreted the phrase 'every four (4) hours worked, or major fraction
25   thereof' to mean three and one-half hours worked."  ECF No. 36 at 14.  The Supreme Court
     expressly rejected that interpretation by the appellate court below.  *See, e.g.*, 53 Cal. 4th at 1030
26   ("The three and one-half hour proviso thus was not inserted as a definition of the phrase 'major
     fraction,' but simply as a limit on the shift length that would warrant any break at all.");  *see also*
27   Wage Order 16, § 11(C) (providing that an employer need not provide rest breaks for "employees
     whose *total* daily work time is less than three and one-half (3 1/2) hours." (emphasis added)).  But
28   Carrillo's errors in citing and explaining *Brinker* do not change the fact that it supports his
     underlying position that Wage Order 16 requires something more than what is provided by the
     CBA.

United States District Court
Northern District of California

Consistent "interpretation" would encompass, for example, matters not addressed specifically by the CBA, like what counts as "rest" during a rest break. But the CBA's reference to a "four (4) hour segment" cannot reasonably be "interpreted" as encompassing a segment of two hours and five minutes, as in the example above of an employee who worked for a total of just over six hours.

Another provision of the CBA not addressed by the parties supports that conclusion: "Employees who work more than ten (10) hours shall be authorized and permitted three ten (10) minute rest periods." ECF No. 1 at 76 (CBA § 6.B). That provision covers a subset of circumstances that would be addressed by Wage Order 16's "major fraction" clause: an employee who works *two* full four-hour periods plus a "major fraction" of a third. The specific guarantee of a third rest break in those circumstances, without a similar provision for a second rest break for employees who work between six and eight hours, reinforces that the CBA's reference to a "four (4) hour period" means what it says—except where specifically modified, as in the case of employees who work more than ten hours.

The CBA therefore does not meet Wage Order 16's exemption, and Carrillo's rest break claim is not preempted on that basis. Monterey offers no other argument for preemption that is specific to this claim.

### 5.    Minimum Wage and Straight Time Claim

Monterey argues that Carrillo's claims for failure to pay minimum wage and regular straight time[14] pay for hours worked off the clock are preempted because they rest on the same

---

[14] At the hearing, Carrillo's counsel clarified that his claim for straight time rests solely statutes providing for minimum wage. *E.g.*, Cal. Lab. Code § 1194. Defense counsel asserted that another statute governed straight time pay when an employee is entitled to a rate above the minimum wage, but did not have the specific statute available. Section 204, governing timely payment, includes an obligation to pay "[a]ll wages [subject to some exceptions] earned by any person in any employment," Cal. Lab. Code § 204(a), and could serve a statutory basis for recovery of wages at agreed rates higher than minimum wage. As discussed above, however, Carrillo's section 204 claim is preempted by the LMRA and now dismissed for failure to comply with the CBA's grievance process. And Carrillo has not asserted a claim for breach of the CBA to recover wages at rates set therein. Consistent with Carrillo's counsel's representation at the hearing, the Court understands what remains of Carrillo's first cause of action for "Failure to Pay Minimum and Straight Time Wages for All Hours Worked" as seeking only statutory minimum wage. *See* ECF No. 1 at 26.

United States District Court
Northern District of California

1    facts as his overtime claim.  ECF No. 32-1 at 21.  The Court has determined above that the

2    overtime claim is not preempted, so this argument provides no basis for preemption of the

3    minimum wage and straight time claims.

4    　　　Monterey also argues that these claims are preempted at Step 2 because they require

5    interpretation of the CBA, specifically terms related to "show up pay" and "actual hours worked."

6    ECF No. 32-1 at 20–21; ECF No. 37 at 10–11.  As Monterey notes, at least two decisions from

7    this district have found preemption under similar circumstances: *Rodriguez v. Gonsalves &*

8    *Santucci, Inc.*, No. 21-cv-07874-LB, 2022 WL 161892, at *5 (N.D. Cal. Jan. 18, 2022), and *Giles*

9    *v. Canus Corp.*, No. 22-cv-03097-MMC, 2022 WL 3370793, at *6 (N.D. Cal. Aug. 16, 2022).

10    But neither those cases nor Monterey's briefs address the authority Carrillo cites, ECF No. 36 at

11    16, providing that California's minimum wage laws are non-waivable, Cal. Lab. Code § 1194(a),

12    and that therefore a "CBA or its interpretation does not affect Plaintiff's rights" to such pay,

13    *Jimenez v. Young's Mkt. Co., LLC*, No. 21-cv-02410-EMC, 2021 WL 5999082, at *8 (N.D. Cal.

14    Dec. 20, 2021).

15    　　　Even if a court resolving Carrillo's claims for minimum wage and straight time pay were

16    required to consult or apply some provision of the CBA, Monterey has not shown that "there is an

17    *active dispute* over the meaning of contract terms," as required for preemption under Step 2.

18    *Renteria-Hinojosa*, __ F.4th at __, 2025 WL 2351203, at *6 (emphasis added); *Curtis*, 913 F.3d at

19    1153 (same).  To the extent that the CBA might be relevant at all, nothing in Carrillo's Complaint

20    indicates that any likely dispute over these claims turns on the meaning of the CBA or the

21    contours of Monterey's obligations, rather than factual disputes over what hours Carrillo and

22    putative class members worked or whether they were paid for those hours.[15]

23    　　　As the Ninth Circuit held in *Burnside*, these "claims are not preempted by section 301

24    because the right to be compensated . . . is a right conferred as a matter of state law that exists

25    independent of the terms of the CBA[], and because the claims to compensation for that time can

26    be resolved without interpreting th[at] agreement[]."  *Burnside*, 491 F.3d at 1074.

27    

---

28    [15] Monterey has not yet filed an answer denying any of Carrillo's allegations, and it is perhaps
technically not clear that Monterey disputes liability at all, though the Court presumes that it does.

United States District Court
Northern District of California

### 6.     Failure to Indemnify Expenditures

Monterey contends that Carrillo's seventh claim, for failure to indemnify expenses as required by section 2802 of the California Labor Code, Compl. ¶¶ 74–78, is preempted at Step 2 because "the 2018-2023 CBA, provides great detail on the type of expenditures that it covers on behalf of employees," as well as the methods by which some of those reimbursements are determined.  ECF No. 32-1 at 22.  As Monterey notes, some district courts have found such claims preempted, particularly where plaintiffs have alleged failure to reimburse specific categories of expenditures that raise questions as to the scope of CBA provisions.  *Linebarger v. Graphic Packaging Int'l, LLC*, No. SACV 20-00309 JVS (JDEX), 2020 WL 1934958, at *6 (C.D. Cal. Apr. 22, 2020); *Rodriguez*, 2022 WL 161892, at *5; *see also Gay v. Pac. Steel Grp.*, No. 20-cv-08442-HSG, 2023 WL 6048784, at *6 (N.D. Cal. Sept. 15, 2023) (finding preemption where a plaintiff "concede[d] that his 'claims for business expense reimbursements might require some interpretation of the CBA'").

This Court finds cases holding to the contrary more persuasive on this point, at lease under the circumstances of the case at hand.  Section 2802 requires employers to "indemnify [an] employee for all necessary expenditures . . . incurred by the employee in direct consequence of the discharge of his or her duties."  Cal. Lab. Code § 2802.  Its protection is non-waivable under California law.  *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 951–52 (2008) (citing Cal. Lab. Code § 2804).  Accordingly, it is not clear "why the Court would need to reference the CBA at all, let alone interpret it," to resolve Carrillo's claim for failure to reimburse expenses under section 2802, which does not invoke his rights under the CBA.  *Wilson-Davis*, 434 F. Supp. 3d at 816 (finding no preemption of an expense reimbursement claim under section 2802).  As previously noted, the fact that a CBA "may provide a remedy for conduct that coincidentally violates state-law does not make the existence or the contours of the state law violation dependent upon the terms of the private contract."  *Id.* (quoting *Lingle*, 486 U.S. at 412–13).  Accordingly, this Court agrees with district court decisions finding that the LMRA does not preempt claims under section 2802 that do not "seek to enforce or challenge [a reimbursement] provision of the [applicable] CBA."  *Nordman*, 2023 WL 3006563, at *6.

1    Moreover, as with other claims discussed above, even if there *were* some need to consult

2    the CBA to resolve Monterey has not shown that any dispute would involve "disagreement about

3    the meaning or application of any relevant CBA-covered terms of employment" as is required for

4    preemption at Step 2, *see Alaska Airlines*, 898 F.3d at 927, rather than legal questions regarding

5    the application of section 2802 or factual questions regarding expenses incurred and allegedly not

6    reimbursed.

7    **7.    Additional Claims**

8    Monterey asserts that Carrillo's fifth, sixth, and ninth claims (for failure to pay wages upon

9    termination, failure to maintain and provide accurate records, violation of section 17200 of the

10   Business and Professions Code) are preempted because they are merely derivative of the other

11   claims addressed above.  ECF No. 32-1 at 23–24; ECF No. 37 at 11.  Carrillo does not dispute that

12   those three claims are derivative of his other claims.  ECF No. 36 at 18.  But as discussed above

13   (and below, with respect to the grievance provisions), the Court now holds that most of those

14   underlying claims are not preempted.  The derivative claims thus neither "exist[] solely as a result

15   of the CBA," nor implicate "an active dispute over the meaning of contract terms," and are not

16   preempted by the LMRA.  *See Curtis*, 913 F.3d at 1152–53.

17   Further, as Carrillo correctly notes, ECF No. 36 at 18, Monterey has raised no argument

18   for preemption of his eighth claim, for failure to produce employment records timely upon request

19   as required by sections 226 and 1198.5(a) of the California Labor Code.  *See* Compl. ¶¶ 79–87.

20   Monterey does not address that issue in its reply brief.  *See generally* ECF No. 37.

21   **D.    The Grievance Provision Cannot Establish Preemption**

22   Monterey's Motion appears to argue that all claims are preempted because they require

23   interpretation of the CBA's grievance and arbitration provision, which on its face applies to claims

24   based on the Labor Code and other authorities.  ECF No. 32-1 at 25 ("Plaintiff's claims constitute

25   a dispute concerning the interpretation or operation of the 2018-2023 CBA under 'step two' of the

26   *Curtis* test.  Plaintiff's claims cannot be evaluated apart from the CBA's grievance procedure.");

27   *see also* ECF No. 37 (Reply) at 12 ("Plaintiff Claims are Entirely Dependent on the Interpretation

28   of the 2018-2023 CBA's Grievance Procedure . . . .").  The Ninth Circuit rejected a similar theory

United States District Court
Northern District of California

in the recent *Renteria-Hinojosa* decision as an impermissible attempt to preempt through defensive use of a CBA, finding it "foreclosed by the Supreme Court's decision in *Caterpillar Inc. v. Williams*, which held that a defendant cannot create removal jurisdiction under § 301 by invoking a collective bargaining agreement as a defense." *Renteria-Hinojosa*, __ F.4th at __, 2025 WL 2351203, at *8 (citing *Caterpillar*, 482 U.S. at 398–99).

Monterey rightly backs off from that position in its supplemental brief. ECF No. 43 at 3 ("This case is distinguishable from *Renteria-Hinojosa* because . . . Defendant is not seeking to invoke preemption solely because of the grievance procedure within the CBA . . . ."). To the extent that Monterey asserts such an argument, it is foreclosed by *Renteria-Hinojosa*.

### E.    Supplemental Jurisdiction and Remand

A "district courts may decline to exercise supplemental jurisdiction over a [state-law] claim under . . . if . . .the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). "[A] district court may invoke its discretion under § 1367(c) on its own initiative." *Renteria-Hinojosa*, __ F.4th at __, 2025 WL 2351203, at *12 (cleaned up). When a case has been removed from state court, district courts are "authorized" to remand the case after dismissing all federal claims under Rule 12(b)(6) and declining to exercise supplemental jurisdiction under § 1367(c). *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 637 (2009)

As discussed above, the Court has previously found Carrillo's late payment claims preempted and now dismisses those claims. Finding no other claims preempted, the Court is left with a case consisting solely of claims under California law, and the question of whether to decline supplemental jurisdiction over those claims.

Carrillo contends that the Court therefore *must* remand the case to state court, citing the Supreme Court's recent decision *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22 (2025). ECF No. 36 at 19. *Royal Canin* relied on the specific circumstances of a complaint that had been *amended* after removal to eliminate federal claims, and the longstanding principle that an amended complaint fully supersedes the original. *See* 604 U.S. at 33. Since then, the Ninth Circuit's decision in *Renteria-Hinojosa* confirmed that remand after *dismissal* of all federal claims remains a matter of discretion. "After a district court dismisses federal claims in an action on non-

jurisdictional grounds, it is required to exercise its discretion to decide whether it is 'appropriate to keep the state claims in federal court; it cannot remand for *lack* of supplemental jurisdiction." *Renteria-Hinojosa*, __ F.4th at __, 2025 WL 2351203, at *12 (quoting *Lacy v. Maricopa County*, 693 F.3d 896, 940 (9th Cir. 2012)) (emphasis added).

Ordinarily, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (footnote omitted), *superseded on other grounds as stated in Royal Canin*, 604 U.S. at 41.  The Court finds no reason to depart from that approach in this case, where Carrillo sought to assert claims only under state law, and only found himself in federal court because a small portion of those claims—a portion that has now been dismissed—was preempted by the LMRA.  As a matter of discretion, the Court therefore REMANDS this matter to the state court where it was filed.

## V.    CONCLUSION

For the reasons discussed above, the Court GRANTS Monterey's motion to dismiss Carrillo's claims for untimely payments, with prejudice.  The Court DENIES Monterey's motion to the extent it seeks dismissal of any other claim based on preemption.  Finding no other claims preempted, the Court declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) and REMANDS the case to state court, without reaching any other argument for dismissal or to compel arbitration.

Monterey remains free to argue to the state superior court that the CBA's grievance provision requires dismissal or arbitration of any of the remaining claims, and this Court expresses no opinion on the merits of such arguments.

The Clerk is instructed to remand the case to the California Superior Court for the County of Alameda, where it was assigned case number 24CV093407, and to close the case on this Court's docket.

**IT IS SO ORDERED.**

Dated: September 10, 2025

_____
LISA J. CISNEROS
United States Magistrate Judge